UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| **PLATINUM HEIGHTS, LP,**[1] | § § § | Case No. 25-90012 (ARP) |
| Debtor. | § § § § | (Emergency Hearing Requested) |

**DEBTOR'S <u>EMERGENCY</u> MOTION
FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR
TO INCUR POSTPETITION CREDIT ON AN UNSECURED BASIS, (II) SCHEDULING
<u>A FINAL HEARING, AND (III) GRANTING RELATED RELIEF</u>**

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 11:30 A.M. (CENTRAL TIME) ON MARCH 3, 2025.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON 11:30 A.M. (CENTRAL TIME) ON MARCH 3, 2025 IN COURTROOM 400, 4TH FLOOR, 515 RUSK AVENUE, HOUSTON, TX 77002.**

**PARTICIPATION AT THE HEARING WILL ONLY BE PERMITTED BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE PEREZ'S CONFERENCE ROOM NUMBER IS 282694. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE PEREZ'S HOME PAGE. THE MEETING CODE IS "JUDGEPEREZ." CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR**

---

[1] The last four numbers of the Debtor's federal taxpayer identification number are 4367. The location of the Debtor's service address is: 1917 Ashland Street, Houston, TX 70088.

> **APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE PEREZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Platinum Heights, LP, as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), respectfully represent as follows in support of this motion (the "**Motion**"):

## Background

1. On February 20, 2025 (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

2. The Debtor is a Texas limited partnership. The Debtor's principal real estate asset is a medical professional building referred to as the "Heights Hospital" (the "**Hospital**") located at 1917 Ashland Street, Houston, TX, 77008 (the "**Property**"). The Hospital is a six-story midrise building where medical professionals may provide a variety of medical services to patients.

3. The Debtor purchased the Property in a § 363 sale in the *In re 1917 Heights Hospital, LLC* chapter 11 case (S.D. Bankr. Tex., Case No. 21-31811). *See* Dkt 44 (order approving sale). The debtor in the *1917 Heights Hospital* case assumed and assigned a lease with Curahealth Houston Heights, LLC ("**Curahealth**"), who occupies one of the Hospital's six floors.

4. The Hospital also had a lease with North Houston Surgical Hospital, LLC ("**North Houston Surgical**"). North Houston Surgical paid approximately $4.8 and $4.9 million in rent to Platinum Heights in 2022 and 2023. Beginning in 2024, North Houston Surgical became financially distressed and could not afford the rent payments to Platinum Heights. North Hoston Surgical ceased operations in June 2024.

5. To comply with hospital licensing requirements, North Houston Surgical entered into a sublease with White Rock Medical Center ("**White Rock**").  But White Rock has not operated in the Hospital, and thus has not paid rent to the Debtor. The lease between North Houston Surgical and White Rock was a stop gap while the Debtor sought other tenants to occupy the other five floors in the Hospital.

6. The Debtor struggled to stay cash flow positive after North Houston Surgical ceased rent payments in June 2024. Since then, through the Petition Date, Curahealth was the only paying tenant in the Hospital. The Debtor could not afford insurance on the Property, and therefore coverage lapsed prepetition. The Property is currently insured under the B1 Bank's (the "**Secured Lender**") force-placed insurance.

7. The Debtor recently signed a new lease agreement with Ashland Healthcare, LLC ("**Ashland Healthcare**," and together with Curahealth, the "**Tenants**") that will become effective March 1, 2025.  Ashland Healthcare will provide acute care to patients on the top two floors of the Hospital.  Ashland Healthcare will also lease the first floor for use as an emergency room and clinic space. The rent from the Ashland Healthcare lease will materially improve the Debtor's financial position.

## Jurisdiction

8. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter within the meaning of 28 U.S.C § 157(b)(2).  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The bases for the relief requested herein are sections 105 and 364(b) of the Bankruptcy Code, rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 4001-1 and 4002-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**").

**Relief Requested**

10. The Debtor seeks entry of an interim order (the "**Interim Order**") and a final order (the "**Final Order**")[2] (a) authorizing the Debtor to seek and incur postpetition financing on an unsecured basis (the "**DIP Facility**") on an interim basis in the amount of $260,000 as set forth in the Promissory Note and Loan Agreement ("**DIP Agreement**"),[3] (b) granting the DIP Facility and all obligations owing thereunder and under the DIP Agreement and any other associated loan documents (collectively, the "**DIP Loan Documents**") administrative expense claim status, (c) authorizing the Debtor to pay the principal interest and other amounts payable under the DIP Loan Documents as such become earned due and payable, and (d) granting related relief.

11. In addition, the Debtor requests that the Court schedule a final hearing (the "**Final Hearing**") within 21 days of the date hereof, or as soon thereafter as is convenient for the Court, to consider approval of this Motion on a final basis.

