UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § § § § | Chapter 11 |
| PLATINUM HEIGHTS, LP,[1] | | Case No. 25-90012 (ARP) |
| Debtor. | | |

### DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING (I) RETENTION AND EMPLOYMENT OF HMP ADVISORY HOLDINGS, LLC, DBA HARNEY PARTNERS, AS FINANCIAL ADVISORS TO THE DEBTOR NUNC PRO TUNC TO FEBRUARY 25, 2025 AND (II) THE EMPLOYMENT AND RETENTION OF ERIK WHITE AS CHIEF RESTRUCTURING OFFICER

The above-captioned debtor and debtor in possession (the "**Debtor**") states the following in support of this application (the "**Application**"):

**RELIEF REQUESTED**

1. The Debtor seeks entry of an order (the "**Proposed Order**"): (a) authorizing the Debtor to employ and retain HMP Advisory Holdings, LLC, dba Harney Partners ("**HP**") as its financial advisor and Mr. Erik White of HP as its chief restructuring officer ("**CRO**") in accordance with the terms and conditions of the Proposed Order and that certain engagement letter dated as of February 25, 2025 (the "**Engagement Letter**")[2] a copy of which is attached to the Proposed Order as **Exhibit 1**, (b) approving the terms of HP's and the CRO's employment and retention including the fee and expense structure and the indemnification provisions set forth in the Engagement Letter, (c) waiving certain informational requirements, and (d) grating related relief. In support of the Application, the Debtor submits the declaration of Erik White a Managing

---

[1] The last four numbers of the Debtor's federal taxpayer identification number are 4367. The location of the Debtor's service address is: 1917 Ashland Street, Houston, TX 70088.

[2] Capitalized terms used herein but undefined have the meaning provided in the Engagement Letter.

1

Director of HP (the "**White Declaration**"), which is attached hereto as Exhibit A and incorporated herein by reference.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtor confirms its consent to entry of a final order in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 327 and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 1075-1 2014-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Cases in the Southern District of Texas (the "**Complex Rules**").

## BACKGROUND

5. On February 20, 2025, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the Court. The Debtor is a Texas limited partnership. The Debtor's principal real estate asset is a medical professional building referred to as the "Heights Hospital" (the "**Hospital**") located at 1917 Ashland Street, Houston, TX, 77008. The Hospital is a six-story

midrise building where medical professionals may provide a variety of medical services to patients.

6. The Debtor is operating its business and managing its property pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. As of the date hereof no creditor's committee has been appointed in this chapter 11 case and there have been no requests for the appointment of a trustee or an examiner.

## HP AND CRO'S QUALIFICATIONS

8. The Debtor seeks to retain HP as its financial advisor and Mr. White as its CRO because, among other things, HP has a strong reputation and a wealth of experience providing financial advisory and turnaround management services to debtors and creditors in financial restructuring and bankruptcy proceedings similar to this chapter 11 case.

9. In connection with the performance of its duties and obligations as debtor-in-possession, the Debtor desires to employ HP and Mr. White because HP is a multi-disciplined financial advisory firm with leading practices in the areas of bankruptcy and financial restructuring. HP and Mr. White have extensive experience and knowledge in the fields of financial restructuring and turnaround services and have assisted numerous troubled companies and creditors both in workout situations and in bankruptcy proceedings. HP and its personnel are frequently engaged as estate professionals, including as chief restructuring officer, responsible party, chapter 11 trustee, chapter 11 post-confirmation trustee, financial advisor, and court-appointed receiver.

10. HP's resources, experience, and capable professionals are critical to ensuring the Debtor's successful restructuring, satisfy a critical need of the Debtor, and compliment and enhance the services being provided by the Debtor's other retained professionals.

