UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § § § § § § § | Chapter 11 |
| **PLATINUM HEIGHTS, LP,**[1] | | Case No. 25-90012 (ARP) |
| Debtor. | | |

## ORDER APPROVING DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING (I) RETENTION AND EMPLOYMENT OF HMP ADVISORY HOLDINGS, LLC, DBA HARNEY PARTNERS, AS FINANCIAL ADVISORS TO THE DEBTOR NUNC PRO TUNC TO FEBRUARY 25, 2025 AND (II) AUTHORIZING THE EMPLOYMENT AND RETENTION OF ERIK WHITE AS CHIEF RESTRUCTURING OFFICER

Upon the application (the "**Application**")[2] of the above-captioned debtor and debtor in possession (the "**Debtor**") for entry of an order (this "**Order**") and the Declaration of Erik White (the "**White Declaration**") submitted in support of the Application, the Court hereby finds that based upon the representations made in the Application and White Declaration: (i) the CRO and HP do not represent any interests adverse to the Debtor's estate or its creditors with respect to the matter upon which they are to be engaged; (ii) the CRO and HP are each a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code, and as provided and disclosed in the Application and the White Declaration; (iii) the employment of the CRO and HP is necessary and is in the best interests of the Debtor's estate; and (iv) the Application should be GRANTED. It is therefore hereby **ORDERED** that:

---

[1] The last four numbers of the Debtor's federal taxpayer identification number are 4367. The location of the Debtor's service address is: 1917 Ashland Street, Houston, TX 70088.

[2] Capitalized terms used herein but undefined have the meaning provided in the Application.

1. The terms of the Engagement Letter, including, without limitation, the compensation provisions and the indemnification provisions, as modified by this Order, are reasonable terms and conditions of employment and are hereby approved as set forth herein; *provided, however*, that nothing in this Order shall constitute any findings regarding, or the approval or any determination with respect to, the reasonableness of compensation sought in any fee applications.

2. Notwithstanding the terms of the Engagement Letter, in accordance with sections 327(a) and 328 of the Bankruptcy Code, the Debtor is authorized (i) to employ and retain HP as Financial Advisor for the Debtor in accordance with the terms and conditions set forth in the Engagement Letter, as modified by this Order; and (ii) to designate Mr. Erik White as Chief Restructuring Officer for the Debtor in accordance with this Order.

3. The CRO shall provide the Debtor with the following services as supported by HP in its capacity as the Debtor's financial advisor:

   a. assisting with investigation and preparation of the Debtor's go-forward business and restructuring strategies;

   b. conferring with all retained estate professionals, including HP as financial advisor and the Debtor's legal counsel;

   c. conferring with the Debtor and Debtor's legal counsel regarding the retention of additional estate professionals, such as investment bankers or property brokers in furtherance of the Debtor's objectives in the Chapter 11 Case, subject to the requirements of the Bankruptcy Code and Bankruptcy Rules;

   d. reviewing payments or transfers by or for the benefit of Debtor to ensure compliance with the Bankruptcy Code and applicable orders of the Court;

   e. assisting in the formulating of any plan of reorganization or liquidation for the Debtor or, if necessary, negotiating bidding procedures and advising the Debtor on the terms of any proposed sale of the Debtor's assets;

   f. providing expert advice and testimony regarding financial matters related to, including, among other things, the feasibility of any proposed plan of reorganization; and

  g. taking any and all other actions that are necessary or appropriate to manage and operate the Debtor pursuant to the Bankruptcy Code, and applicable orders of the Court.

4. On a weekly basis, starting on Thursday, March 27, 2025, and continuing each Thursday thereafter until otherwise ordered by this Court, the CRO shall provide reports to CLS Heights, LLC (via e-mail to sfunk@grayreed.com, kleonard@grayreed.com, and akaufman@grayreed.com), providing a transaction detail from the prior week, including the dates, amounts, general descriptions, and payors and payees of each receipt and disbursement from the prior week.

5. The CRO shall have sole-decision making authority over all of the Debtor's operations while the Debtor remains in chapter 11. Such sole-decision making power and authority shall include, but shall not be limited to:

  a. unrestricted access to, and complete and unfettered control over, the Debtor's cash and bank deposit accounts;

  b. management of the Debtor's leases and contracts;

  c. investigation and, if prudent, pursuit of estate causes of action; and

  d. management of any and all other matters in this chapter 11 case where there is a conflict of interest with the Dr. Mirza Baig, the Debtor's general partner, the Debtor's majority equity holder, and any of their respective affiliates.

Dr. Mirza Baig shall not restrict, inhibit, or otherwise interfere with the CRO's responsibilities set forth in this Order. As soon as reasonably practicable following entry of this Order, but in no event more than three (3) business days hereafter, the Debtor shall file a notice with this Court evidencing the appropriate corporate resolutions, or similar governance documentation, appointing the CRO consistent with the terms of this paragraph and this Order.

6. Dr. Mirza Baig, in his capacity as the Debtor's authorized representative, retains the right to formulate and propose the Debtor's chapter 11 plan, without prejudice to other parties'

rights under applicable law to seek (and the Debtor's right to oppose) authority to modify the Debtor's exclusivity to file alternative plans, after due notice and a hearing.

