**<u>Exhibit 2</u>**

Declaration

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **PLATINUM HEIGHTS, LP,**[1] | § | Case No. 25-90012 (ARP) |
| | § | |
| Debtor. | § | |
| | § | |

**DECLARATION OF MIRZA N. BAIG IN
SUPPORT OF DEBTOR'S FIRST DAY MOTIONS**

I, Mirza N. Baig, hereby declare under penalty of perjury the following:

I am the manager of Nexus Capital Partners Real Estate Investments LLC ("**Nexus**"), which is the general partner of the above captioned debtor and debtor in possession (the "**Debtor**"). I am also the principal equity holder of the Debtor. In my capacity as manager of Nexus and as the principal equity holder of the Debtor I am familiar with the facts and circumstances set fort herein, which are based on my actual knowledge as well as information and advice provided to me by the Debtor's management, professionals, attorneys, and advisors. In addition, the statements made herein are based, in whole or part, upon my review of public and non-public documents and my discussions with other members of the Debtor's management team and advisors on whom I have relied. I am generally familiar with Debtor's business, financial condition, day-to-day operations, and the circumstances leading to the commencement of this chapter 11 case (the "**Chapter 11 Case**"). Except as otherwise noted, I have personal knowledge of the matters set forth in this declaration (this "**Declaration**") or have gained knowledge of such matters from the Debtor's employees or retained advisers in the ordinary course of my responsibilities. I believe,

---

[1] The last four numbers of the Debtor's federal taxpayer identification number are 4367. The location of the Debtor's service address is: 1917 Ashland Street, Houston, TX 70088.

1

to the best of my knowledge, that the facts and circumstances set forth herein are true and correct. References to bankruptcy, the chapter 11 process, and related legal matters are based on my understanding of such in reliance on the explanation provided by, and the advice of, counsel to the Debtor. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtor. If called upon to testify, I would testify competently to the facts set forth herein

1. On February 20, 2025, the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"). The Debtor is a Texas limited partnership. The Debtor's principal real estate asset is a medical professional building referred to as the "Heights Hospital" (the "**Hospital**") located at 1917 Ashland Street, Houston, TX, 77008 (the "**Property**"). The Hospital is a six-story midrise building where medical professionals may provide a variety of medical services to patients. I am submitting this Declaration for the purpose of apprising the Court and other parties in interest information regarding the Debtor's need for liquidity in this Chapter 11 Case and support for the Debtors' DIP Motion (as defined below) to approve the proposed debtor-in-possession facility (the "**DIP Facility**"). This Declaration also sets forth the evidentiary basis for each of the first day pleadings and expresses the Debtor's belief that the Court should approve the same.

**Debtor's Background**

2. The Debtor purchased the Property in a § 363 sale in the *In re 1917 Heights Hospital, LLC* chapter 11 case (S.D. Bankr. Tex., Case No. 21-31811). *See* Dkt. No. 44 (order approving sale). The debtor in the *1917 Heights Hospital* case assumed and assigned a lease with Curahealth Houston Heights, LLC ("**Curahealth**"), who occupies one of the Hospital's six floors.

2

3. The Hospital also had a lease with North Houston Surgical Hospital, LLC ("**North Houston Surgical**"). North Houston Surgical paid approximately $4.8 and $4.9 million in rent to Platinum Heights in 2022 and 2023. Beginning in 2024, North Houston Surgical became financially distressed and could not afford the rent payments to Platinum Heights. North Hoston Surgical ceased operations in June 2024.

4. The Debtor struggled to stay cash flow positive after North Houston Surgical ceased rent payments in June 2024. Since then, through the Petition Date, Curahealth was the only paying tenant in the Hospital. The Debtor could not afford insurance on the Property, and therefore coverage lapsed prepetition. The Property is currently insured under the B1 Bank's (the "**Secured Lender**") force-placed insurance.

5. The Debtor recently signed a new lease agreement with Ashland Healthcare, LLC ("**Ashland Healthcare**," and together with Curahealth, the "**Tenants**") that will become effective March 1, 2025. Ashland Healthcare will provide acute care to patients on the top two floors of the Hospital. Ashland Healthcare will also lease the first floor for use as an emergency room and clinic space. The rent from the Ashland Healthcare lease will materially improve the Debtor's financial position.

