United States Bankruptcy Court
Southern District of Texas
**ENTERED**
April 23, 2025
Nathan Ochsner, Clerk

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| PLATINUM HEIGHTS, LP,[1] | § | Case No. 25-90012 (ARP) |
| | § | |
| Debtor. | § | |
| | § | |

**FINAL ORDER
(I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO THE SECURED LENDER,
(III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

On February 28, 2025, the above-captioned debtor and debtor-in-possession (the "***Debtor***") in the above-captioned chapter 11 case (the "***Case***"), filed *Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Lender, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (the "***Motion***").[2] In the Motion, the Debtor requested, *inter alia*, entry of a final order (this "***Final Order***") pursuant to Sections 105, 361, and 363 of title 11 of the United States Code, 11 U.S.C.§§ 101, et seq. (the "***Bankruptcy Code***"), and in accordance with Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), authorizing the Debtor's use of Cash Collateral (as hereinafter defined), as set forth herein. On March 3, 2025, the Court after having considered the Motion, and having held a hearing on such date, entered the *Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Lender, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 28] (the "***First Interim Order***"). On March 26, 2025, the Court after

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is Platinum Heights, LP (4367). The location of the Debtor's corporate headquarters and the Debtor's service address is: 1917 Ashland Street, Houston, Texas 77008.
[2] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the Motion.

1

having considered the Motion, and having held a hearing on March 24, 2025 (the "**Second Interim Hearing**"), entered the *Second Interim Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Lender, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 76] (the "**Second Interim Order**").

Now, following the Second Interim Hearing, the Court having held a final hearing on the Motion on April 23, 2025 (the "***Final Hearing***"), and having considered the evidence presented or proffered and the statements and representations of the parties on the record at the Final Hearing, and all objections, if any, to the entry of this Final Order having been resolved by agreement or order of the Court or overruled; and after due deliberation and consideration and sufficient cause appearing therefor;

1. <u>The Chapter 11 Case</u>. On February 20, 2025 (the "***Petition Date***"), the Debtor commenced the above captioned case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (this "***Court***").

2. <u>Debtor-in-Possession</u>. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. To date, no trustee or examiner has been appointed in this Case. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

3. <u>Jurisdiction and Venue.</u> The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. §157(b). Venue of the Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001, and the Local Rules of this Court (the "***Local Rules***").

4.      Committee Formation.  To date, no official committee of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Case.

5.      Notice.  On March 28, 2025, the Debtor served copies of the Motion and notice of the Final Hearing to all creditors and parties in interest entitled to such notice in compliance with Bankruptcy Rules 2002, 4001, 9014, and the Local Rules, including (i) the Office of the United States Trustee for this District, (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate, and (iii) the Secured Lender.  On April 15, 2025, the Debtor served notice of the rescheduled Final Hearing to the aforementioned parties.  Under the circumstances, such notice of the Final Hearing and the emergency relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rule 4001 and the Local Rules, and no other or further notice of the Final Hearing or the relief granted in this Final Order is necessary or required.

6.      Immediate Need for Use of Cash Collateral.  An immediate need exists for the Debtor to obtain funds in order to continue the operation of its business.  The Debtor urgently needs the ability to use cash collateral to pay for insurance to comply with U.S. Trustee guidelines and to mitigate potential estate losses.  The Debtor also needs to pay utilities that are critical to the Debtor's tenants' patients.  The Debtor pays for gas, electricity, and water in the ordinary course, some of which are on a monthly or basis.  Interruption of the Debtor's operations and services during business hours could also have a severe impact on patient care, including emergency room services.

7.      Conditional Consent to Use of Cash Collateral. The Debtor seeks authorization to use Cash Collateral to pay the Debtor's ordinary and necessary cost and expenses set forth in the budget attached to this Final Order as Exhibit A (the "*Budget*"). The Secured Lender has consented

3

to the use of Cash Collateral subject to the Budget, including deferral of the mortgage payment due in May 2025.  No amendments or extensions of the Budget shall be authorized or approved without further order of this Court after notice and a hearing.

