**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **PLATINUM HEIGHTS, LP,**[1] | § | **Case No. 25-90012 (ARP)** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |

**DECLARATION OF ERIK WHITE IN**
**SUPPORT OF CONFIRMATION OF THE**
**FIRST AMENDED PLAN OF REORGANIZATION OF DEBTOR**
<u>**PLATINUM HEIGHTS, LP AS MODIFIED ON NOVEMBER 25, 2025**</u>

I, Erik White, declare as follows:

1.        I am the Chief Restructuring Officer (the "***CRO***") of the above captioned debtor and debtor-in-possession (the "***Debtor***") and I am duly authorized to execute this declaration (the "***Declaration***") on behalf of the Debtor.  In my capacity as the CRO of the Debtor, I am familiar with the facts and circumstances set forth herein, which are based on my actual knowledge as well as information and advice provided to me by the Debtor's pre-petition management, professionals, attorneys, and advisors.  In addition, the statements made herein are based, in whole or part, upon my review of public and non-public documents and my discussions with other members of the Debtor's pre-petition management team and advisors on whom I have relied.  I am generally familiar with Debtor's business, financial condition and day-to-day operations.  Except as otherwise noted, I have personal knowledge of the matters set forth in this Declaration or have gained knowledge of such matters from the Debtor's employees or retained advisers in the ordinary course of my responsibilities.  I believe, to the best of my knowledge, that the facts and

---

[1] The last four numbers of the Debtor's federal taxpayer identification number are 4367.  The location of the Debtor's service address is:  1917 Ashland Street, Houston, TX 70088.

circumstances set forth herein are true and correct.  References to bankruptcy, the chapter 11 process, and related legal matters are based on my understanding of such in reliance on the explanation provided by, and the advice of, counsel to the Debtor.

2.      On March 21, 2025, the Debtor filed the *Debtor's Application for Entry of an Order Authorizing (I) Retention and Employment of HMP Advisory Holdings, LLC DBA Harney Partners, as Financial Advisors to the Debtor Nunc Pro Tunc to February 25, 2025, and (II) The Employment and Retention of Erik White as Chief Restructuring Officer* [Dkt. No. 68]. The Court approved the Debtor's retention of HMP Advisory Holdings, dba Harney Partners ("**HP**") and my appointment as CRO on April 15, 2025 [Dkt. No. 80] *nunc pro tunc* to February 25, 2025 (the "**Retention Order**").

3.      I am over the age of 18 and authorized to submit this Declaration in support of the *First Amended Plan of Reorganization of Debtor Platinum Heights, LP as Modified on November 25, 2025* [Dkt. No. 210] (the "**Plan**").[2]

## QUALIFICATIONS

4.      I have held the position of CRO since April 15, 2025, *nunc pro tunc* to February 25, 2025 when the Court entered the Retention Order.  As CRO, I am responsible for overseeing the operations and financial activities of the Debtor in the Chapter 11 Case, including but not limited to, monitoring cash flow, business relationships, and financial planning.

5.      I have over 17 years of consulting, restructuring, and corporate finance experience and have served in various roles, including as CRO and financial advisor.  I have extensive experience and knowledge in the fields of financial restructuring and turnaround services and have

---

2 Capitalized terms used herein but not otherwise defined shall have the meaning given to such terms in the Plan.

assisted numerous troubled companies and creditors both in workout situations and in bankruptcy proceedings.[3]

6.      The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinion, on information that I have from the Debtor's advisors or employees working directly with me or from other members of the HP team working with me or under my supervision or direction, or from the Debtor's books and records.  I am not being specifically compensated for this testimony other than through payments received by HP as the Debtor's financial advisor and for my services as CRO.  If I were called upon to testify, I could and would competently testify to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the Debtor.

## **BACKGROUND**

7.      On February 20, 2025 (the "***Petition Date***"), the Debtor commenced this case by filing a petition for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Case***").  The Debtor continues to operate its businesses and manage its property and assets as debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. To date, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 Case.