**Need For Postpetition Financing**

12. Contemporaneously herewith the Debtor filed the *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Lender, (III) Scheduling a Final Hearing and (IV) Granting Related Relief* (the "**Cash Collateral Motion**"). As set forth in greater detail in the Cash Collateral Motion, the Property is encumbered by a Deed of Trust (as defined in the Cash Collateral Motion) to secure repayment of the Note (as defined in the Cash Collateral Motion) in an amount of $29,000,000 owed to Secured Lender. Pursuant to the Deed of Trust the Debtor also provided an assignment of its rental income to the Secured Lender.

---

[2] The Debtor will file the form of Final Order before the Final Hearing.
[3] The Debtor will file a cope of the DIP Agreement prior to hearing on the initial hearing on this motion.

13. As set forth in greater detail in the Cash Collateral Motion the Debtor is in critical need of liquidity and the authority to use the Cash Collateral (as defined in the Cash Collateral Motion) to fund its operation during the Chapter 11 Case. Notwithstanding this Court's approval of the Debtor's use of Cash Collateral, Ashland Healthcare will not be paying rent until May of this year at the earliest. Curahealth's rental payments are insufficient to fund the Debtor's operation. Furter, as with all rental relationships there are risks of delays in rental payments or other Tenant disputes. The Debtor reasonably believes it must have an additional source of capital to sustain the Debtor's operations in the event of any dispute with the Tenants or delay in rental payments. The Debtor therefore seeks approval of the DIP Facility to fund its operations notwithstanding the relief sought in the Cash Collateral Motion.

14. The Debtor requires approval of a DIP Facility to ensure its business operations remain uninterrupted and to avoid immediate and irreparable harm to the Debtor and potential harm to the delivery of the Tenants' patients. The Debtor would use the proceeds of the DIP Facility, to among other things, pay for insurance to comply with United State Trustee guidelines and to mitigate potential estate losses. The Debtor also needs to pay utilities that are critical to the Debtor's operation. The Debtor pays for gas, electricity, and water in the ordinary course, some of which are on a monthly basis. Between the Tenants, the number of doctors and patients could range from 75 to 100 on any given business day. Interruption of these services during business hours could have a severe impact on patient care.

## **Material Terms the DIP Facility**

15. The DIP Facility is being provided on an unsecured basis and at a rate of eight percent (8%) per annum. The DIP Facility will be funded by the Debtor's primary equity holder, Dr. Mirza Baig.

16. The DIP Facility does not include any: (i) sale or plan confirmation milestones, (ii) cross-collateralization provisions, (iii) roll-ups, (iv) liens on avoidance actions, (v) default provisions and remedies that are self-executing or preclusive of this Court's oversight, (vi) release of any claims, (vii) limitations on the use of the DIP Facility to pay approved fees or expenses, (viii) non-consensual priming liens, or (ix) any other provisions that limit the ability of estate fiduciaries to fulfill their duties under the Bankruptcy Code. Furthermore, the DIP Facility does not include any provisions calling for the termination of the automatic stay without notice and hearing, altering the evidentiary burden with respects to termination of the automatic stay, limiting the range of remedies the Court may order upon a default, terminating or limiting the Debtor's exclusive rights under section 1121 of the Bankruptcy Code or the assumption of a plan support agreement as an executory contract.

17. The proceeds of the DIP Facility shall be used in accordance with the terms of the budget attached to the Interim Order.

18. As set forth in the Cash Collateral Motion, the Debtor agreed to consult with Mr. Frank Kimball of SRS Houston Heights, LLC in connection with any material filing in this chapter 11 case at least three (3) business days before such filing, if practical including any motion to incur debt. The Debtor consulted Mr. Kimball regarding the need for the interim advance from Dr. Baig.

### Basis for Relief

**A. Enty Into the DIP Facility is in the Best Interest of the Debtor and its Estate and Should be Approved.**

19. Section 364(b) of the Bankruptcy Code authorizes a debtor to obtain postpetition financing on an unsecured basis as an allowable administrative expense. So long as the agreement to obtain unsecured credit does not breach any provisions of the Bankruptcy Code or court orders, courts grant debtors significant deference in acting in accordance with their sound business

judgment in obtaining such credit.  *See, e.g., In re Barbara K. Enters., Inc.*, No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

20. In determining whether debtors have exercised sound business judgment in entering postpetition financing arrangements, the Court may also take into consideration non-economic benefits offered by a proposed postpetition facility.  *See In re ION Media Networks, Inc.*, No. 09-13125 (Bankr. S.D.N.Y. July 6, 2009) (finding that relevant non-economic factors that lend toward an exercise of reasonable business judgment in postpetition financing include non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization.).