11.     Likewise, Mr. White is well-suited to serve as the Debtor's CRO.  Mr. White has over 17 years of consulting, restructuring, and corporate finance experience. Additionally, the Debtor's proposed CRO, Mr. White, has experience serving in various roles, including as CRO and financial advisor.  Representative cases include *In re Hilltop SPV, LLC*, (Bankr W.D. Tex. Case No. 24-60308-mmp), *In re Cottonwood Financial Ltd*, (Bankr N.D. Tex. Case No. 24-80035), *In re Catarina Construction LLC*, (Bankr. W.D. Tex. Case No. 16-11209-hcm); *In re Richard Mark Phillips*, (Bankr. W.D. Tex. Case No. 17-10068-tmd); *In re Mary Brenna Rylee*, (Bankr. W.D. Tex. Case No. 21-10436-tmd); *In re Bentoli Inc.* (Bankr. W.D. Tex. Case No. 23-10827-smr); *In re Flix Brewhouse NM LLC* (Bankr. W.D. Tex. Case No. 21-30676-hcm); and *In re 6 to 9 Dental Texas PLLC*, (Bankr. W.D. Tex. Case No. 23-51139-cag).

12.     Since its retention, HP has familiarized itself with the Debtor and its business, as well as the Debtor's financial affairs, debt structure, operational needs and related matters.  HP has worked closely with the Debtor's management and counsel and has familiarity with the other major stakeholders that are or will be involved in this chapter 11 case.  For these reasons, the Debtor believes that HP has developed relevant experience and expertise regarding the Debtor that makes HP the best selection as the Debtor's financial advisor.

13.     Additionally, as the principal of HP in this engagement, Mr. White has sufficiently familiarized himself with the Debtor's operations to effectively serve in his role as CRO.

## SERVICES TO BE PROVIDED TO THE DEBTOR

14.     The Engagement Letter governs the relationship between the Debtor and HP.  The terms and conditions of the Engagement Letter were negotiated at arm's length and in good faith between the Debtor and HP, and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Under the Engagement Letter in consideration for the

compensation contemplated thereby, HP has provided and will provide the Debtor with the following financial advisory services:[3]

a. Assist the Client and its counsel with general matters related to a restructuring and contemplated chapter 11 proceeding, including by not limited to case strategy development, data gathering, and financial analysis, as needed;

b. Assist the Client with bankruptcy required reporting, including Monthly Operating Reports (MOR);

c. Assist the Client and counsel, as requested, to complete Initial Debtor Interview questionnaire and related information, complete and file the required Schedules of Assets and Liabilities and Statement of Financial Affairs and prepare for § 341 Meeting of Creditors;

d. Assist the Client to and its counsel to obtain debtor-in-possession financing, if needed;

e. Assist the Client to develop and maintain thirteen-week cash forecasts and any budget-to-actual reporting or other reporting as may be requited by potential debtor-in-possession financing;

f. Support the development of the Plan of Reorganization, including financial projections liquidation analysis, claims analysis and reconciliation, and other analysis, as needed; and

g. Other services as may be agreed upon between HP and Client.

15. While the Debtor initially contemplated the retention of HP solely as a financial advisor, after discussions with certain equity holders and creditors, to avoid any potential conflicts of interest the Debtor has determined that it is in the best interest of the estate to seek the appointment of the CRO. The Debtor therefore also respectfully submits that it will be necessary to employ and retain the CRO pursuant to section 327 of the Bankruptcy Code to assist the Debtor

---

[3] The summaries provided in this Application are provided for convenience only. In the event of any inconsistency between any summary and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter control. Capitalized terms used but not otherwise defined in the summaries of the Engagement Letter contained herein shall have the meanings ascribed to such terms in the Engagement Letter. In the event of any inconsistency between any summary and the terms and provisions of the Proposed Order, the terms of the Proposed Order shall control.

in the Chapter 11 Case. HP will support the Debtor's CRO in the chapter 11 case by providing various restructuring, managerial and financials services for the Debtor, which may include:

   a. assisting with investigation and preparation of the Debtor's go-forward business and restructuring strategies;

   b. conferring with all retained estate professionals, including HP as financial advisor and the Debtor's legal counsel;

   c. conferring with the Debtor and Debtor's legal counsel regarding the retention of additional estate professionals, such as investment bankers or property brokers in furtherance of the Debtor's objectives in the Chapter 11 Case, subject to the requirements of the Bankruptcy Code and Bankruptcy Rules;

   d. reviewing payments or transfers by or for the benefit of Debtor to ensure compliance with the Bankruptcy Code and applicable orders of the Court;

   e. assisting in the formulating of any plan of reorganization or liquidation for the Debtor or, if necessary, negotiating bidding procedures and advising the Debtor on the terms of any proposed sale of the Debtor's assets;

   f. providing expert advice and testimony regarding financial matters related to, including, among other things, the feasibility of any proposed plan of reorganization; and

   g. taking any and all other actions that are necessary or appropriate to manage and operate the Debtor pursuant to the Bankruptcy Code, and applicable orders of the Court.