7. Notwithstanding the terms of the Engagement Letter, HP shall not be paid an evergreen retainer from any non-debtor sources. Rather, the Debtor may advance a one-time, non-evergreen retainer to HP in the amount of $35,000, from its available cash, consistent with other orders of this Court, including any orders authorizing use of cash collateral or post-petition financing. The CRO and HP shall file fee applications for interim and final allowance of hourly compensation and reimbursement of expenses incurred in connection with the professional services performed for the Debtor in the Chapter 11 Case in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, Bankruptcy Local Rules, Complex Case Procedures, and any applicable orders and procedures of this Court. For billing purposes, the CRO and HP professionals providing services to the Debtor shall keep their time in one tenth (1/10) hour increments.

8. In the event that, during the pendency of the chapter 11 case, HP seeks reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be included in HP's fee applications and such invoices and time records shall be in compliance with the Bankruptcy Local Rules, and shall be subject to approval of the Court under the standards of Bankruptcy Code sections 330 and 331, without regard to whether such attorney has been retained under Bankruptcy Code section 327; provided, however, that HP shall not seek reimbursement from the Debtor's estate for any fees incurred in defending any of its fee applications in the Chapter 11 Case.

9. Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the White Declaration:

    i. In the event the Debtor seeks to have HP professionals assume executive officer positions that are different than the position(s) disclosed in the Application or Engagement Letter, or to materially change the terms of the engagement by either: (i) materially modifying the functions of personnel, (ii) adding executive officers, or (iii) altering or expanding the scope of the Engagement Letter, as modified by this Order, a motion to modify the retention shall be filed with the Court;

    ii. HP and its affiliates shall not act in any other capacity except as described in the Application and the Engagement Letter in connection with the Chapter 11 Case, including, without limitation as an investor or asset purchaser;

    iii. For a period of three (3) years after the conclusion of the engagement, HP shall not make any investments in the Debtor or the Reorganized Debtor, as applicable;

    iv. Except with respect to the duties and position of the CRO as set forth in the Application and Engagement Letter, no other principal, employee or independent contractor of HP and its affiliates shall serve as a director of the Debtor during the pendency of the Chapter 11 Case;

    v. Any HP professionals serving as corporate officers of the Debtor shall be subject to the same fiduciary duties and obligations applicable to other persons serving in such capacity;

    vi. The Debtor is permitted to indemnify the CRO on the same terms as provided to other officers and directors of the Debtor under the corporate bylaws and applicable state law, along with insurance coverage under the Debtor's directors and officers insurance policies, if any, except to the extent a claim or expense is judicially determined to have arisen from gross negligence, willful misconduct, bad faith, fraud, breach of fiduciary duty, if any, or self-dealing.

10. As to any HP professional not serving in executive officer positions, the following indemnification procedures are approved during the pendency of the chapter 11 case:

    i. subject to the limitations in subparagraph (c) below, HP shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefore are approved by the Court;

    ii. The Debtor shall have no obligation to indemnify HP, or provide contribution or reimbursement to HP, for any claim or expense that is either: (i) judicially determined (the determination having become final)

- 5 -

       to have arisen from HP's gross negligence, willful misconduct, fraud, breach of fiduciary duty, if any, bad faith or self-dealing; or (ii) settled prior to a judicial determination as to HP's gross negligence, willful misconduct, breach of fiduciary duty, if any, or bad faith or self-dealing but determined by this Court, after notice and hearing to be a claim or expense for which HP should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order; and

    iii. If, before the earlier of (i) the entry of an order confirming the plan in the Chapter 11 Case (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Case, HP believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including without limitation, the advancement of defense costs, HP must file an application with the Court, and the Debtor may not pay any such amounts to HP before the entry of an order by this Court approving the payment. This subparagraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by HP for indemnification, contribution, and/or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify HP. All parties in interest shall retain the right to object to any demand by HP for indemnification, contribution, and/or reimbursement.

11. Notwithstanding anything to the contrary in the Application or Engagement Letter, to the extent HP uses the services of third party contractors or subcontractors (the "Contractors") in this chapter 11 case, HP shall: (a) pass through the cost of contractors to the Debtor at the same rate that HP pays the Contractors; (b) with respect to costs incurred by the Contractors, seek reimbursement for actual, reasonable, and documented costs only; (c) ensure that the Contractors are subject to the same conflict checks as were required for HP in connection with the chapter 11 case; and (d) file with the Court such disclosures as required by Bankruptcy Rule 2014.

12. HP shall provide ten (10) business days' notice to the Debtor, the U.S. Trustee, and any statutory committee appointed in the chapter 11 case before any increases in the hourly rates set forth in the Application or the Engagement Letter are charged to the Debtor. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard

set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

13. HP shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtor's other retained professionals in the Chapter 11 Case.

14. HP shall make a reasonable effort to comply with the U.S. Trustee's requests for additional information and documentation.

15. Absent further order of the Court, HP shall not be entitled to reimbursement for fees and expenses in connection with the defense of any objection to its fees.

16. To the extent the Application, Engagement Letter or White Declaration are inconsistent with this Order, the terms of this Order shall control.

17. The terms and conditions of this Order are immediately effective and enforceable upon its entry.

18. The Debtor is authorized to take all action necessary to effectuate the relief granted in this Order in accordance with the Application.

19. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed: _____, 2025.

_____
THE HONORABLE ALFREDO R. PEREZ
UNITED STATES BANKRUPTCY JUDGE