### DIP FINANCING

6. As discussed herein, I submit this Declaration in support of the *Debtor's Emergency Motion for entry of Interim and Final Orders (I) Authorizing the Debtor to Incur Postpetition Credit on an Unsecured Basis, (II) Scheduling a Final Hearing, and (III) Granting Related Relief* [Dkt. No. 17] (the "**DIP Motion**"). In particular, I submit this Declaration as evidence that the proposed $260,000.00 DIP Facility is (a) in the best interest of the Debtor, its estate and all parties in interest and (b) will provide the Debtor with access to sufficient working capital and liquidity until the Debtor is able to make use of the Cash Collateral (defined below).

7. The Debtor relies on the rental payments of its tenants to fund its operations, maintain the Property and provide liquidity necessary in the operation of the Hospital. As set forth in the Cash Collateral Motion (defined below), the Property is encumbered by a Deed of Trust (as defined in the Cash Collateral Motion) to secure repayment of the Note (as defined in the Cash Collateral Motion) in an amount of $29,000,000 owed to Secured Lender. Pursuant to the Deed of Trust the Debtor also provided an assignment of its rental income to the Secured Lender. The rental revenue provided by Curahealth is insufficient to maintain the Debtor's operations. Further, Ashland Healthcare will not begin making rental payments until May of this year. Given these timing constraints there is a critical funding gap in the Debtor's operations that must be addressed immediately.

8. The Debtor has an immediate and critical need to obtain the financing provided by the DIP Facility to, among other things, (i) pay the fees, costs and expenses incurred in connection with this Chapter 11 Case, (ii) permit the orderly continuation of the operation of the Debtor's business, (iii) maintain business relationships with customers, vendors and suppliers, and (iv) satisfy other working capital and operational needs. Absent entry into the DIP Facility, the Debtor will not have sufficient liquidity to continue operating in the ordinary course and may be forced to shut down the Hospital to the detriment of the Tenants and their patients who rely on the Hospital's services.

9. The DIP Facility is provided on an unsecured basis and was negotiated by and between counsel to the Debtor and my personal counsel in arm's length and good faith negotiations. The DIP Facility will be used in accordance with the Budget attached to the DIP Motion (the "**Budget**"). The Budget was approved by the Debtor, as represented by counsel on the one hand, and me as represented by counsel on the other hand. The Budget sets forth all

expected material cash receipts and disbursements pursuant to which the Debtor will fund its operations. The size of the DIP Facility was determined upon a review of the Debtor's average spending needs and an estimate of when rental revenue from the Tenants would be able to sufficiently support the Debtor's operations. Given the nature of the DIP Facility as a gap funding measure, and the relatively small value of the DIP Facility, the Debtor believes moving forward with the DIP Facility is in the best interest of the Debtor, its estate and parties in interest, especially given the irreparable harm that would be caused by the failure to obtain immediate funding.

10. For the foregoing reasons, I believe that granting the relief requested in the DIP Motion is appropriate and in the best interest of the Debtor, its estate, and parties in interest.

## CASH COLLATERAL MOTION

11. On February 28, 2025, the Debtor filed the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Lender, (III) Scheduling a Final Hearing and (IV) Granting Related Relief* [Dkt. No. 13] (the "**Cash Collateral Motion**").

12. As the rental revenue from the Tenants is pledged to the Secured Lender, the Debtor requires this Court to grant the Debtor access to these revenues (the "**Cash Collateral**") to fund its operations. The size of the DIP Facility and the relief requested in the DIP Motion are predicated on the assumption that the Debtor will be permitted to use the Cash Collateral to fund its obligations once Ashland Healthcare begins paying rent in May of 2025.

13. Under the proposed order to the Cash Collateral Motion, the Secured Lender will receive adequate protection payments in the form of (i) a scheduled payment of $191,134 on or before April 4, 2025, (ii) regularly scheduled payments to the Secured Lender and (iii) replacement liens on all post-petition property of the Debtor, as set forth in greater detail in the Cash Collateral Motion.