8. <u>Good Cause/Fair and Reasonable Terms</u>.  Good cause has been shown for the entry of this Final Order.  Among other things, entry of this Final Order will minimize disruption of the business and operations of the Debtor, including patient care, and permit the Debtor to maintain the value of the estate.  The use of Cash Collateral authorized hereunder is necessary, essential, and appropriate and is in the best interest of, and will benefit, the Debtor, its creditors, and the Debtor's estate as it will, among things, provide the Debtor with the necessary liquidity to avoid immediate and irreparable harm to the Debtor and its estate.  The terms and conditions of the use of Cash Collateral and the liens and rights granted to the lenders hereunder are fair and appropriate under the circumstances.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

9. <u>Motion Granted</u>. The Motion is hereby granted on a final basis as set forth herein. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

10. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

11. Notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Local Rules.

12. <u>Final Order</u>. This Final Order shall be considered a final cash collateral order and shall be binding upon all parties and upon all subsequently appointed court officers, including any trustee appointed in the Case under Chapter 7 or Chapter 11 of the Bankruptcy Code.

13. <u>DIP Account</u>. The Debtor shall maintain a debtor-in-possession ("**DIP**") account at b1 Bank, which account shall contain all operating revenues and any other source of cash constituting Cash Collateral, which is (or has been) generated by and is attributable to the Debtor's business (the "***DIP Account***"). All cash generated by the Debtor or from the Debtor's business or assets, including any cash held in any of the Debtor's prepetition bank accounts, shall be immediately transferred by the Debtor to the DIP Account. The Debtor shall be prohibited from withdrawing or using Cash Collateral funds from the DIP Account except as provided for in the Budget, this Final Order, or pursuant to further order of the Court. The Debtor is authorized, but not directed, pursuant to sections 363(c) and 105(a) of the Bankruptcy Code to continue to manage its cash pursuant to the system maintained by the Debtor before the Petition Date, to collect, concentrate, disburse cash in accordance with the Debtor's cash management system, and to make ordinary course changes to its cash management system; provided that the Debtor shall provide notice to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases of any material changes to its cash management system.

14. The Debtor is authorized to open new bank accounts; provided, however, that all accounts opened by the Debtor on or after the Petition Date shall be at depositories that are (i) insured by the FDIC or the Federal Savings and Loan Insurance Corporation, (ii) designated as an authorized depository by the U.S. Trustee pursuant to the UST Operating Guidelines, and (iii) with a bank that agrees to be bound by the terms of this Final Order; provided further, however, that such opening shall be timely indicated on the Debtor's monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee and any statutory committee.

15. The Debtor shall (i) maintain a cash balance less than or equal to the FDIC insured limit or (ii) transfer cash balances in excess of the FDIC insured limit to other debtor-in-possession

5

accounts, and (iii) provide notice to the U.S. Trustee and any statutory committee of balances that exceed the FDIC insured limit.

16. <u>Terms of Cash Collateral Use</u>. The Debtor is hereby authorized to use Cash Collateral to pay the items set forth in the Budget, and up to the respective aggregate amount of disbursements set forth in the Budget. The Debtor shall not use, sell, or expend, directly or indirectly, the Cash Collateral except pursuant to, and in the amounts set forth in, the Budget and upon the terms and conditions set forth in this Final Order.

17. The Debtor shall maintain the insurance referenced in **Exhibit B** that provides coverage on the collateral of the Secured Lender.

18. The Debtor's authority to use the Cash Collateral of the Secured Lender pursuant to this Final Order shall terminate upon the occurrence and continuation of any of the following events past the applicable cure period, if any, each of which shall constitute an "*Event of Default*":

   a. The Case is converted to a case under Chapter 7 of the Bankruptcy Code, is dismissed, or the Secured Lender is granted relief from the automatic stay;

   b. This Court removes the Debtor as debtor-in-possession; or

   c. Any default under, breach of or failure to comply with, any provisions of this Final Order, which breach is not cured within fourteen (14) days after written notice thereof.

19. Upon the occurrence and continuation of any Event of Default past the applicable cure period, the Secured Lender shall be entitled to the following rights and remedies, which are cumulative in nature:

   a. Secured Lender may immediately, without any notice to Debtor, terminate its consent to the use of its Cash Collateral, subject to, in the case of an Event of Default under paragraph 18(c) above, the Debtor's right to seek this Court's approval of use of cash collateral under 11 U.S.C. § 363(c)(2)(B) and the Secured Lender's right to object to such relief;

      b.      Secured Lender may seek relief from the automatic stay to exercise all rights and remedies with respect to its collateral upon an expedited basis with at least seven (7) days' notice of the hearing; and

      c.      Upon entry of an order lifting the automatic stay under 11 U.S.C. § 362 of the Bankruptcy Code, the Debtor shall assemble and deliver all collateral subject to the Secured Lender's loan documents (as applicable per pre-petition priority) at the Debtor's place of business.