8.      The Debtor is a Texas limited partnership. The Debtor's principal real estate asset is a medical professional building referred to as the "Heights Hospital" (the "***Hospital***") located at 1917 Ashland Street, Houston, TX, 77008 (the "***Property***"). The Hospital is a six-story midrise building where medical professionals provide a variety of medical services to patients.

---

3 *See Declaration of Erik White in Support of Debtor's Application for Entry of an Order Authorizing (I) Retention and Employment of HMP Advisory Holdings, LLC, DBA Harney Partners, as Financial Advisors to the Debtor Nunc Pro Tunc to February 25, 2025 and (II) the Employment and Retention of Erik White as Chief Restructuring Officer* [Dkt. No. 68-1] for a more fulsome description of the CRO's qualifications.

9.      On September 5, 2025, the Debtor filed the first iteration of the Plan, which after continued negotiations with creditors and parties in interest was continually amended and superseded by subsequent amendments and modifications culminating in the Plan filed on November 25, 2025.

10.      On October 30, 2025, the Debtor filed the *Disclosure Statement for the First Amended Plan of Reorganization of Debtor Platinum Heights, LP* [Dkt. No. 189] (as modified, amended, or supplemented from time to time, the "***Disclosure Statement***").

11.      On October 31, 2025, the Court entered the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Conditionally Approving the Disclosure Statement; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation Procedures; (V) Approving the Combined Notice; and (VI) Granting Related Relief* [Dkt. No. 194] (the "***Solicitation Procedures Order***").

12.      On November 14, 2025, the Debtor filed the Plan Supplement [Dkt. No. 203], which contained the Debtor's Liquidation Analysis (the "***Liquidation Analysis***").

## THE PLAN SATISFIES THE STATUTORY REQUIREMENTS FOR CONFIRMATION

13.      I understand that section 1129(a)(1) of the Bankruptcy Code requires the Plan to comply with the applicable provisions of the Bankruptcy Code.  I believe that the Plan complies with all the requirements of the Bankruptcy Code, for the reasons set forth below.

**A.  The Plan complies with Bankruptcy Code Section 1122**

14.      I understand that under section 1122 of the Bankruptcy Code, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." I am familiar with the Debtor's capital structure and generally familiar with the various Claims that were scheduled or filed against the Debtor in this

Chapter 11 Case.  Article III of the Plan provides for the classification of Claims and Interests into six separate Classes based on differences in the legal nature and/or priority of such Claims and Interests.  The Plan designates the following six Classes of Claims and Interests:

- Class 1 – Other Priority Claims
- Class 2 – Secured Lender Claims
- Class 3 – REILS Claims
- Class 4 – General Unsecured Claims
- Class 5 – Other General Unsecured Claims
- Class 6 – Existing Equity Interests

15.     I believe that the Plan satisfies the requirements of section 1122 of the Bankruptcy Code because there are valid business, legal, and factual reasons that justify the separate classification of the particular Claims and Interests into the Classes created under the Plan.  I believe that each of the Claims and Interests in each particular Class are substantially similar to the other Claims and Interests in such Class.  In general, the Plan's classification scheme follows the Debtor's capital structure—secured debt, unsecured debt, and equity are classified separately.

**B.  The Plan complies with Bankruptcy Code Section 1123(a)**

i.     Section 1123(a)(1): Designation of Classes and Claims and Interests

16.     Administrative Claims, DIP Claims, and Priority Tax Claims were not classified for purposes of voting or receiving Distributions.  Rather, all such claims are treated separately as unclassified Claims as set forth in Article II of the Plan, and the holders thereof were not entitled to vote on the Plan.  For this reason, I believe that the Plan complies with the requirements of section 1123(a)(1) of the Bankruptcy Code.

ii.     Section 1123(a)(2)-(4): Designation of Unimpaired, Treatment of Impaired Classes, and Equal Treatment within each Class

17.     Section 3.3 of the Plan properly specifies that Class 1 (Other Priority Claims) is Unimpaired by the Plan.  Section 3.3 further identifies Class 2 (Secured Lender Claims), Class 3