21. This rationale applies in full force to this chapter 11 case.  The Debtor needs immediate access to capital to fund its operations.  Given the significant timing concerns and the near certainty of closing the DIP Facility–in addition the DIP Facility's low cost of capital and unsecured nature–the Debtor believes that executing the DIP Loan Documents is a sound exercise of the Debtor's business judgment that will enable the Debtor to pursue reorganization in chapter 11 and ensure continued patient care at the Hospital by providing crucial liquidity.

22. The Debtor requires the DIP Facility in addition to the Cash Collateral to fund operational and administrative expenses. Absent entry into the DIP Facility, in addition to the Cash Collateral, the Debtor will be forced to cease operations and be unable to comply with its obligations under its leases, destroying the value of the Debtor's business, specifically the Hospital, to the detriment of the Debtor, the estate, its creditors, and potentially, patients.

B. **The DIP Facility was Entered Into in Good Faith**

23. Section 364(e) of the Bankruptcy Code protects the right of a good faith lender to collect on loans extended to a debtor, even if the authority of the debtor to obtain those loans is later reversed.

24. The DIP Facility was provided in good faith and is not the product of fraud collusion or any other form of bad faith actions or scheme designed to enrich Mr. Baig or harm any other party in interest. The DIP Loan Documents, when finally executed, will be the result of: (a) the Debtor's reasonable and informed determination that Mr. Baig offered the Debtor fair, reasonable and favorable postpetition financing terms that accounted for the Debtor's critical need for capital, and (b) the extended arm's-length, good faith negotiations between the Debtor and Mr. Baig who were each represented by competent counsel. *In re Gen. Growth Props., Inc.*, 423 B.R. 716, 722 (S.D.N.Y. 2010) (finding good faith based on testimony that the terms of the debtor-in-possession financing were "vigorously negotiated at arm's length and in good faith."). T

25. The Debtor submits that the terms and conditions of the DIP Loan Documents are reasonable and appropriate under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code. Further, no consideration is being provided to any party to the DIP Loan Documents other than as described herein. Accordingly, the Court should find that the Mr. Baig is a "good faith" lender within the meaning

of section 364(e) of the Bankruptcy Code and is entitled to all of the protections afforded by that section.

    C. **Interim Relief Should Be Granted**

    26.    Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain credit may not be commenced earlier than 14 days after service of such motion. The Court, however, is authorized to conduct an expedited hearing prior to the expiration of such 14-day period and to authorize the obtaining of credit where, as here, such relief is necessary to avoid immediate and irreparable harm to the debtor's estate. *See* Bankruptcy Rule 4001(c)(2).

    27.    The Debtor requests that the Court hold and conduct a hearing to consider entry of the Interim Order authorizing the Debtor, from and after entry of the Interim Order until the Final Hearing, to enter into the DIP Facility on the terms provided in the proposed Interim Order. The Debtor requires such approval prior to the Final Hearing and entry of the Final Order for the various reasons discussed above, including to ensure they have the necessary liquidity to continue operating, to pay their administrative expenses. This relief will enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to their estates and all parties in interest, pending the Final Hearing.

    28.    The Debtor has satisfied the requirements of Bankruptcy Rule 4001(c) to support immediate approval of the DIP Facility pending entry of the Final Order, and request that the Court grant the relief requested and authorize the immediate use of the proceeds of the DIP Facility pursuant to the terms and conditions set forth in the Interim Order.

**Request for Final Hearing**

29. Pursuant to Bankruptcy Rules 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections to the entry of the Final Order.

**Emergency Consideration**

30. The Debtor requests emergency consideration of this Motion pursuant to Local Bankruptcy Rule 9013-1(i), and the Court Procedures of the Honorable Judge Alfredo R. Perez ¶ 5, which authorize emergency consideration of motions where harm will be suffered if expeditated relief is not obtained. *See* Ct. Proc. ¶ 5; L. Bankr. R. 9013-1(i).  The Debtor believes an immediate and orderly transition into chapter 11 is critical and that any delay in granting the relief requested could hinder the Debtor's operations and cause irreparable harm.  The failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtor's operations, the Debtor's reorganization efforts, and most importantly, patient care.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

31. To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

32. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds;

(c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; (g) a waiver or limitation of the Debtor's, or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's or any other party in interest's rights to subsequently dispute such claim.

## Notice

33. Notice of this Motion will be served on the Secured Lender and any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## Conclusion

WHEREFORE, the Debtor respectfully requests the Court enter the Interim Order granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: February 28, 2025
Houston, Texas

*/s/ Omar J. Alaniz*
REED SMITH LLP
Omar J. Alaniz (24040402)
2850 N. Harwood Street, Suite 1500
Dallas, Texas 75230
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
Email: oalaniz@reedsmith.com

*Proposed Attorneys for Debtor and Debtor in Possession*

### Certificate of Service

I hereby certify that on February 28, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Omar J. Alaniz*
Omar J. Alaniz