16. The Debtor believes that HP and CRO's services will not duplicate the services provided by other professionals retained by the Debtor in this chapter 11 case. HP and CRO will use reasonable efforts to coordinate with the Debtor's other professionals to avoid any unnecessary duplication of work and services.

17. Notwithstanding the foregoing, and for the avoidance of doubt, the Debtor respectfully submits that the CRO shall have sole-decision making authority over all of the Debtor's operations while the Debtor remains in chapter 11. Such sole-decision making power and authority shall include, but shall not be limited to:

   a. unrestricted access to, and complete and unfettered control over, the Debtor's cash

and bank deposit accounts;

b. management of the Debtor's leases and contracts;

c. investigation and, if prudent, pursuit of estate causes of action; and

d. management of any and all other matters in this chapter 11 case where there is a conflict of interest with the Dr. Mirza Baig, the Debtor's general partner, the Debtor's majority equity holder, and any of their respective affiliates.

18. The Debtor respectfully submits that Dr. Mirza Baig shall not restrict, inhibit, or otherwise interfere with the CRO's responsibilities. As soon as reasonably practicable following entry of an order on this application, but in no event more than three (3) business days thereafter, the Debtor will file a notice with the Court evidencing the appropriate corporate resolutions, or similar governance documentation, appointing the CRO.

19. The Debtor further respectfully submits that Dr. Mirza Baig, in his capacity as the Debtor's authorized representative, will retain the right to formulate and propose the Debtor's chapter 11 plan, without prejudice to other parties' rights under applicable law to seek (and the Debtor's right to oppose) authority to modify the Debtor's exclusivity to file alternative plans, after due notice and a hearing.

## HP AND CRO'S COMPENSATION

20. In consideration of the services to be provided by HP as financial advisor and Mr. White as CRO, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtor has agreed to compensate HP and Mr. White for their services based on (i) hours spent by HP professionals at the following hourly rate and

| President/EVP/COO | $700 to $800/hr |
| --- | --- |
| Managing Director | $550 to $700/hr |

| Sr. Manager/Director | $400 to $550/hr |
|---|---|
| Manager | $350 to $450/hr |
| Sr. Consultant | $275 to $400/hr |
| Support Staff | $180 to $300/hr |

(ii) through the delivery to HP of a one-time, non-evergreen retainer in the amount of $35,000.00, from its available cash, consistent with other orders of the Court, including any orders authorizing use of cash collateral or post-petition financing.

21.     The Debtor and HP anticipate that the services provided to the Debtor with be provided primarily by Managing Director Erik White, whose hourly rate is $550 and Manager Kyle Schanzer, whose hourly rate is $450 per hour.[4]

22.     Given the emergency nature of the Debtor's bankruptcy filing, the Debtor did not contact with HP until after the Petition Date.  Given the emergency nature of HP's retention, HP agreed to provide financial advisory services to the Debtor conditioned upon the receipt of the retainer.  The Debtor believes that providing HP with its requested retainer is reasonable and appropriate for a case of this size and given the emergency nature of the Debtor's need for a financial advisor.  Further, the Debtor has already factored the $35,000.00 retainer into the Debtor's postpeititon financing facility which has been approved by this Court on an interim basis. *See Interim Order Authorizing Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Incur Postpetition Credit on an Unsecured Basis, (II) Scheduling a Final Hearing, and (III) Granting Related Relief* [Dkt. No. 29].

---

[4] Notwithstanding the foregoing, additional resources and staffing may be needed and HP shall supplement the service providers to the Debtor as necessary.

23. The Debtor believes that the Fee Structure is comparable to fees generally charged by financial advisors and investment bankers of similar size and capabilities of HP in the provision of financial advisory services and a CRO for comparable engagements, both in and out of bankruptcy proceedings. The Fee Structure is consistent with HP's typical billing practices for comparably sized and complex cases and transactions, both in and out of bankruptcy proceedings, involving the services to be provided to the Debtor. In light of the foregoing the Debtor believes that the Fee Structure is fair, reasonable and in line with market standards, and therefore in accordance with the standards set forth in section 328(a) of the Bankruptcy Code.