14. As stated herein, the Debtor is and will be in critical need of liquidity when Ashland Healthcare begins to pay rent, and it is imperative that the Debtor be granted the authority to use the Cash Collateral to fund its operation during the Chapter 11 Case after exhaustion of the DIP Facility.

15. For the foregoing I believe that the relief sought in the Cash Collateral Motion is appropriate and in the best interest of the Debtor, its estate and parties in interest.

## UTILITIES MOTION

16. On February 28, 2025 the Debtor filed the *Emergency Motion of Debtor for an Order (I) Approving Debtor's Proposed Form of Adequate Assurance of Payment to Utility Companies; (II) Establishing Procedures for Resolving Objections by Utility Companies; (III) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Service; and (IV) Granting Related Relief* [Dkt. No. 15] (the "**Utilities Motion**").

17. The Hospital provides urgent care and emergency room services to patients as well as various other healthcare related services. In the ordinary course of its operation, the Hospital utilizes various Utility Services (as defined in the Utilities Motion) such as water, sewage, electrical, chiller refrigeration, and fire panel protection provided by the Utility Companies (as defined in the Utilities Motion).

18. The relief requested in the Utilities Motion is paramount to the Debtor's continued operation. As a medical service provider, the Debtor and the Hospital require running water, adequate sewage removal and treatment, electricity, chilling and refrigeration services for patient care and medical product preservation and fire panel protection in the event of fires. Cancellation of any Utility Service or alteration of the prepetition terms could have disastrous effects on the

Debtor's ability to ensure appropriate patient care at the Hospital, and could result in the loss of human life. The Debtor is heavily reliant on the Utility Companies to continue providing Utility Services. It is essential that the Utility Services continue uninterrupted during this Chapter 11 Case.

19. The Debtor estimates that it pays approximately $76,000 in monthly and quarterly bills for Utility Services. The Utility Motion seeks, among other things, permission to allow the Debtor to provide the Utilities Companies with adequate assurance deposit of approximately $38,000 (the "**Adequate Assurance Deposit**") to protect against any postpetition default in payment to the Utility Companies and ensure that the Utility Companies do not alter the terms of their prepetition agreements with the Debtor. The Adequate Assurance Deposit will be held for the benefit of the Utility Companies in a segregated account for the duration of this Chapter 11 Case and may be applied to any postpetition defaults in payment to the Utility Companies. The Debtor will hold the Adequate Assurance Deposit at B1, and no liens will encumber the Adequate Assurance Deposit or the segregated account. I believe that the Adequate Assurance Deposit in conjunction with the Debtor's ability to pay for future utility services in accordance with their prepetition practices constitutes sufficient adequate assurance of payment to the Utility Companies. Accordingly, I believe the Utilities Motion should be granted.

## THE SOFA EXTENSION MOTION

20. On February 28, 2025, the Debtor filed the *Debtor's Emergency Motion for an Order Extending Time to File (A) Schedule of Assets and Liabilities, (B) Schedule of Current Income and Expenditures, (C) Schedule of Executory Contracts and Unexpired Leases, and (D) Statement of Financial Affairs* [Dkt. No. 16] (the "**Extension Motion**").

21. The Extension Motions seeks permission to extend the deadline by which the Debtor must file its Schedules and SOFAs (as defined in the Extension Motion) by an additional fourteen (14) days to permit the Debtor sufficient time to adequately and accurately report on the

7

contents of the Debtor's books and records. To ensure that it is making fulsome and accurate disclosures, the Debtor has retained the services of Harney Partners (the "**Financial Advisor**") as financial advisor. The additional time requested in the Extension Motion will also permit the Financial Advisor to review the Debtor's books and records and otherwise familiarize themselves with the Debtor's operations and ensure the accuracy of the Debtor's disclosures.

22. The Debtor's counsel previewed its requested Schedules and SOFAs timeline with the Office of the United States Trustee for this district (the "**UST**"). I am informed that this is a routine form of relief and based on the foregoing, the lack of harm to parties in interest and the benefit to the Debtor and its estate, I believe the relief sought in the Extension Motion should be granted.

I declare under penalty of perjury that, after reasonable inquiry, the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  March 2, 2025
         Houston, TX

/s/ Mirza N. Baig
Mirza N. Baig