20. Notwithstanding any provision of this Final Order to the contrary, nothing in this Final Order shall constitute or be deemed to constitute a waiver of any rights, remedies, claims or defenses the Secured Lender may have pursuant to its respective loan documents or its collateral, provided for by the Bankruptcy Code or applicable non-bankruptcy law, including the right to move for relief from the automatic stay or to seek a reversal, modification, or vacation of this Final Order. The rights and obligations of the Debtor and the rights and security interests of the Secured Lender arising out of this Final Order are in addition to and are not intended as a waiver or substitution for any right, remedy, lien or security interest granted under the parties' respective loan documents including the collateral. Nothing in this Final Order shall in any way affect the Secured Lender's or the Debtor's right to later challenge the extent, validity, or priority of any lien, claim, or encumbrance asserted by any party against any of the Debtor.

21. <u>Further Authorization</u>. The Debtor is hereby authorized to enter into all agreements pursuant to the terms of this Final Order necessary to allow the Debtor to use Cash Collateral subject to the terms of this Final Order in the amounts and for the expenses set forth in the Budget. The Debtor is authorized to collect and receive all accounts receivable and other operating revenues and immediately deposit the same in the DIP Account.

22. <u>Taxes</u>. Nothing in this Final Order shall be construed to grant the Secured Lender liens which are senior to pre-and postpetition statutory ad valorem real property tax liens and personal property tax liens.

23. <u>Adequate Protection – Replacement Liens</u>. As adequate protection for any diminution in value of each of Secured Lender's interest in the Debtor's collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay with respect to the Collateral and/or the Debtor's use, sale, or lease of the Collateral during the Case, the Secured Lender is hereby granted, effective as of the Petition Date, valid, binding, enforceable and automatically perfected liens in all post-petition property of the Debtor, of the same nature, to the same extent, and with the same priority as such Secured Lender's lien existing as of the Petition Date (the "**Replacement Liens**") *provided*, *however*, that the Replacement Liens shall be subject to (i) the Carve Out and (ii) all prepetition liens in the same order and priority held as of the Petition Date.

24. <u>Additional Adequate Protection</u>. In addition to the Replacement Liens, the Debtor shall continue paying its regularly scheduled payments to the Secured Lender except as provided herein. Notwithstanding the foregoing and the applicable provisions of 11 U.S.C. § 364(d)(3), the Debtor is not required to make the regularly scheduled payment to the Secured Lender attributable to the month of May 2025 as a condition to maintaining the automatic stay after 90 days after the Petition Date. Such deferred payment shall be paid in cash, unless the Secured Lender agrees otherwise, upon the effective date of the Debtor's chapter 11 plan of reorganization. Furthermore, the Debtor shall consult with Frank Kimball of SRS Houston Heights, LLC in connection with any material filing in this chapter 11 case at least three (3) business days before such filing, if practical. Such material filing shall include the employment of any estate professional, any motion to incur debt, any motion to sell any of the Debtor's assets, any proposed amendment to the Budget, and any filing related to a plan of reorganization.

25. <u>Carve Out</u>. The Replacement Liens granted herein shall be subject to the sums of: (a) all fees required to be paid to the Clerk of the Court and to the Office of the United States

Trustee pursuant to 28 U.S.C. § 1930(a)(6), plus interest at the statutory rate; (b) all reasonable fees and expenses up to $75,000 incurred by a trustee under sections 726(b) and 1104 of the Bankruptcy Code; (c) fees payable to the Clerk of the Court; and (d) subject to the Budget, up to $200,000 of court-approved administrative expense claims of estate professionals, employed pursuant to order of this Court, for incurred but unpaid fees, expenses and other costs (all such carve-out amounts referenced above, collectively, the "*Carve Out*").

26. <u>Subsequent Modification of Order</u>.  If any or all of the provisions of this Final Order are hereafter modified, vacated, or stayed, such modification, vacation, or stay shall not affect the validity of any obligation, indebtedness or liability incurred by the Debtor from the Petition Date through the effective date of such modification, vacation, or stay, or the validity or enforceability of any lien or security interest authorized or created by this Final Order.

27. <u>Reservation of Rights</u>. Nothing herein shall prejudice the rights of the Secured Lender or the Debtor to seek relief afforded to them under the Bankruptcy Code, including any right to defend against any such relief sought.