(REILS Claims), Class 4 (General Unsecured Claims), Class 5 (Other General Unsecured Claims), and Class 6 (Existing Equity Interests), as Impaired by the Plan and specifies the treatment of Claims in those Classes.  Section 3.3 of the Plan also provides that the treatment of each Claim or Interest within a Class is the same unless the Holder of a Claim or Interest consents to less favorable treatment on account of its Claim or Interest, as applicable.  I therefore believe the Plan satisfies the requirements of sections 1123(a)(2)-(4) of the Bankruptcy Code.

      iii.     Section 1123(a)(5): Adequate Means for Implementation

      18.     I believe the Plan, the attachments thereto, and the Plan Supplement provide adequate and proper means for implementation of the Plan.  Article V of the Plan provides for the appointment of a Plan Administrator for the purpose of, *inter alia*, administering Claims and liquidating any remaining assets of the Debtor, making distributions to all Holders of Claims entitled to a recovery under the Plan, and winding down the Debtor's Estate. Article V of the Plan also provides for the establishment of the Wind Down Reserve, consummation of the restructuring transaction and of the Sale Transaction, as well as the settlement and release of certain Claims.  I believe that the Plan Consideration is sufficient to satisfy all of the distributions called for under the Plan and to permit the Plan Administrator to carry out the duties set forth in the Plan Administrator Agreement.  Accordingly, I believe that the Plan, including the Plan Supplement and its attachments, provide adequate means for implementing the Plan as required by section 1123(a)(5) of the Bankruptcy Code.

      iv.     Section 1123(a)(6): Prohibition on Issuance of Non-Voting Securities

      19.     The Plan does not provide for the issuance of equity or other securities by the Debtor, so section 1123(a)(6) is inapplicable to this Chapter 11 Case.

v.    <u>Section 1123(a)(7): Provisions Regarding Directors and Officers</u>

20.    The Plan provides that on the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtor shall be terminated and such persons shall have been deemed to have resigned from such roles and that the Plan Administrator shall be the sole representative for the Debtor.  The Plan Administrator will have the same fiduciary capacity as applicable to a board of managers and officers, subject to the Plan.  I believe this structure is consistent with the interest of the creditors, holders of equity interests, and public policy and is in accordance with the requirements of section 1123(a)(7) of the Bankruptcy Code.

vi.    <u>Section 1123(a)(8): Earnings and Income</u>

21.    I understand that section 1123(a)(8) of the Bankruptcy Code only applies in a case concerning an individual, and as such, this section of the Bankruptcy Code does not apply to this Chapter 11 Case.

22.    For the foregoing reasons, I believe that the Plan satisfies all sections of 1123(a) of the Bankruptcy Code.

**C. The Plan complies with Bankruptcy Code Section 1123(b)**

23.    I understand that section 1123(b) of the Bankruptcy Code sets forth various permissive provisions that may be incorporated into a chapter 11 plan.  Among other things, I have been advised that certain provisions are included in the Plan and satisfy section 1123(b).

i.    <u>Section 1123(b)(1): Classification and Impairment or Unimpairment</u>

24.    Section 3.3 of the Plan provides for the classification of Claims and Interests and provides whether each Class is Impaired or Unimpaired.  For this reason, I believe the Plan complies with the requirements of section 1123(b)(1) of the Bankruptcy Code.

ii.    <u>Section 1123(b)(2): Treatment of Executory Contracts or Unexpired Leases</u>

25.     Article VIII of the Plan provides for the rejection of the Debtor's Executory Contracts and Unexpired Leases as of the Effective Date unless such Executory Contract or Unexpired Lease (i) has previously been assumed or assumed and assigned by order of the Court in effect prior to the Effective Date (which order may be the Confirmation Order); (ii) is the subject of a motion to assume filed on or before the Effective Date; (iii) is identified on the Schedule of Assumed Executory Contracts or Unexpired Leases; or (iv) has expired or terminated pursuant to its own terms. For this reason, I believe the Plan complies with the requirements of section 1123(b)(2) of the Bankruptcy Code.