## **RECORD KEEPING AND APPLICATIONS FOR COMPENSATION**

24. HP and CRO will maintain time records in one-tenth hour (0.10) increments setting forth, in a summary format, a reasonably detailed description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor.

25. HP and CRO will also maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. HP and CRO's applications for compensation and expense reimbursement will be paid by the Debtor pursuant to the terms of the Engagement Letter and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable procedures established by the Court.

**HP AND CRO'S DISINTERESTEDNESS**

26. To the best of the Debtor's knowledge and belief, and except to the extent disclosed herein and in the White Declaration, HP and CRO: (i) are each a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (ii) do not hold or represent any interest materially adverse to the Debtor or its estate.

27. As set forth in further detail in the White Declaration, HP and CRO have certain connections with creditors and other parties in interest in this chapter 11 case.  The Debtor, CRO and HP do not believe that any of these connections constitute an interest materially adverse to the interest of the estate or of any class of creditors or equity holders in this chapter 11 case.

28. To the extent HP or the CRO discover any material facts bearing on the matters described herein during the period of HP or the CRO's retention, HP and the CRO will amend and supplement the information contained in this Application and the White Declaration to disclose such facts.

29. Neither HP nor the CRO received any payments from the Debtor preceding the Petition Date.

30. As set forth in the White Declaration, neither HP nor CRO have shared or agreed to share any of their compensation from the Debtor with any other person, other than as permitted by section 504 of the Bankruptcy Code.  If any such agreement is entered into, HP and the CRO will amend and supplement the information contained in this Application and the White Declaration to disclose the terms of any such agreement.

31. No promises have been received by HP or the CRO, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

**INDEMNIFICATION**

32.     The Engagement Letter provides that the Debtor shall indemnify HP and its employees, including the CRO, and the HP Parties and hold those parties harmless against any and all claims, liabilities, losses, damages and expenses as incurred, related to or arising out of or in connection to HP and the CRO's engagements with the Debtor as set forth in the Engagement Letter unless such losses, claims, damages, liabilities or expenses are finally judicially determined that they are primarily due to such HP Party's gross negligence or willful misconduct.

33.     The Debtor, CRO and HP believe that the indemnification provisions of the Engagement Letter are customary and reasonable for a financial advisory firm such as HP, and are appropriate and customary in this jurisdiction.  The terms of the Engagement Letter, including the indemnification provisions, were negotiated by the Debtor, CRO and HP at arm's length and in good faith.  The Debtor submits that such provisions, viewed in conjunction with the other terms of HP's proposed retention, are reasonable and in the best interests of the Debtor, its estate and creditors in light of the fact that the Debtor require HP's services in these chapter 11 cases.

**BASIS FOR RELIEF**

34.     The Debtor seeks authority to employ and retain HP as its financial advisor and Mr. White as CRO under section 327 of the Bankruptcy Code, which authorizes a debtor to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the debtor in carrying out the debtors' duties under this title."  11 U.S.C. § 327(a).

35.     In addition, the Debtor seeks approval of the Engagement Letter (including the Fee Structure and the indemnification, contribution, reimbursement and other related provisions) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtor

11

"with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and chief restructuring officers on terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *see also Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008).

36. The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by HP, (ii) HP's substantial experience with respect to financial advisory services, and (iii) the hourly Fee Structure typically utilized by HP and other financial advisors in cases of this size and complexity. Accordingly, the Debtor believes that HP and the CRO's retention on the terms and conditions proposed herein is appropriate.

## WAIVER OF BANKRUPTCY RULES 6004(a) and 6004(h)

37. The Debtor requests that the Court enter an order providing that notice of the relief

requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## **NOTICE**

38.     Notice of this Motion will be served on the Secured Lender and any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

WHEREFORE, the Debtor requests that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances

Dated: March 21, 2025
       Houston, Texas

*/s/ Mirza N. Baig*
Mirza N. Baig

### Certificate of Service

I hereby certify that on March 21, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                         */s/ Omar J. Alaniz*
                                                         Omar J. Alaniz