28. The Court shall retain jurisdiction to interpret, implement, and enforce this Final Order.

Signed: April 23, 2025

*[signature]*
Alfredo R Pérez
United States Bankruptcy Judge

## **Exhibit A**

Budget

**Platinum Heights LP**
*Cash Collateral Budget*

| Period: | Forecast 1 | Forecast 2 | Forecast 3 | Forecast 4 | Forecast 5 | Forecast 6 | Forecast 7 | Forecast 8 | Forecast 9 | Forecast 10 | Forecast 11 | Forecast 12 | Forecast 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending: | 4/25/25 | 5/2/25 | 5/9/25 | 5/16/25 | 5/23/25 | 5/30/25 | 6/6/25 | 6/13/25 | 6/20/25 | 6/27/25 | 7/4/25 | 7/11/25 | 7/18/25 |
| BEGINNING CASH | $ 76,138 | $ 70,254 | $ 316,064 | $ 245,156 | $ 224,656 | $ 204,156 | $ 127,386 | $ 405,203 | $ 203,569 | $ 193,069 | $ 182,569 | $ 447,757 | $ 202,483 |
| *RECEIPTS* | | | | | | | | | | | | | |
| PAM Health: Base + Additional Rent | - | 69,211 | - | - | - | - | 69,211 | - | - | - | 69,211 | - | - |
| Ashland Healthcare: Base + Additional Rent | - | 272,747 | - | - | - | - | 272,747 | - | - | - | 272,747 | - | - |
| **Total Cash Receipts** | - | 341,958 | - | - | - | - | 341,958 | - | - | - | 341,958 | - | - |
| *DISBURSEMENTS* | | | | | | | | | | | | | |
| *Operations* | | | | | | | | | | | | | |
| Property Insurance | - | - | (28,743) | - | - | - | (28,743) | - | - | - | - | (28,743) | - |
| HVAC Rental | - | (24,898) | - | - | - | - | (24,898) | - | - | - | - | (24,898) | - |
| Utilities | - | (56,250) | - | - | - | (51,770) | - | - | - | - | (51,770) | - | - |
| Security & Janitor Services | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Medgas | - | (5,000) | - | - | - | (5,000) | - | - | - | - | (5,000) | - | - |
| Water Management | - | (7,500) | - | - | - | (7,500) | - | - | - | - | (7,500) | - | - |
| Repairs & Maintenance | (5,000) | (2,000) | (41,665) | (20,000) | (20,000) | (12,000) | (10,000) | (10,000) | (10,000) | (10,000) | (12,000) | - | (10,000) |
| General & Administrative | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) | (500) |
| **Total Operations** | (5,500) | (96,148) | (70,908) | (20,500) | (20,500) | (76,770) | (64,141) | (10,500) | (10,500) | (10,500) | (76,770) | (54,141) | (10,500) |
| *Bankruptcy Costs* | | | | | | | | | | | | | |
| Prepetition Secured Lender Adequate Assurance | - | - | - | - | - | - | - | (191,134) | - | - | - | (191,134) | - |
| United States Trustee Fee | (384) | - | - | - | - | - | - | - | - | - | - | - | - |
| Reed Smith | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Harney Partners | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Unsecured Creditors Committee Professionals | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Bankrutpcy Costs** | (384) | - | - | - | - | - | - | (191,134) | - | - | - | (191,134) | - |
| **Operating Cash Flow** | (5,884) | 245,811 | (70,908) | (20,500) | (20,500) | (76,770) | 277,817 | (201,634) | (10,500) | (10,500) | 265,188 | (245,275) | (10,500) |
| **DIP Advances** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash Balance** | 70,254 | 316,064 | 245,156 | 224,656 | 204,156 | 127,386 | 405,203 | 203,569 | 193,069 | 182,569 | 447,757 | 202,483 | 191,983 |
| | | | | | | | | | | | | | |
| **Total DIP Advances** | | | | | | | | | | | | | |
| Beginning Balance | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 |
| Advances | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Paydowns | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Balance** | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 | 335,000 |

**Exhibit B**

| **Carrier** | **Effective Date** | **Policy No.** | **Premium** | **Description** | **Coverage Limits** |
|---|---|---|---|---|---|
| Lloyd's of London | 03/05/2025 | AMR87198 | $319,890.37 | Commercial Property | $54,000,000/building $3,252,000/business income |