iii.     Section 1123(b)(3): Settlement or Adjustment of Claims and Interests

26.     I believe that the Plan's provisions (i) exempting Causes of Action from the Sale Transaction; (ii) abandoning Causes of Action; (iii) providing for the settlement and release of Causes of Action between the Debtor, the Plan Sponsor, NCP Parties, DIP Lender and CLS (and each of their Related Parties); and (iv) for the settlement and release of Causes of Action between the Debtor, the Plan Sponsor, NCP Parties, DIP Lender and REILS (and each of their Related Parties), comply with section 1123(b)(3) of the Bankruptcy Code.

27.     Section 5.11 of the Plan provides that the Debtor is authorized to consummate the Sale Transaction in accordance with the terms of the Plan.

28.     Under section 5.15 of the Plan, the filing of the Plan constitutes a motion to abandon the Debtor's and the Estate's assets that are non-economically beneficial, as identified in the Plan Supplement.

29.     Section 5.17 of the Plan provides that on the Effective Date, the Debtor, Plan Sponsor, NCP Parties, the DIP Lender, CLS and each of their Related Parties will each be deemed to have released and discharged each of the others from any and all claims and Causes of Action,

whether known or unknown, including any derivate claims asserted or assertable, as further detailed therein.

30.      Section 5.18 of the Plan provides that on the Effective Date, the Debtor, Plan Sponsor, NCP Parties, DIP Lender, REILS and each of their Related Parties will each be deemed to have released and discharged each of the others from any and all claims and Causes of Action, whether known or unknown, including any derivate claims asserted or assertable, as further detailed therein.

iv.      Section 1123(b)(4): Sale of Property of the Estate and Distribution of Proceeds

31.      Section 5.11 of the Plan provides that the Debtor is authorized to consummate the Sale Transaction. The Sale Transaction includes the sale of the Purchased Assets (including the Property) and the issuance of the Secured Lender Restructured Secured Loan which shall be secured by the Mortgage granted to the Secured Lender on the Property.  In connection with the Secured Lender Restructured Secured Loan, the Debtor shall execute a special warranty deed to the Plan Sponsor at the closing of the Secured Lender Restructured Secured Loan.  The Plan Sponsor shall pay Cash consideration in connection with the Purchased Assets as part of the Sale Transaction.

32.      Pursuant to section 5.7 of the Plan the Plan Administrator will use the Cash obtained, in part, from the Sale Proceeds to make the payments required by the Plan and for post-confirmation operations.  I believe that these sections of the Plan adhere to the requirements of section 1123(b)(4) of the Bankruptcy Code.

v.      Section 1123(b)(6): Other Permissible Provisions

33.      Consistent with section 1123(b) of the Bankruptcy Code, Article X of the Plan includes (i) the release by the Debtor and its Estate of certain parties in interest; (ii) the release by

non-Debtor Releasing Parties of certain parties in interest; (iii) an injunction provision prohibiting parties from pursuing Claims, Interests, or Causes of Action otherwise released under the Plan; and (iv) an exculpation provision. These provisions are appropriate under the circumstances because, among other things, they were proposed in exchange for the good, valuable, and reasonably equivalent consideration provided by the Released Parties in connection with the settlement and release of Claims between (i) the Debtor, the Plan Sponsor, NCP Parties, DIP Lender, REILS and each of their Related Parties; and (ii) the Debtor, the Plan Sponsor, NCP Parties, DIP Lender, CLS and each of their Related Parties underlying the Plan.

34.     It is my understanding that the Debtor's and Releasing Parties' releases contained in section 10.4 of the Plan are essential components of the Plan, and the scope of the Debtor's Release is tailored to the circumstances of this Chapter 11 Case. Likewise, the releases by the Releasing Parties have allowed for a cooperative and consensual Plan.

35.     The injunction contained in section 10.2 of the Plan is essential to the Plan because, without such provision, the exculpation and Debtor's and Releasing Parties' releases would be weakened. As such, I believe the injunction is necessary to facilitate the Plan and is fair and equitable and in the best interests of the Debtor and its Estate and is the product of arm's-length negotiations.

36.     Section 10.3 of the Plan, provides for an exculpation limiting the liability of the Exculpated Party (i.e., the Debtor) for acts or omissions related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, this Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Plan and Disclosure Statement, the Plan Supplement, or any transaction under the Plan, contract, instrument, or document or transaction approved by the Bankruptcy Court in this Chapter 11 Case.

I understand that exculpation under section 10.3 does not include Causes of Action related to instances of fraud, willful misconduct, or gross negligence or liability of professionals.  The Exculpation is appropriate and vital because they provide protection to the Debtor who made substantial and critical contributions to the restructuring encompassed by the Plan. The Exculpation thus prevents future collateral attacks against those who have worked to maximize the Debtor's Estate.

### D.  The Plan complies with Bankruptcy Code Section 1125

37.      Entry of the Solicitation Procedures Order, among other things, (i) conditionally approved the Disclosure Statement as containing "adequate information" under section 1125(b) of the Bankruptcy Code and (ii) approved the Solicitation Procedures.  I understand that the Debtor solicited votes on the Plan consistent with the Solicitation Procedures Order, Solicitation Procedures and section 1125 of the Bankruptcy Code. Further, I understand the Debtor did not solicit acceptances or rejections of the Plan from any Holder of a Claim or Interest prior to entry of the Solicitation Procedures Order.

### E.  The Plan complies with Bankruptcy Code Section 1126

38.      As set forth in the *Declaration of Derek M. Osei-Bonsu Regarding the Solicitation of Votes and Tabulation of Ballots on the First Amended Plan of Reorganization of Platinum Heights, LP as Modified on November 25, 2025* [Dkt. No. 213] (the "***Voting Declaration***"), the Debtor solicited acceptances of the Plan from the Holders of Claims against the Debtor in each Class of Impaired Claims entitled to receive distributions under the Plan in accordance with section 1126 of the Bankruptcy Code. The Impaired Classes entitled to vote on the Plan were Class 2 (Secured Lender Claims), Class 3 (REILS Claims), Class 4 (General Unsecured Claims).  I understand that there were no Holders of Claims in Class 5 (Other General Unsecured Claims).  I

also understand the Debtor did not solicit votes for the Plan by any Holder of Claims or Interests, as applicable, in (i) Class 1 (Other Priority Claims) as such Class is Unimpaired and, therefore, presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code or (ii) Class 6 (Existing Equity Interests), as such Class is Impaired but will not receive or retain property under the Plan and, therefore, deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. As evidenced in the Voting Declaration, the Plan has been accepted by the requisite number of Holders of Claims under the Bankruptcy Code.

**F. The Plan complies with Bankruptcy Code Section 1129(a)**

    i.   Section 1129(a)(1): The Plan Complies with Applicable Provisions of the Title

39.    Given that the Plan is compliant with sections 1122 and 1123 as set forth above, I believe that the Plan also satisfies section 1129(a)(1) of the Bankruptcy Code.

    ii.   Section 1129(a)(2): The Plan Proponent Complies with the Applicable Provisions of the Title

40.    Given that the Plan is compliant with sections 1125 and 1126 as set forth above, I believe that the Plan is compliant with section 1129(a)(2) of the Bankruptcy Code.

    iii.   Section 1129(a)(3): The Plan was Proposed and Negotiated in Good Faith

41.    The Debtor has proposed the Plan in good faith and with the legitimate and honest purpose of maximizing recoveries to the Debtor's stakeholders in accordance with the requirements of the Bankruptcy Code. The Debtor and its key economic stakeholders extensively negotiated the Plan throughout the process of this Chapter 11 Case (and even attended mediation). Accordingly, I believe the Plan has a strong likelihood of success and was filed in good faith and not for any improper purpose.

    iv.    <u>Section 1129(a)(4): Professional Fees and Expenses subject to court approval.</u>

42.    I understand that payments made or to be made by the Debtor for services provided in connection with this Chapter 11 Case must be approved by the Court pursuant to final fee applications.  I also understand that the Plan Administrator will review monthly fee submissions that arise after the Effective Date for reasonableness and appropriateness.  Accordingly, I believe that the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

    v.    <u>Section 1129(a)(5): The Plan Substantially Discloses all Required Information Regarding Post-Confirmation Management and Insiders</u>

43.    I have been advised that section 1129(a)(5) of the Bankruptcy Code requires a Plan proponent to disclose the identity and affiliations of the proposed officer and directors of the reorganized debtor or successor to the debtor, that the appointment or continuance of such proposed officers and directors be consistent with the interests of creditors and equity security holders and with public policy, and that the identity and compensation of any insiders that are retained or employed by the reorganized debtor or successor to the debtor be disclosed.

44.    Pursuant to the Plan the Plan Administrator will act as the sole officer, director, and manager for the Debtor as of the Effective Date. The Debtor's current management and insiders will not be employed or retained directly by the Debtor. I will serve as the Plan Administrator, and such appointment was disclosed in the Plan Supplement.  As such, I believe the Plan complies fully with section 1129(a)(5) of the Bankruptcy Code.

    vi.    <u>Section 1129(a)(6): The Plan Does Not Provide for Any Rate Change Subject to Regulatory Approval</u>

45.    I understand that because the Plan does not provide for any rate changes by the Debtor, the requirements of section 1129(a)(6) of the Bankruptcy Code do not apply to the Plan.

vii.    Section 1129(a)(7): The Plan Satisfies the Best Interests Test

46.    I understand that section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and equity holders.

47.    As set forth in the Liquidation Analysis the best interest test is satisfied as to each non-accepting Holder of a Claim against or Interest in each Debtor.

48.    The Liquidation Analysis was prepared under my supervision. It incorporates reasonable assumptions and estimates regarding the liquidation of the Debtor's assets and the satisfaction of Claims against the Estate. The Liquidation Analysis was performed based upon my knowledge and expertise and with the input and review of the Debtor's advisors. The Liquidation Analysis was produced utilizing the Debtor's financials and cash flow projections.

49.    The Liquidation Analysis assumes that the Debtor would commence a chapter 7 liquidation proceeding whereby the Court would appoint a chapter 7 trustee (the "***Trustee***") to administer the Debtor's Estate and assumes that the Trustee would cease all of the Debtor's operations and begin liquidating the Debtor's assets on or about December 5, 2025. I believe that conversion to a chapter 7 case and appointment of a Trustee would require substantial delay (and attendant expense) while the Trustee were to familiarize themself with the Debtor and this Chapter 11 Case, which would extend this Chapter 11 Case and only serve to increase administrative expenses while diminishing creditor recoveries.

50.    The Liquidation Analysis is based on certain assumptions and expectations regarding the Debtor's assets. In particular, the Liquidation Analysis (i) estimates that the Trustee would begin a liquidation on December 5, 2025 and the Debtor would continue to collect rents, including payment due on December 1, 2025, resulting in an estimated cash balance of $986,000; (ii) assumes that the $38,000 the Debtor maintains in a segregated account as adequate assurance

of postpetition performance to utility providers will be released and available for distribution to creditors; (iii) assumes that the City of Houston would debit any outstanding prepetition obligations it is due against the $33,600 deposit the Debtor has already made with the city of Houston; (iv) assumes the Trustee would engage a broker to market the property and that the sale would occur within a commercially reasonable time; (v) estimates the approximate realizable value of the property to be between $9.26 million (the land value) and $12.7 million (the "as is" market value) based on an appraisal prepared by appraiser JLL; and (vi) estimates that the Trustee would not be likely to pursue causes of action against certain guarantors, but also relies on the estimate of Debtor's counsel that such claims would be valued at a maximum potential of $4 million (with Debtor recovering in full net a 30% contingency fee to counsel) and a low scenario amount of $1 million (with Debtor recovering in full net a 30% contingency fee to counsel).

51.     The Liquidation Analysis is also based on certain assumptions and expectations regarding the administrative expenses and costs of liquidation. In particular, the Liquidation Analysis (i) caps the funds available to pay Allowed Administrative Claims at $1.2 million, comprised of a $200,000 carve-out for professional fees under the Final Cash Collateral Order [Dkt. No. 95] and an estimated $1 million potential surcharge of the Secured Lender Claims under the pending Surcharge Motion; (ii) estimates the Trustee's compensation at 3% of total asset distribution proceeds; (iii) estimates that the brokerage commission to market and sell the Debtor's property would be 5% of gross sale proceeds; and (iv) estimates incremental costs and expenses to preserve and maintain the Property during the marketing and sale process and to otherwise facilitate liquidation at $50,000 to $100,000.

52.     Accordingly, I believe that the best interests test is satisfied as to every applicable Holder of a Claim against or Interest in the Debtor and that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

viii.     Section 1129(a)(8): The Plan Has Been Accepted by Requisite Classes of Creditors

53.     As set forth in the Voting Declaration, Holders of Claims and Interests in each Class entitled to vote for the Plan voted to accept the Plan. Accordingly, I believe that the Plan has satisfied the requirements of section 1129(a)(8) of the Bankruptcy Code.

ix.     Section 1129(a)(9): The Plan Provides for Payment in Full of All Allowed Priority Claims

54.     I understand that section 1129(a)(9) of the Bankruptcy Code requires the Plan to provide Holders of Allowed Administrative Claims and Allowed Priority Tax Claims with the payment(s) in cash equal to the allowed amount of such Claims, except to the extent that the Holder of a particular Claims has agreed to different treatment. Article II of the Plan provides that Holders of such Claims will be paid in Cash on the Effective Date or otherwise in accordance with the terms of the Bankruptcy Code. The Plan also sets forth procedures for requests for payment of Professional Fee Claims for services rendered prior to the Effective Date. Based on the foregoing I believe that the Plan's treatment provisions for these Claims complies with the requirements of section 1129(a)(9) of the Bankruptcy Code.

x.     Section 1129(a)(10): At Least One Class of Impaired Claims Has Accepted the Plan

55.     I understand that section 1129(a)(10) of the Bankruptcy Code requires at least one impaired class of claims to have accepted the Plan without including any acceptance by an insider. As set forth in the Voting Declaration, Classes 2, 3, and 4 are Impaired, are non-insiders, and have voted to accept the Plan. Accordingly, I believe that the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

xi.    <u>Section 1129(a)(11): The Plan is Feasible</u>

56.    I understand that to satisfy the feasibility requirement, the Debtor must demonstrate that the confirmation of the Plan will not be followed by a liquidation (unless contemplated in the Plan). I further understand that the feasibility inquiry is fact intensive and requires a case-by-case analysis, and also that feasibility is demonstrated by a preponderance of the evidence. I have been advised that feasibility is generally established by demonstrating, through credible projections, testimony, evidence and other documentation, the debtor's ability to implement the provisions of the plan with a reasonable expectation of success.

57.    The Plan provides for the eventual dissolution of the Debtor, and the Plan Consideration is sufficient to fund the distributions called for under the Plan and permit the Plan Administrator to carry out his duties under the Plan Administrator Agreement.

58.    Based on my understanding of the Plan and commitments from the Plan Sponsor, I believe that the Plan has a high likelihood of success.  Accordingly, I believe the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

xii.    <u>Section 1129(a)(12): All Statutory Fees Have or Will be Paid</u>

59.    I understand that section 1129(a)(12) of the Bankruptcy Code requires that all fees payable under section 1930 of title 28 of the United States Code have been paid or that the Plan provides for payment of all such fees on the Effective Date.

60.    Section 12.1 of the Plan provides that the Plan Administrator shall pay all statutory fees when due and payable after the Effective Date, if any, on behalf of the Debtor until the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code. I therefore believe that the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

xiii.    <u>Section 1129(a)(13) – (16): Inapplicable Provisions</u>

61.    I understand that section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of all retiree benefits, as defined in and at the levels established under section 1114 of the Bankruptcy Code. The Debtor has no pension or retiree benefits, and, as such, section 1129(a)(13) of the Bankruptcy Code does not apply to this Chapter 11 Case.

62.    I understand that section 1129(a)(14) of the Bankruptcy Code only applies in cases concerning payment of domestic support obligations and, as such, does not apply to this Chapter 11 Case.

63.    I understand that section 1129(a)(15) of the Bankruptcy Code only applies in cases concerning an individual and, as such, does not apply to this Chapter 11 Case.

64.    I understand that section 1129(a)(16) of the Bankruptcy Code applies to transfers of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust, and because the Debtor is such an entity, section 1129(a)(16) is inapplicable in this case.

**G.  The Plan complies with Bankruptcy Code Section 1129(b)**

i.    <u>Section 1129(b) Cramdown of Non-Accepting Classes</u>

65.    As noted above and in the Voting Declaration, each of Classes entitled to vote on the Plan (*i.e.*, Classes 2, 3, and 4) voted to accept the Plan. Class 5 (Other General Unsecured Claims) contained no members. Class 6 (Existing Equity Interests) is not receiving any distribution under the Plan and, thus, is deemed to reject the Plan. Accordingly, I have been advised that the Debtor must satisfy section 1129(b) with respect to Class 6 (Existing Equity Interests). With respect to this Class, however, it is my belief that the Plan complies with section 1129(b), because the Plan does not unfairly discriminate and is fair and equitable.

ii.     The Plan Does Not Discriminate Unfairly

66.     I have been advised that under section 1129(b) of the Bankruptcy Code, a Plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment.

67.     The different Classes described in the Plan are dissimilar and were, therefore, classified and treated separately.  I understand that each of the Classes are separately classified based on their different legal, economic, and voting interests. Class 6 (Existing Equity Interests) is the only Class of Interests relating to Interests in the Debtor and no other Class of Claims or Interests represents securities of similar legal priority with such Interests. Accordingly, I believe that the separate classification of Claims under the Plan does not unfairly discriminate and is consistent with section 1129(b) of the Bankruptcy Code.

iii.    The Plan is Fair and Equitable

68.     I have been advised that section 1129(b)(2)(B)(ii) provides that a plan is fair and equitable with respect to a class of impaired unsecured claims that did not accept such plan if, pursuant to a plan, no holder of a claim or interest that is junior to the interests of such class will receive or retain any such property on account of such junior interest. I have been further advised that, similarly, section 1129(b)(2)(C)(ii) of the Bankruptcy Code provides that a plan is fair and equitable with respect to a class of impaired interests that did not accept a plan if, pursuant to the plan, no holder on an interest that is junior to the interest of such class will receive or retain any property.

69.     I believe that the Plan is fair and equitable to Holders in Class 6 (Existing Equity Interests), the only rejecting Class. No Class junior to Class 6 exists nor is being paid under the Plan. I therefore believe that the "cram down" requirements are satisfied with respect to the

Impaired Classes of Clams and Interests, and that the Plan can be confirmed notwithstanding Class 6's deemed rejection of the Plan.

**H.  The Plan complies with Bankruptcy Code Sections 1129(c), 1129(d), and 1129(e)**

70.     I understand that section 1129(c) of the Bankruptcy Code is satisfied because the Plan is the only plan proposed for confirmation in this Chapter 11 Case. Additionally, section 1129(d) is satisfied because the Plan's principal purpose is not to avoid taxes or the application of section 5 of the Securities Act of 1933. Further, I understand that section 1129(e) is inapplicable because the Chapter 11 Case is not a "small business case" as defined in the Bankruptcy Code.

## <u>CONCLUSION</u>

71.     In light of the foregoing, I believe that confirmation of the Plan is appropriate, in the best interests of all parties-in-interest, complies with the requirements of the Bankruptcy Code and should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  December 3, 2025
         Houston, Texas

                                              */s/ Erik White*_____
                                              Erik White