United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 05, 2025

Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | **Chapter 11** |
| **PLATINUM HEIGHTS, LP,**[1] | § § § | **Case No. 25-90012 (ARP)** |
| **Debtor.** | § § § § § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) APPROVING THE DEBTOR'S DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING THE FIRST AMENDED PLAN OF REORGANIZATION OF DEBTOR PLATINUM HEIGHTS, LP AS MODIFIED ON NOVEMBER 25, 2025

Upon the filing by Platinum Heights, LP, as debtor and debtor in possession in the above-captioned chapter 11 case (collectively, the "Debtor") of the *First Amended Plan of Reorganization of Debtor Platinum Heights, LP as Modified on November 25, 2025* [Dkt. No. 210] (as may be further amended, modified, or supplemented, the "Plan")[2] which is attached hereto as **Exhibit A**, and the *Disclosure Statement for the First Amended Chapter 11 Plan of Reorganization of Debtor Platinum Heights, LP* [Dkt. No. 189] (as amended, modified, or supplemented, the "Disclosure Statement"); and the Court having entered the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (II) Conditionally Approving the Disclosure Statement; (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures; (IV) Approving the Solicitation Procedures; (V) Approving the Combined Notice; and (VI) Granting Related Relief* [Dkt. No. 194] (the "Solicitation Order"), which, among

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is Platinum Heights, LP (4367). The location of the Debtor's corporate headquarters and the Debtor's service address is: 1917 Ashland Street, Houston, Texas 77008.

[2] Capitalized terms used herein but undefined have the meaning provided for in the Plan or Solicitation Order as applicable.

other things, (i) conditionally approved the Disclosure Statement, (ii) approved the solicitation procedures related to the Disclosure Statement (the "Solicitation Procedures"), and (iii) scheduled a hearing to consider confirmation of the Plan and final approval of the Disclosure Statement for December 5, 2025 at 9:00 a.m. (prevailing Central Time) (the "Combined Hearing"); and the Debtor having filed that certain Plan Supplement dated November 14, 2025 [Dkt No. 203] (the documents contained therein, as they have been or may be amended, modified, restated, or supplemented, the "Plan Supplement") which included, among other things, the Plan Administrator Agreement and the Schedule of Assumed Contracts and the following having been filed: (a) the *Declaration of Mirza N. Baig in Support of Confirmation of First Amended Plan of Reorganization of Debtor Platinum Heights, LP as Modified on November 25, 2025* [Dkt. No. 217] (the "Baig Declaration"); (b) the *Declaration of Erik White in Support of Confirmation of First Amended Plan of Reorganization of Debtor Platinum Heights, LP as Modified on November 25, 2025* [Dkt. No. 214] (the "White Declaration"); (c) the *Declaration of Derek M. Osei-Bonsu Regarding the Solicitation of Votes and Tabulation of Ballots on the First Amended Plan of Reorganization of Platinum Heights, LP as Modified on November 25, 2025* [Dkt. No. 211] (the "Voting Certification"); and (d) the *Debtor's Memorandum of Law in Support of (A) Final Approval of the Debtor's Disclosure Statement and (B) Confirmation of the Debtor's Plan* [Dkt. No. 218] (collectively, the "Confirmation Documents"); and this Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to final approval of the Disclosure Statement and confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and this Court having held the Combined Hearing on December 5, 2025; and any objections to confirmation of the Plan and/or adequacy of the Disclosure Statement having been settled,

withdrawn, resolved, or overruled on the merits by this Court; and upon the Confirmation Documents, and the evidence adduced at, and the record of, the Combined Hearing; and upon the record of this Chapter 11 Case; and after due deliberation:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    <u>Findings and Conclusions</u>. The determinations, findings, judgments, decrees, and orders set forth and incorporated in (i) this order (this "<u>Order</u>"), and (ii) the record of the Combined Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Bankruptcy Rules. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B.    <u>Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.  The Court has jurisdiction over the Chapter 11 Case pursuant to 28 U. S. C. § 1334. Venue is proper pursuant to 28 U.S.C. § 1408. The Court has jurisdiction to determine whether the Plan and Disclosure Statement comply with the applicable provisions of the Bankruptcy Code and should be confirmed and approved. Final approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b), and the Court may enter a final order consistent with section III of the United States Constitution.

C.    <u>Chapter 11 Petition</u>. On the Petition Date, the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has operated its business and managed its property as debtor-in-possession pursuant to sections 1107(a) and 1108

of the Bankruptcy Code. No trustee, examiner, or official creditors' committee was appointed in this Chapter 11 Case.

D. <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon. The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Case.

E. <u>Eligibility for Relief</u>. The Debtor is a proper debtor under section 109 of the Bankruptcy Code and the Debtor is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

F. <u>Solicitation and Notice</u>. On October 31, 2025, the Court entered the Solicitation Order, which, among other things, established November 26, 2025, at 4:00 p.m. (prevailing Central Time), as the deadline for voting to accept or reject the Plan (the "<u>Voting Deadline</u>"), and December 1, 2025, at 4:00 p.m. (prevailing Central Time) as the deadline for objecting to Confirmation of the Plan and final approval of the Disclosure Statement (the "<u>Objection Deadline</u>"). The solicitation of votes on the Plan complied with the Solicitation Procedures in the Solicitation Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was compliant with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. As evidenced by the Solicitation Certificate of Service [Dkt. No. 196], all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to final approval of the Disclosure Statement and Plan Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

G.    <u>Adequate Information</u>. The Disclosure Statement provides Holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125 of the Bankruptcy Code. The Disclosure Statement also provides Holders of Claims and other entities with sufficient notice of the injunction, exculpation, and release provisions contained in Article X of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

H.    <u>Voting</u>. On December 1, 2025, Reed Smith filed the Voting Certification with the Court certifying the methods and results of the Ballots tabulated for Class 2 (Secured Lender Claims), Class 3 (REILS Claims), Class 4 (General Unsecured Creditors), and Class 5 (Other General Unsecured Claims) (together, the "<u>Voting Classes</u>").[3] The procedures used to tabulate Ballots were fair and conducted in accordance with the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and all other applicable rules, laws, and regulations. As set forth in the Plan and the Disclosure Statement, only Holders of Claims in the Voting Classes were eligible to vote on the Plan. As evidenced by the Voting Certification, Classes 2 through 4 voted to accept the Plan.

I.    <u>Plan Supplement Documents</u>. The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended), complies and is consistent with the terms of the Plan and the Bankruptcy Code, and the Debtor provided good and proper notice of its filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Solicitation Order, and all other applicable laws, rules, and regulations. All

---

[3] Class 5 (Other General Unsecured Claims) did not contain any Holders of Claims notwithstanding the fact that a Holder of a Class 5 Other General Unsecured Claim would have been entitled to vote to accept or reject the Plan. Pursuant to Section 4.4, any Class that does not contain any Allowed Claims shall be deemed deleted from the Plan. As a result, subsequent references to the Voting Class shall mean Classes 2 through 4 notwithstanding the fact that Class 5 is technically a Voting Class.

documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. All Holders of Claims who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified and supplemented by the Plan Supplement. The transmittal and notice of the Plan Supplement (and all documents identified therein) were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and were conducted in good faith. Subject to the terms of the Plan and compliance with the Bankruptcy Code and the Bankruptcy Rules, the Debtor reserves the right to alter, amend, update, or modify the Plan Supplement before the Effective Date; provided that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Order or the terms of the Plan. No other or further notice with respect to the Plan Supplement (and all documents identified therein) is necessary or shall be required, including any amendment, modification, or supplement thereto.

J.     Modifications to Plan. Pursuant to, and in compliance with, section 1127 of the Bankruptcy Code, the Debtor at the request of REILS, proposed certain modifications to the Plan as reflected therein (the "Plan Modifications"). In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially or adversely affect or change the treatment of any Claims or Interests, (d) require re-solicitation of any Holders of Claims, or (e) require that any such Holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Under the circumstances, the form and manner of notice of the Plan Modifications were adequate, and no other or further notice of the Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims that voted

to accept the Plan or that are conclusively presumed to have accepted the Plan, as applicable, are deemed to have accepted the Plan as modified by the Plan Modifications. No Holder of a Claim that has voted to accept the Plan prior to the filing of the Plan Modifications that did not submit an updated Ballot after the filing of the Plan Modifications shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

K.    <u>Objections</u>. To the extent that any objections (whether formal or informal), reservations of rights, statements, or joinders with respect to final approval of the Disclosure Statement and Confirmation of the Plan have not been adjourned, resolved, withdrawn, waived, or settled prior to entry of this Order or otherwise resolved herein, they are hereby overruled on the merits based on the record before the Court.

L.    <u>Burden of Proof</u>. The Debtor, as proponent of the Plan, has met its burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard. Each witness who testified or submitted a declaration on behalf of the Debtor or any other party, in support of the Plan and Confirmation, in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in their testimony.

M.    <u>Bankruptcy Rule 3016</u>. The Plan is dated and identifies its proponents (i.e., the Debtor), thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement and the Plan on the docket of the Chapter 11 Case satisfied Bankruptcy Rule 3016(b).

N.    <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The evidentiary record at the Combined Hearing, the declarations filed in connection therewith, the

contents of the Plan and the Disclosure Statement, the brief filed in support of the Plan, and the Court's judicial notice of the complete record of the Chapter 11 Case supports the findings of fact and conclusions of law set forth herein.

O.      Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). Article III of the Plan designates six separate Classes of Claims and Interests, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, (including DIP Claims and Professional Fee Claims), which are addressed in Article II of the Plan and, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated). As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims and Interests within the applicable Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan. Such classifications were not implemented for improper purposes, and such Classes do not unfairly discriminate between or among Holders of Claims or Interests. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

P.      Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)). Article III of the Plan specifies that Claims in Class 1 (Other Priority Claims) are unimpaired. Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Class 2 (Secured Lender Claims), Class 3 (REILS Claims), Class 4 (General Unsecured Claims), Class 5 (Other General Unsecured Claims), and Class 6 (Interests). Therefore, the Plan satisfies sections 1123(a)(2)-(3) of the Bankruptcy Code.

Q.      No Discrimination (11 U.S.C.§ 1123(a)(4)). Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular

Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

R.  <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. Article V of the Plan and the various other provisions of the Plan and the Plan Administration Agreement (filed as part of the Plan Supplement) provide adequate and proper means for the Plan's implementation. These provisions include, without limitation: (a) the sale of the Purchased Assets to the Plan Sponsor, (b) the assignment and transfer of any and all of each Debtor's remaining assets to the Plan Administrator; (b) the appointment of the Plan Administrator for tasks including, but not limited to, winding down the Debtor's Estate and making distributions to Holders of Allowed Claims in accordance with the Plan; (c) the sources of consideration for distributions pursuant to the Plan; (d) the cancellation of notes, agreements, and other instruments except as otherwise provided in the Plan; and (e) the authority to undertake corporate actions necessary to effectuate the Plan. Article VI (Distributions), Article VII (Procedures for Disputed Claims), Article VIII (Treatment of Executory Contracts and Unexpired Leases), and Article IX (Conditions Precedent to Confirmation and Consummation of the Plan), among other provisions of the Plan, set forth the means for its implementation. The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

S.  <u>Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. The Debtor disclosed the identity of, and the materials terms of engagement for, the Plan Administrator pursuant to the Plan and Plan Supplement. On or prior to the Effective Date, Erik White, the Chief Restructuring Officer of the Debtor, without the need for further action or approval, shall be appointed as Plan Administrator pursuant to the terms of the Plan Administrator Agreement and the Plan.  The Plan Administrator Agreement and the terms thereof are hereby approved and the Debtor and the Plan

Administrator, as applicable, are each authorized to enter into and perform under the Plan Administrator Agreement. After the Effective Date, pursuant to section 1124(b) of the Bankruptcy Code, the Plan Administrator shall be authorized to file the Debtor's tax returns and pay related tax obligations, consistent with the terms of Section 5.2 of the Plan and the Plan Administrator Agreement. Pursuant to the Plan, following the Confirmation Date and prior to the Effective Date, the then-current officers, directors, and managers of the Debtor shall continue in their respective capacities in accordance with the applicable by-laws or other organizational documents of the Debtor, and the Debtor shall execute such documents and take such other action as is necessary to effectuate the actions provided for in the Plan. The Plan Administrator Agreement also provides that on and after the Effective Date, the Plan Administrator shall serve as the sole officer, director, or manager of the Debtor under applicable state law. The manner of selection of the Plan Administrator is consistent with the interests of creditors and other stakeholders, as well as with public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

T.      Discretionary Contents of the Plan (11 U.S.C.§ 1123(b)). The Plan contains various provisions that may be construed as discretionary and are not required for confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent in any way with the applicable provisions of the Bankruptcy Code. As a result thereof, the requirements of section 1123(b) of the Bankruptcy Code have been satisfied.

U.      Impairment/Unimpairment of Any Class of Claims or Interest (11 U.S.C. § 1123(b)(1)). The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan impairs or leaves unimpaired each Class of Claims and Interests.

V.     Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). Consistent with section 1123(b)(2) of the Bankruptcy Code, Section 8.1 of the Plan provides for the rejection of each of the Debtor's Executory Contracts or Unexpired Leases unless such Executory Contract or Unexpired Lease (i) has previously been assumed or assumed and assigned by order of the Bankruptcy Court in effect prior to the Effective Date; (ii) is the subject of a motion to assume filed on or before the Effective Date; (iii) is identified on the Schedule of Assumed Executory Contracts or Unexpired Leases; or (iv) has expired or terminated pursuant to its own terms.

W.     The Debtor's Curing of Defaults for Assumed and Assigned Contracts (11 U.S.C. § 1123(d)). The Debtor has exercised reasonable business judgment in determining to assume and assign each of the executory contracts and unexpired leases set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases. Each assumption and assignment of an executory contract or unexpired lease in accordance with Article VIII of the Plan, the Plan Supplement, this Confirmation Order or otherwise shall be legal, valid, and binding upon the Debtor and all non-Debtor counterparties to such executory contract and unexpired lease, all to the same extent as if such assumption and assignment had been authorized and effectuated pursuant to a separate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code prior to the Confirmation Date. The Debtor and Plan Sponsor have, to the extent necessary, met all of the requirements of sections 363, 365 and 1123 of the Bankruptcy Code in connection with the assumption and assignment of the executory contracts and unexpired leases included in the Schedule of Assumed Executory Contracts and Unexpired Leases. The Court finds that the payment of the cure costs under each assumed executory contract and unexpired lease, as provided in the Plan Supplement, is reasonable and appropriate and is deemed to fully satisfy the Debtor's

obligations under sections 365(b)(1) and 365(f) of the Bankruptcy Code. The cure costs for each assumed and assigned executory contracts and unexpired leases will be paid in accordance with the terms of the Plan. The Plan Sponsor has demonstrated adequate assurance of future performance of each assumed executory contracts and unexpired leases within the meaning of section 365 of the Bankruptcy Code by promising to perform the Debtor's obligations under such executory contract and unexpired lease after the Effective Date.

X.      The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtor has complied with the applicable provisions of the Bankruptcy Code. Specifically: (a) the Debtor is a proper debtor under section 109 of the Bankruptcy Code; (b) the Debtor has complied with all applicable provisions of the Bankruptcy Code, including section 1125, except as otherwise provided or permitted by order of the Court; and (c) the Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Solicitation Materials (defined below) and in tabulating the votes with respect to the Plan. In compliance with the Solicitation Order, the Debtor caused copies of the following materials to be transmitted to the known Holders of Claims in Voting Classes (i.e., Claims in Classes 2, 3, 4, and 5): (i) the Disclosure Statement and Plan; (ii) the Combined Hearing Notice; (iii) the Solicitation Order; and (iv) an appropriate form of ballot and a pre-addressed postage prepaid return envelope (collectively, the "Solicitation Materials"). In further compliance with the Solicitation Order and as evidenced by the Solicitation Certificate of Service, the Debtor caused copies of the Combined Hearing Notice to be served on all parties in interest. The Combined Hearing Notice provided due and proper notice of the Hearing and all relevant dates, deadlines, procedures, and other information relating to the Plan and/or the solicitation of votes thereon, including, without limitation, the Voting Deadline and the Objection Deadline (as such terms are

defined in the Combined Hearing Notice), the time, date, and place of the Combined Hearing and the provisions in the Plan concerning the Plan's exculpation, release, and injunction provisions, included in the Plan. The Debtor also provided the Court-approved notices of non-voting status (the "Notices of Non-Voting Status") to the holders of Claims and Interests not entitled to vote on the Plan, consistent with terms of the Solicitation Order. Based on the foregoing, all Persons and Entities entitled to receive notice of the Disclosure Statement, the Plan, the Combined Hearing Notice, and Notices of Non-Voting Status have received proper, timely, and adequate notice in accordance with the Solicitation Order, the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules and have had an opportunity to appear and be heard with respect thereto. As such, the Debtor is in compliance with section 1128 of the Bankruptcy Code and Bankruptcy Rules 2002(b) and 3017(d)-(f). No other or further notice is required.

Y.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan has been proposed by the Debtor in good faith and in the belief that the sale and proposed liquidation contemplated under the Plan will maximize value for the Debtor's creditors. The Plan accomplishes the goals promoted by section 1129(a)(3) of the Bankruptcy Code by enabling the Plan Administrator to authorize and cause distributions to creditors on a fair and equitable basis, in accordance with the priorities established by the Bankruptcy Code, subject to the terms of the Plan. The Plan has been proposed with the legitimate purpose of maximizing the value of the Estate to achieve the best interests of the Debtor's creditors and not by any means forbidden by applicable law. The Debtor, the Released Parties, and the Exculpated Party have acted diligently and in good faith in connection with the filing and prosecution of this Chapter 11 Case as is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, the Plan, the Solicitation Materials, the hearing to conditionally approve the Disclosure Statement, and the record of the Combined Hearing, the

declarations and testimony submitted to the Court, and other proceedings held in the Chapter 11 Case. In so finding, the Court has considered the totality of the circumstances in the Chapter 11 Case. The support for the Plan by Holders of Claims in in the Voting Classes who voted to accept the Plan further demonstrates that the Plan was proposed in good faith. Finally, as described in greater detail below, the Plan's indemnification, exculpation, release, and injunction provisions are warranted, necessary, and appropriate and are supported by sufficient consent and consideration under the circumstances of the Chapter 11 Case as a whole and are consistent with sections 105, 1123(b)(6), and 1129 of the Bankruptcy Code and applicable law in this Circuit. The Debtor, the Released Parties, and the Exculpated Party will be acting in good faith if they proceed to consummate the Plan and the agreements, settlements, transactions, distributions, and other transfers contemplated therein and in this Order and take any actions authorized by the Plan and this Order.

Z.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). No payment for services or costs and expenses in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been or will be made by the Debtor other than payments that have been authorized by an order of the Court, including without limitation by the Confirmation of the Plan by this Order. Pursuant to Article II of the Plan, such Professional Persons' final applications for allowance of compensation for services rendered and reimbursement of expenses incurred must be filed and served no later than forty-five (45) days after the Effective Date. Such applications will be subject to review and approval by the Court.

AA.      Proper Disclosure of Officers (11 U.S.C. § 1129(a)(5)). The Debtor has complied with section 1129(a)(5) by providing such disclosures in the Plan Supplement and the Plan. The

Plan, in conjunction with the Plan Supplement, satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

BB.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

CC.    <u>"Best Interest Test" 11 U.S.C. § 1129(a)(7)</u>. Each Holder of an Impaired Claim or Impaired Interest has either accepted the Plan or will receive or retain on account of such Claim or Interest, property of a value on the Effective Date of the Plan that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The revised liquidation analysis and the other evidence related thereto in support of Confirmation that was presented, proffered, or adduced at or prior to the Combined Hearing: (a) are reasonable, persuasive, and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date. The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

DD.    <u>Feasibility</u>.  The information contained in the Disclosure Statement, and the other evidence presented, proffered, or adduced at the Combined Hearing, including the White Declaration and Baig Declaration, (i) are persuasive and credible, (ii) have not been controverted by any evidence, and (iii) establishes that the Plan is feasible and provides adequate and

appropriate means for its implementation and an orderly wind down and liquidation of the Debtor's estates, as contemplated by the Plan, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

EE.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. Class 1 (Other Priority Claims) is an unimpaired Class of Claims, which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 2 (Secured Lender Claims), Class 3 (REILS Claims), Class 4 (General Unsecured Claims), and Class 5 (Other General Unsecured Claims) are the Impaired Classes entitled to vote on the Plan. Classes 2 through 4 voted to accept the Plan. Class 6 (Interest) is conclusively presumed to reject the Plan because no distribution is anticipated to the Holders of such Interests, in accordance with section 1126(g) of the Bankruptcy Code. The Plan, therefore, does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code because at least one Impaired Class has voted against the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

FF.    <u>Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Claims and Priority Claims as set forth in Article II of the Plan is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code. As such, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

GG.    <u>Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>. As set forth in the Solicitation Procedures Classes 2, 3,4, and 5 are Impaired Classes of Claims entitled to vote pursuant to the Plan, and Classes 2 through 4 voted to accept the Plan. Therefore,

at least one Class of Claims that is Impaired under the Plan has accepted the Plan, as determined without including any acceptance of the Plan by any insider. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

HH.    Confirmation is not likely to be followed by need for further reorganization (11 U.S.C. § 1129(a)(11)). The Plan provides for, among other things, the sale of substantially all of the Debtor's assets to the Plan Sponsor and the distribution of the Debtor's Cash in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. Further, as set forth in Article V of the Plan, any remaining assets of the Debtor as of the Effective Date will vest in the Plan Administrator for the administration, liquidation, and distribution by the Plan Administrator in accordance with the terms of the Plan Administrator Agreement and the Plan. Accordingly, no further reorganization of the Debtor is contemplated. Based on the evidence proffered or adduced at or prior to the Combined Hearing, the Debtor will have sufficient funds available as of the Effective Date to pay all Claims and expenses that are required to be paid on the Effective Date pursuant to the terms of the Plan (including Administrative Claims). Accordingly, the Plan is feasible. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

II.    Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)). The Plan provides for the payment of all fees payable by the Debtor pursuant to 28 U.S.C. § 1930(a) on and after the Effective Date until the entry of a final decree in the Debtor's Chapter 11 Case or until the Chapter 11 Case is converted or dismissed. The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

JJ.    Non-applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)). The Debtor does not owe any retiree benefits, domestic support obligations, is not an

- 17 -

individual, and is not a nonprofit corporation. Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case.

KK.    "Cram Down" Requirements - Section 1129(b). The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that all Classes entitled to vote voted to accept the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code. First, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. Second, the Plan is fair and equitable with respect to each Impaired Class that did not vote to accept the Plan. The Plan has been proposed in good faith, is reasonable, and meets the requirements that no Holder of a Claim or Interest that is junior to each such Class that did not vote to accept the Plan will receive or retain any property under the Plan on account of such junior Claim or Interest and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest. Accordingly, the Plan is fair and equitable towards all Holders of Claims and Interests in Impaired Classes that did not vote to accept the Plan. Third, the Plan is consistent with the absolute priority rule and does not discriminate unfairly with respect to Impaired Classes that did not vote to accept the Plan because similarly situated Holders will receive substantially similar treatment on account of their Claims or Interests in such Class. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

LL.    Only One Plan (11 U.S.C. § 1129(c)). There is only one Debtor and one Plan being filed. The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

MM.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C.§ 77e. No Governmental Unit has requested that the Court refuse to confirm the

Plan on similar grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

NN.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. The Debtor's good faith is evident from the facts and record of the Chapter 11 Case, the Disclosure Statement, the Plan, the Solicitation Materials, the hearing to conditionally approve the Disclosure Statement, the Combined Hearing, the Baig Declaration, the White Declaration, and the testimony submitted to the Court. The Debtor proposed the Plan with the legitimate and honest purpose of maximizing the value of the Debtor's Estate for the benefit of their stakeholders. Accordingly, the Debtor has been, is, and will continue to act in good faith if it proceeds to: (i) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (ii) take the actions authorized and directed or contemplated by this Order. Therefore, the Plan was proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the Debtor has acted in good faith within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code.

OO.    <u>Implementation</u>. The various means for implementation of the Plan, as set forth in Article V and other provisions of the Plan (collectively, the "<u>Implementation Activities</u>"), have been designed and proposed in good faith. The Implementation Activities are adequate and will promote the maximization of the value of the ultimate recoveries under the Plan in a fair and equitable manner in accordance with the priorities established by the Bankruptcy Code. The Implementation Activities are not intended to hinder, delay, or defraud any entity to which the Debtor is indebted on the Effective Date.

PP.    <u>Exculpation</u>. The exculpation provision contained in Article X of the Plan is appropriately tailored in scope given the circumstances of this Chapter 11 Case to achieve the

overall purpose of the Plan and is consistent with applicable law, including both of the Fifth Circuit's *Highland* opinions.[4] The exculpation provision is supported by proper evidence, proposed in good faith, and formulated following extensive good faith, arm's-length negotiations with key constituents. The Debtor, as the sole Exculpated Party, made significant contributions to the Chapter 11 Case, including with respect to the negotiation and implementation of the Plan. The Exculpated Party reasonably relied upon the exculpation provisions as a material inducement to engage in postpetition negotiations with the Plan Sponsor, REILS, CLS, Secured Lender and others that culminated in the Plan and all other settlements and compromises that maximize value for the Debtor's Estate. The record in the Chapter 11 Case fully supports the exculpation provision, which is appropriately tailored to protect the Exculpated Party (i.e., the Debtor) from unnecessary litigation arising from its participation in the Chapter 11 Case and the Debtor's liquidation and are consistent with the Bankruptcy Code and applicable law. The exculpation provision also contains appropriate carve outs for actions determined by a Final Order to have constituted fraud, willful misconduct, or gross negligence.

QQ.    <u>Injunction</u>. The injunction provision provided in Article X of the Plan is necessary to implement, preserve, and enforce the Plan.

RR.    <u>Debtor Releases</u>. The release of Claims and Causes of Action by the Debtor and the Estate described in Article X of the Plan (the "<u>Debtor Release</u>") is an essential and critical provision of the Plan and formed an integral part of the agreement embodied in the Plan among all parties in interest. The Debtor Release, which incorporates by reference each of the related provisions and definitions contained in the Plan, is: (i) within the jurisdiction of the Court pursuant

---

[4] *NexPoint Advisors, L.P., et al. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 437–38 (5th Cir. 2022); *Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt., L.P.*, 132 F.4th 353 (5th Cir. 2025) (collectively, "<u>*Highland*</u>").

to 28 U.S.C. § 1334; (ii) in exchange for the good and valuable consideration provided by the Released Parties; (iii) a good faith settlement and compromise of the Claims and Causes of Action released by such release; (iv) in the best interests of the Debtor and its creditors; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; (vii) appropriately narrow in scope; and (viii) a bar to the Debtor or its Estate asserting any Claim or Cause of Action released pursuant to the Debtor Release. The Debtor Release appropriately offers protection to parties that constructively participated in the Debtor's chapter 11 efforts. Such protections from liability facilitated the participation of the Debtor's stakeholders in the negotiations and compromises that led to the Plan and sale of the Debtor's assets to the Plan Sponsor. Additionally, the Debtor is not aware of any (i) significant potential Claims that are being released or (ii) pending litigation that would be discontinued as a result of the Debtor Release. The scope of the Debtor Release is appropriately tailored given the facts and circumstances of the Chapter 11 Case and is appropriate in light of the value provided by the Released Parties to the Debtor's Estates and the critical nature of the Plan's Debtor Release, among other things.

SS.    _Releasing Party Releases_.   The releases contained in Article X of the Plan (the "_Releasing Party Releases_") are appropriate and consensual as to all relevant parties, including on the part of each of the Releasing Parties. The Releasing Party Releases were conspicuously disclosed in the Combined Hearing Notice (a form of which was attached as Exhibit 2 to the Solicitation Order), the Ballots (forms of which were attached as Exhibits 3A through 3D to the Solicitation Order), the Notice of Non-Voting Status (a form of which was attached as Exhibit 4 to the Solicitation Order), and the Plan. The release provisions contained in Article X of the Plan are consensual under applicable law because (1) all Releasing Parties were given due and adequate notice of the Releasing Party Releases and are only providing releases if they vote in favor of the

Plan (2) the releases therein are provided only by the Released Parties. The Releasing Party Releases are consensual and: (1) essential to the Confirmation of the Plan; (2) given in exchange for the good and valuable consideration provided by the Released Parties; (3) a good faith settlement and compromise of the Claims released by the Releasing Party Releases; (4) in the best interests of the Debtor and the Debtor's Estate; (5) fair, equitable, and reasonable; (6) given and made after due notice and opportunity for hearing; and (7) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Releasing Party Releases, except as otherwise expressly set forth in the Plan. Like the Debtor Releases, the Releasing Party Releases facilitated participation in both the Plan and the chapter 11 process generally. The Releasing Party Releases are appropriately tailored under the facts and circumstances of the Chapter 11 Case. Parties-in-interest only provide the Releasing Party Releases if they vote in favor of the Plan. As such, the Releasing Party Releases appropriately offer certain protections to parties that constructively participated in the Debtor's restructuring process by, among other things, supporting the Plan.

TT.    **The CLS Releases**.  The mutual release of Claims and Causes of Action by the Debtor, Plan Sponsor, NCP Parties, the DIP Lender, and CLS in Section 5.17 of the Plan (the "CLS Release") is an essential and critical provision of the Plan and formed an integral part of the agreement embodied in the Plan among all parties in interest. The CLS Release, which incorporates by reference each of the related provisions and definitions contained in the Plan, is: (i) within the jurisdiction of the Court pursuant to 28 U.S.C. § 1334; (ii) in exchange for the good and valuable consideration provided by the Debtor, Plan Sponsor, NCP Parties, the DIP Lender, and CLS; (iii) a good faith settlement and compromise of the Claims and Causes of Action released by such release; (iv) in the best interests of the Debtor and its creditors; (v) fair, equitable, and

reasonable; (vi) given and made after due notice and opportunity for hearing; (vii) appropriately narrow in scope; and (viii) a bar to the parties thereto from asserting any Claim or Cause of Action released pursuant to the CLS Release. The CLS Release appropriately offers protection to parties that constructively participated in the Debtor's chapter 11 efforts. Such protections from liability facilitated the participation of the Debtor's stakeholders in the negotiations and compromises that led to the Plan and sale of the Debtor's assets to the Plan Sponsor. Additionally, the Debtor is not aware of any (i) significant potential Claims that are being released or (ii) pending litigation favorable to the Debtor that would be discontinued as a result of the CLS Release. The scope of the CLS Release is appropriately tailored given the facts and circumstances of the Chapter 11 Case and is appropriate in light of the value provided by the parties thereto to the Debtor's Estates and the critical nature of the Plan Transactions which were predicated on the CLS Release, among other things.

UU.    The REILS Releases. The mutual release of Claims and Causes of Action by the Debtor, Plan Sponsor, NCP Parties, the DIP Lender, and REILS in Section 5.18 of the Plan (the "REILS Release") is an essential and critical provision of the Plan and formed an integral part of the agreement embodied in the Plan among all parties in interest. The REILS Release, which incorporates by reference each of the related provisions and definitions contained in the Plan, is: (i) within the jurisdiction of the Court pursuant to 28 U.S.C. § 1334; (ii) in exchange for the good and valuable consideration provided by the Debtor, Plan Sponsor, NCP Parties, the DIP Lender, and REILS; (iii) a good faith settlement and compromise of the Claims and Causes of Action released by such release; (iv) in the best interests of the Debtor and its creditors; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; (vii) appropriately narrow in scope; and (viii) a bar to the parties thereto from asserting any Claim

or Cause of Action released pursuant to the REILS Release. The REILS Release appropriately offers protection to parties that constructively participated in the Debtor's chapter 11 efforts. Such protections from liability facilitated the participation of the Debtor's stakeholders in the negotiations and compromises that led to the Plan and sale of the Debtor's assets to the Plan Sponsor. Additionally, the Debtor is not aware of any (i) significant potential Claims that are being released or (ii) pending litigation favorable to the Debtor that would be discontinued as a result of the REILS Release. The scope of the REILS Release is appropriately tailored given the facts and circumstances of the Chapter 11 Case and is appropriate in light of the value provided by the parties thereto to the Debtor's Estates and the critical nature of the Plan Transactions which were predicated on the REILS Release, among other things.

VV.    <u>Abandonment of Causes of Action.</u> Section 5.15 of the Plan and the Plan Supplement appropriately provide that the Debtor will abandon any and all Causes of Action owned by the Debtor and its Estate as of the Effective Date. The provisions regarding the abandonment of the Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtor, its Estate, and Holders of Claims and Interests. The Causes of Action abandoned by the Debtor were of little to no value and would not have resulted in any meaningful benefit for the Debtor, its Estate, and/or Holders of Claims and Interests if prosecuted rather than abandoned.

WW.    <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

XX.    <u>Likelihood of Satisfaction of Conditions Precedent to Effective Date</u>. Each of the conditions precedent to the Effective Date, as set forth in Article IX of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan.

**BASED ON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1. <u>Findings of Fact and Conclusions of Law</u>. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by this Court on the record at the Combined Hearing in relation to Confirmation of the Plan and/or final approval of the Disclosure Statement are hereby incorporated into this Order. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2. <u>Notice of the Combined Hearing, Solicitation, and Tabulation</u>. Notice of the Combined Hearing, the Solicitation Materials, and the tabulation of submitted Ballots complied with the Solicitation Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, uncontroverted, and were in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

3. <u>Confirmation</u>. The Plan, attached hereto as **Exhibit A**, is **APPROVED** in its entirety and **CONFIRMED** under section 1129 of the Bankruptcy Code. The terms of the Plan, the Plan Supplement and each of the documents comprising the Plan Supplement, any amendments, modifications, or supplements thereto, and all documents and agreements thereto are incorporated by reference into and are an integral part of the Plan, and such terms and their implementation are hereby approved and authorized. The Debtor, Plan Sponsor, and/or Plan Administrator (as applicable) are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan.

4.      <u>Final Approval of Disclosure Statement</u>. The Disclosure Statement is hereby **APPROVED**, on a final basis, pursuant to section 1125 of the Bankruptcy Code.

5.      <u>Objections</u>. To the extent that any objections have not been withdrawn or resolved prior to the entry of this Order, all objections are overruled in all respects for the reasons set forth in the record of the Combined Hearing, which record is incorporated herein, and all withdrawn informal comments, if any, are deemed withdrawn with prejudice.

6.      <u>Omission of Reference to Particular Plan Provisions</u>. The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

7.      <u>Implementation</u>. The Debtor and the Plan Administrator are authorized to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, leases, agreements, or other documents created or executed in connection with the Plan. Without further order or authorization of this Court, the Debtor, the Plan Administrator, Plan Sponsor, and their successors are authorized and empowered to make all modifications to all Plan documents that are consistent with the Plan (including the consent rights thereunder). Execution versions of the Plan and all related documents, where applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

8.      <u>Classifications</u>. The classification of Claims for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan and the Solicitation Order.

9.      Effective Date. The Effective Date of the Plan shall occur on the date determined by the Debtor when the conditions set forth in Section 9.1 of the Plan have been satisfied or, if applicable, waived in accordance with the Plan.

10.     No Discharge. Notwithstanding any other provision of the Plan or this Order, the Debtor shall not receive a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.

11.     Appointment of Plan Administrator.  As of and following the Effective Date, the Plan Administrator, as identified in the Plan Supplement, shall be the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code, and the authority, power, and incumbency of the persons acting as directors and officers of the Debtor shall be deemed to have resigned, solely in their capacities as such. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). The Plan Administrator is hereby authorized, without further approval of this Court or any other party and in accordance with the Plan to execute the Plan Administrator Agreement and to take all other steps necessary to perform his obligations pursuant to the Plan Administrator Agreement and consistent with the Plan.

12.     Approval of Plan Administrator Agreement. The Court hereby authorizes and approves in all respects the Plan Administrator Agreement, substantially in the form filed in the Plan Supplement which shall constitute legal, valid, and binding obligations of the parties thereto and shall be enforceable according to its terms. The Court further authorizes and approves all

- 27 -

transactions contemplated by the Plan Administrator Agreement or the Plan to be undertaken by the Plan Administrator, including the provisions for compensation and indemnification of the Plan Administrator and any professionals retained thereby.

13.     <u>Establishment of Wind Down Reserve</u>. The Debtor is authorized to establish the Wind Down Reserve and fund the Wind Down Reserve with the Wind Down Funding. The Plan Administrator is authorized to direct the reversion of any funds remaining in the Wind Down Reserve to the Plan Sponsor in accordance with the terms of the Plan.

14.     <u>Settlement of Claims</u>. As discussed in detail in the Disclosure Statement and Plan, and as otherwise provided herein, in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final. The entry of this Order constitutes this Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by this Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein and in the Plan are nonseverable from each other and from all other terms of the Plan. In accordance with and subject to the provisions of the Plan, pursuant to Bankruptcy Rule 9019 the settlement and release of Claims among (i) the Debtor, Plan Sponsor, NCP Parties, the DIP Lender and CLS, and among (ii) the Debtor, Plan Sponsor, NCP Parties, DIP Lender and REILS are approved. Further in accordance with and subject to the provisions of the Plan, pursuant to Bankruptcy Rule 9019 without any further notice to or action, order, or approval of this Court, after the Effective Date,

the Plan Administrator may compromise and settle any Claims against, and Interests in, the Debtor and its Estate.

15.     <u>Corporate Action</u>. On and after the Effective Date, by virtue of entry of this Order, all actions contemplated by the Plan (including (i) the Sale Transaction and (ii) any action to be undertaken by the Plan Administrator) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtor, or any other Entity or Person. All matters provided for in the Plan involving any corporate action required by the Debtor in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor or its Estate.

16.     <u>Sale of Debtor's Assets and Approval of Sale Transaction</u>. The Sale Transaction is hereby approved as of the date of entry of this Order. As of the Effective Date, the consummation of the Sale Transaction shall effect a legal, valid, and enforceable sale and transfer of the Purchased Assets to the Plan Sponsor and shall vest the Plan Sponsor with all legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets free and clear of all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever to the maximum extent permitted by applicable law. The Definitive Documents are valid and binding contracts between the Debtor, the Plan Sponsor, and/or the parties thereto and shall be enforceable pursuant to their terms. The Definitive Documents, and the Sale Transaction itself, and the consummation thereof, shall be specifically enforceable against and binding upon (without posting any bond) the Debtor and its affiliates and such parties' successors and assigns, the Debtor's estate, the Plan Administrator all creditors thereof (whether known or unknown), all holders of equity interests in the Debtor, holders of Interests in, against, or on all or any portion of the Purchased Assets, all non-Debtor parties to

the Assumed Contracts, and the Plan Sponsor and its respective successors and assigns and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

17. <u>Free and Clear</u>. Except as expressly provided for in this Order or the Definitive Documents, pursuant to sections 105(a), 365(b), 365(f), and 1123(a)(5)(D) of the Bankruptcy Code, the Debtor is authorized and directed to transfer the Purchased Assets to the Plan Sponsor and, upon the Effective Date, other than the Plan Sponsor's assumption of the Assumed Contracts and the Plan Sponsor's obligations under the Secured Lender Restructured Secured Loan and the Assumed Contracts, the Plan Sponsor shall have and take title to and possession of the Purchased Assets free and clear of and shall have no obligation with respect to all Interests of any kind or nature whatsoever, including, without limitation, claims or Interests asserted by HCL Mechanical Services, LLC, Energy Mechanical Services, Inc., Aspen Surgical Products Inc., or Bioventus LLC, rights or claims based on any successor, transferee, derivative, or vicarious liabilities; de facto merger, continuation or continuity, or any similar theories under applicable state or federal law or otherwise and any such Liens, Claims, Interests, and Encumbrances previously encumbering the Purchased Assets shall attach to the Sale Proceeds with the same validity, priority, and extent they had in the Purchased Assets immediately prior to entry of this Order. This Order: (a) is and shall be effective as a determination that, other than Assumed Contracts, or as otherwise provided herein, upon the Effective Date all claims of any kind or nature whatsoever existing as to Purchased Assets, prior to the Effective Date have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected, with such Interests and liens attaching in order of priority to the proceeds of the Sale Transaction, and (b) is and shall be binding upon and shall authorize all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Purchaser. All recorded Interests against the Purchased Assets from their records, official and otherwise, shall be deemed stricken upon the Effective Date in accordance with the Plan and the terms of this Order without the need for further action on the part of either the Plan Sponsor or the Debtor. The Debtor is authorized and directed to sell the Purchased Assets free and clear of any Interests.

18.     <u>Release of Interests</u>.  Any and all Persons that have filed a financing statement, mortgage, mechanic's lien, *lis pendens*, or other document or agreement evidencing an Interest against or in the Purchased Assets shall deliver to the Debtor prior to the Effective Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or any other similar documents necessary for the purpose of documenting all Interests that such Person has against or in the Purchased Assets. For any Person who has not delivered such termination statements to the Debtor prior to the Effective Date, (i) the Debtor, the Plan Administrator, and/or the Plan Sponsor are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Person with respect to the Purchased Assets, (ii) the Plan Sponsor is hereby authorized to file, register, or otherwise record a certified copy of this Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature against or in the Purchased Assets, and (iii) the Plan Sponsor may seek in this Court, or any other court of appropriate jurisdiction, to compel the appropriate parties to execute termination statements,

instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has against or in the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of all Interests shall be self-executing, and neither the Debtor nor the Plan Sponsor shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.  For the avoidance of doubt, the Purchased Assets shall not be free and clear of, and shall be subject to, all liens and Interests provided to the Secured Lender pursuant to the Secured Lender Restructured Secured Loan.  The Debtor is authorized to execute a special warranty deed to Plan Sponsor upon closing of the Secured Lender Restructured Secured Loan.

19.    No Successor, Transferee, or Similar Liability. The Plan Sponsor and its Related Parties shall not be deemed, as a result of the consummation of the Sale Transaction or otherwise, to be a successor of, successor entity of, to have successorship obligations relating to, or to otherwise be deemed a successor, to the Debtor or its Estate in any capacity and is not subject to any  successor, transferee, or vicarious liability of any kind or character for any Liens, Claims, Interests, or Encumbrances against the Debtor, its Related Parties, or its Estate.

20.    Good Faith Purchaser. The Sale Transaction specified in the Plan is undertaken by the Plan Sponsor without collusion and in good faith.  The Plan Sponsor is a good faith purchaser, as that term is defined in section 363(m) of the Bankruptcy Code, and, as such, is entitled to all protections available under applicable law, including protections analogous to those afforded by section 363(m) of the Bankruptcy Code, to the fullest extent permitted. The reversal or

modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Sale Transaction, including, without limitation, the assumption and assignment of the Assumed Contracts, unless such authorization and consummation of the sale are duly and properly stayed pending appeal. .

21.     <u>Abandonment of Causes of Action</u>. The abandonment of the Causes of Actions set forth in the Plan Supplement as being non-economically beneficial under section 554 of the Bankruptcy Code is approved.

22.     <u>Exemption from Certain Transfer Taxes and Recording Fee</u>.  To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any sale by the Debtor or any transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with this Plan arising out of, contemplated by, or in any way related to the Plan, effected after the date of entry of this Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

23.    <u>Cancellation of Existing Securities and Agreements</u>. On the Effective Date, all notes, stock (where permitted by applicable law), instruments, certificates, agreements, side letters, fee letters, and other documents evidencing or giving rise to Claims against and Interests in the Debtor, including, but not limited to, the Debtor Guaranty and the Mortgage, but as to the Mortgage only and upon the execution of the Secured Lender Restructured Secured Loan, are cancelled and the obligations of the Debtor thereunder or in any way related thereto shall be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of this Court, act or action under applicable law, regulation, order, or rule, or any requirement of further action, vote, or other approval or authorization by any Person. The Holders of or parties to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents shall retain their rights vis-à-vis each other but shall have no rights against the Debtor or the Plan Sponsor, as applicable, arising from or relating to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents or the cancellation thereof unless provided otherwise in the Plan or this Order.

24.    <u>Cancellation of Corporate Existence</u>. The Debtor shall continue in existence after the Effective Date solely for the purposes of (a) winding down the Debtor's affairs as expeditiously as reasonably possible and liquidating any remaining assets held by the Debtor, if any, (b) filing appropriate tax returns, and (c) taking such actions as directed by the Plan Administrator to assist the Plan Administrator in administering the Plan in an efficacious manner. The Plan Administrator is authorized to take any action necessary to dissolve the Debtor and file any and all documents and take any and all other actions that may be necessary and appropriate to cancel the Debtor's corporate existence as soon as reasonably practicable following the Effective Date and the satisfaction of all Allowed Claims pursuant to the terms of the Plan. The execution of any

certificates necessary and appropriate to cancel the Debtor's corporate existence by the Plan Administrator is authorized and approved in all respects under applicable law, regulation, order, or rule without further action from this Court. All Intercompany Interests or Intercompany Claims shall be deemed canceled as of the Effective Date.

25.     Rejection of Executory Contracts and Unexpired Leases. Pursuant to Article VIII of the Plan, on the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases are deemed rejected under section 365 of the Bankruptcy Code without the need for any further notice to or action, approval or Order of this Court, unless such Executory Contract or Unexpired Lease: (i) has previously been assumed or assumed and assigned by a previous order of this Court in effect prior to the Effective Date; (ii) is the subject of a motion to assume filed on or before the Effective Date; (iii) is identified on the Schedule of Assumed Executory Contracts or Unexpired Leases included in the Plan Supplement; or (iv) has expired or terminated pursuant to its own terms.

26.     Claims Based on Rejection of Executory Contracts or Unexpired Leases. As provided in Section 8.3 of the Plan, all Proofs of Claims with respect to Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Confirmation of the Plan or otherwise must be filed no later than **5:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after the Effective Date**. Any Proofs of Claim arising from the rejection of an Executory Contract or Unexpired Lease that are not timely filed are Disallowed automatically, forever barred from assertion, and are not enforceable against the Debtor or its Estate, without the need for any objection by the Debtor or Plan Administrator and without need for further notice to or action, order, or approval of this Court. All Allowed Claims arising from the rejection of an

Executory Contract or Unexpired Lease shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of the Plan for such Claims.

27.    <u>Assumption of Executory Contracts and Unexpired Leases</u>. The assumption and assignment of the executory contracts and unexpired leases included in the Schedule of Assumed Contracts and Unexpired Leases is approved.  The cure costs set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases are deemed the amounts necessary to "cure" (within the meaning of section 365(b)(l) of the Bankruptcy Code) all "defaults" (within the meaning of section 365(b) of the Bankruptcy Code) under the applicable assumed executory contracts and unexpired leases.  The Debtor has cured, or provided adequate assurance that the Debtor will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases being assumed pursuant to the Plan and Plan Supplement.  The Plan Sponsor has provided adequate assurance of future performance under each of the executory contracts and unexpired leases provided for in the Schedule of Assumed Executory Contracts and Unexpired Leases.

28.    <u>Reservation of Rights</u>. Nothing contained in the Plan shall constitute an admission by the Debtor that any executory contract or unexpired lease is in fact an executory contract or unexpired lease or that the Debtor, the Plan Sponsor, or Plan Administrator has any liability thereunder.

29.    <u>Distributions Under the Plan</u>. On and after the Effective Date, the distributions on account of Allowed Claims pursuant to Article VI of the Plan and the resolution and treatment of Disputed Claims pursuant to Article VI of the Plan are authorized to occur and, without limitation on the other provisions of the Plan and this Order concerning the powers, duties, and authority of the Debtor and Plan Administrator, and the Debtor and Plan Administrator are authorized to effectuate such distributions, resolutions, and treatments required by the Plan and Plan

Administrator Agreement. If at any time the Plan Administrator determines, in reliance upon such professionals as the Plan Administrator may retain, that the expense of administering the remaining assets of the Debtor so as to make a final distribution to holders of Allowed Claims is likely to exceed the value of the assets, the Plan Administrator may distribute the balance to the Plan Administrator.

30.      <u>Payments to Taxing Authorities</u>.   Notwithstanding anything to the contrary in the Definitive Documents, which, for the avoidance of doubt, includes the Disclosure Statement, the Plan, any Plan supplements or modifications, the Confirmation Order, the Heights Health Acquisition Agreement, the Secured Lender Restructured Note or any other document or agreement related to the Sale Transaction in conjunction with Confirmation of the Plan, the Taxing Authorities'[5] secured ad valorem tax claims for tax years 2023-2025 in an amount of $2,726,399.42 (which includes all accrued pre-petition penalties and interest, and post-petition interest the "<u>Tax Claims</u>") shall be paid in full within three (3) business days from the Effective Date; *provided that*, if the Tax Claims are not paid within three business days from the Effective Date, the Taxing Authorities may pursue their state law remedies against the Purchased Assets and the Plan Sponsor, outside of and without further order from the Bankruptcy Court. The 2026 ad valorem property taxes (the "<u>Post-Petition Taxes</u>") incident to the Purchased Assets will be paid in the ordinary course without the necessity of filing an administrative expense claim or request for payment.  The real and personal property ad valorem tax liens securing the Tax Claims, including any 2026 post-petition property tax liens, shall be retained against the Purchased Assets with the same validity, extent and priority as exists under state law until such time as the Tax

---

[5] Taxing Authorities are defined as City of Houston, Houston City College, Houston Independent School District and Harris County.  Harris County collects for itself and Harris County Flood Control District, Harris County Port of Houston Authority, Harris County Hospital District, and Harris County Department of Education.

Claims, including any applicable penalties and interest as set forth herein, and the Post-Petition

Taxes are paid in full.

31.     <u>Plan Releases</u>. The releases contained in Section 5.17, 5.18, 10.4(a) and 10.4(b) of

the Plan are approved and incorporated herein in all respects.

32.     <u>Injunction</u>. The injunction provision contained in Section 10.2 of the Plan is

approved and incorporated herein in all respects.

33.     <u>Exculpation</u>. The exculpation provision contained in Section 10.3 of the Plan is

approved and incorporated herein in all respects.

34.     <u>Administrative Claims Bar Date Provisions</u>. Unless otherwise provided in the

Bankruptcy Code or previously filed or as otherwise governed by a bar date order or in another

order of the Court, all requests for allowance and payment of Administrative Claims (other than

(i) Professional Fee Claims, (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code,

(iii) U.S. Trustee Fees, (iv) Administrative Claims that have been Allowed on or before the

Effective Date, and (v) Administrative Claims that were already asserted in the Chapter 11 Case

pursuant to a timely Proof of Claim in accordance with the Bar Date Order), must be filed and

served on the Debtor and the Plan Sponsor, or, after the Effective Date, the Plan Administrator,

and its counsel, so as to actually be received on or before the Administrative Claims Bar Date,

**<u>which shall be the first Business Day that is thirty (30) days following the Effective Date</u>**.

35.     <u>Professional Fee Claims Bar Date Provisions</u>. Unless otherwise provided in the

Bankruptcy Code or previously filed or as otherwise governed by a bar date order or in another

order of the Court, all applications for allowance and payment of Professional Fee Claims by

Professionals for services rendered and reimbursement of expenses incurred prior to the Effective

Date must be filed on or before the Professional Fee Claims Bar Date, **which shall be the date that is forty-five (45) days after the Effective Date**.

36.     Notice of Entry of Confirmation Order Effective Date. The Debtor shall serve a notice of entry of this Order and a notice of the Effective Date (where such notices may constitute a combined notice in the Debtor's discretion) in accordance with Bankruptcy Rules 2002 and 3020(c) on all creditors, equity holders, and parties having requested notice in the Chapter 11 Case, and such notice(s) shall include the Administrative Claims Bar Date and the Professional Fee Claims Bar Date, and the occurrence of the Effective Date if applicable. Notwithstanding the above, no notice of Confirmation or Effective Date or service of any kind shall be required to be mailed or made upon any party to whom the Debtor mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtor has been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. The above-referenced notice(s) are adequate under the particular circumstances of the Chapter 11 Case and no other or further notice is necessary.

37.     Payment of Statutory Fees. All statutory fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code, due and payable prior to the Effective Date, shall be paid by the Debtor on the Effective Date.  After the Effective Date, the Plan Administrator shall pay any and all such fees, when due and payable.  After the Effective Date, the Plan Administrator shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee.  The Debtor and the Plan Administrator shall remain obligated to pay quarterly fees to the U.S. trustee until the earliest of the case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  Notwithstanding anything to the

contrary herein, the U.S. Trustee shall not be required to file a Proof of Claim or any other request for payment of quarterly fees.

38.    <u>Setoff, Offset, and Recoupment</u>.  The Plan Sponsor or its designee as instructed by the Plan Sponsor may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that the Plan Sponsor or its successors may hold against the Holder of such Allowed Claim after the Effective Date to the extent that such setoff or recoupment is either (a) agreed in amount among the Plan Sponsor and the Holder of the Allowed Claim or (b) otherwise adjudicated by this Court or another court of competent jurisdiction.  Notwithstanding the foregoing, neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Plan Sponsor or its successor of any claims, rights, or Causes of Action that the Plan Sponsor or its successor or assign may possess against such Holder.

39.    <u>Successors and Assigns</u>. The rights, duties, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

40.    <u>Plan Supplement</u>. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtor at the Combined Hearing (including all exhibits and attachments thereto and documents referred to therein), are authorized and approved when they are finalized, executed, and delivered. Without further order or authorization of this Court, the Debtor, the Plan Administrator, and their respective successors are authorized and empowered to

make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan (including the consent rights thereunder).

41.    <u>Binding Effect of Prior Orders and Agreements</u>. Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Order, all prior orders entered in the Chapter 11 Case, all documents and agreements executed by the Debtor as authorized and directed thereunder, and all motions or requests for relief by the Debtor pending before the Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtor, the affected creditors, and the Plan Administrator. The failure to specifically reference any particular provision set forth in the Plan or Plan Administrator Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the Plan Administrator Agreement, the Plan and each and every provision, term, and condition thereof be authorized and approved in their entirety.

42.    <u>Governmental Approvals Not Required</u>. Except as otherwise specifically provided herein, this Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

43.    <u>Effectiveness of All Actions</u>. All actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Order, without further application to, or order of the Court, or further action by the respective officers, directors,

members, managers, or the Plan Administrator and with the effect that such actions had been taken by unanimous action of such officers, directors, members, managers, or employees.

44.     <u>Plan and Confirmation Order Mutually Dependent</u>. This Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (c) nonseverable and mutually dependent.

45.     <u>Reversal</u>. If any of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtor and the Plan Administrator. Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligations incurred undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, all documents relating to the Plan, and any amendments or modifications to any of the foregoing.

46.     <u>No Stay/Immediate Binding Effect</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, from and after the entry of this Order and upon the occurrence of the Effective Date, the terms of the Plan, the documents contained in the Plan Supplement, and this Order shall not be stayed and shall be immediately effective upon entry and enforceable and deemed binding upon the Debtor, the Plan Sponsor, the Plan Administrator, and any and all Holders of Claims and Interests, all entities that are parties to or subject to the settlements, compromises, releases, and injunctions described in the Plan or in this Order, all state or local governments and governmental officials subject to the provisions of section 1146(a) of the

Bankruptcy Code, any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor, and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

47.     <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

48.     <u>Plan and Confirmation Order Govern</u>. Without intending to modify any prior order of this Court (or any agreement, instrument, or document addressed by any prior order), in the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless otherwise provided in such Plan Supplement document or in this Order). In the event of an inconsistency between this Order and the Plan or the Plan Supplement, this Order shall control.

49.     <u>Final Order</u>. This Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

50.     <u>Good Faith</u>.  The Debtor has proposed the Plan and all documents necessary to effectuate the Plan, contained in the Plan, or contemplated by the Plan, including the Disclosure Statement, Definitive Documents, and the Plan Supplement (collectively, the "<u>Plan Documents</u>") in good faith and not by any means forbidden by applicable law. In so finding, this Court has considered the totality of the circumstances of these cases, the formulation and negotiation of the Plan Documents. The Debtor's good faith is evident from the facts and record of these Chapter 11 Case, the Solicitation Materials, the supporting declarations, the record of the Combined Hearing, and other proceedings held before this Court in this Chapter 11 Case. The Plan Documents were negotiated at arm's length in good faith. The Debtor, Plan Sponsor, Plan Administrator, the Released Parties, the Exculpated Parties, and each of the foregoing Person's applicable Related

Parties have been and will be acting in good faith if they proceed to: (i) consummate the Plan and the agreements, settlements, transactions, distributions, and other transfers contemplated therein and in this Order; (ii) make any distributions pursuant to the terms and conditions of the Plan, the Plan Administrator Agreement, and this Order, as applicable; (iii) carry out any transactions contemplated by the Plan; and (iv) take any actions authorized by the Plan and this Order.

51.     _Governmental Agencies_.  Except as expressly provided for in the Plan, nothing in the Plan, this Order, or other related Definitive Documents shall affect a release or limit any claim arising under the enforcement of the police powers or regulatory activities of governmental units, including the United States Government or any of its agencies, or any state and local authority, whatsoever.

52.     _Retention of Jurisdiction_.  Notwithstanding the entry of this Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, those matters set forth in Article XI of the Plan.

Signed: December 05, 2025

Alfredo R Pérez
United States Bankruptcy Judge

# **EXHIBIT A**

Plan

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **PLATINUM HEIGHTS, LP,**[1] | § | **Case No. 25-90012 (ARP)** |
| | § | |
| **Debtor.** | § | |
| | § | |

---

## FIRST AMENDED PLAN OF REORGANIZATION
## OF DEBTOR PLATINUM HEIGHTS, LP AS MODIFIED ON NOVEMBER 25, 2025

---

**REED SMITH LLP**

Omar J. Alaniz (SBN 24040402)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
Facsimile: (469) 680-4299
E-mail:  oalaniz@reedsmith.com

- and -

Scott M. Esterbrook (admitted *pro hac vice*)
Derek M. Osei-Bonsu (admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
*Counsel for the*
*Debtor and Debtor-in-Possession*

Dated:  November 25, 2025
        Houston, Texas

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is Platinum Heights, LP (4367). The location of the Debtor's corporate headquarters and the Debtor's service address is: 1917 Ashland Street, Houston, Texas 77008.

## TABLE OF CONTENTS

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ............................ 1

**ARTICLE II ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED CLAIMS** .................................................................................................................. 12

2.1   Administrative Claims ................................................................................ 12

2.2   DIP Claims .................................................................................................. 13

2.3   Priority Tax Claims .................................................................................... 13

2.4   Professional Fee Claims ............................................................................. 13

2.5   Post-Effective Date Fees and Expenses .................................................... 14

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ............................................................................................................. 14

3.1   Classification in General ............................................................................ 14

3.2   Summary of Classification ......................................................................... 14

3.3   Treatment of Classes ................................................................................. 15

3.4   Special Provision Regarding Unimpaired Claims ..................................... 17

3.5   Subordination of Claims ............................................................................ 17

**ARTICLE IV ACCEPTANCE OR REJECTION OF THIS PLAN** ................................ 17

4.1   Acceptance by Class Entitled to Vote ....................................................... 17

4.2   Presumed Acceptance of this Plan ............................................................ 17

4.3   Deemed Rejection of this Plan ................................................................... 18

4.4   Elimination of Classes ............................................................................... 18

4.5   Controversy Concerning Impairment ........................................................ 18

**ARTICLE V MEANS FOR IMPLEMENTATION OF THIS PLAN** ................................ 18

5.1   Appointment of the Plan Administrator .................................................... 18

5.2   Powers and Duties of the Plan Administrator ........................................... 18

5.3   Plan Administrator Compensation, Expenses, and Retention of Professionals ............. 19

5.4   Exculpation; Indemnification; Insurance; Liability Limitation ................. 19

5.5   Establishment of Wind Down Reserve ..................................................... 20

5.6   Restructuring Transactions ........................................................................ 20

5.7   Sources of Cash for Distributions and Operations .................................... 21

5.8   Cancellation of Existing Securities and Agreements ................................. 21

5.9   Cancellation of Corporate Existence ......................................................... 21

5.10  Intercompany Interests and Intercompany Claims .................................... 22

5.11  Sale of Debtor's Assets Under Section 1123 of the Bankruptcy Code ........................ 22

5.12    Corporate Action ................................................................................................ 22

5.13    Effectuating Documents; Further Transactions .................................................. 23

5.14    Release of Liens ................................................................................................. 23

5.15    Abandonment of Estate Causes of Action ......................................................... 23

5.16    Exemption from Certain Transfer Taxes and Recording Fees ........................... 23

5.17    Settlement and Release of Claims between the Debtor, the Plan Sponsor, NCP Parties, and CLS ............................................................................................... 24

5.18    Settlement and Release of Claims between the Debtor, the Plan Sponsor, NCP Parties, and REILS ............................................................................................. 24

5.19    Further Authorization ......................................................................................... 25

**ARTICLE VI DISTRIBUTIONS** .......................................................................................... **25**

6.1     Distributions Generally ...................................................................................... 25

6.2     No Postpetition or Default Interest on Claims ................................................... 25

6.3     Date of Distributions .......................................................................................... 26

6.4     Distribution Record Date .................................................................................... 26

6.5     Plan Administrator .............................................................................................. 26

6.6     Delivery of Distributions .................................................................................... 26

6.7     Undeliverable Distributions and Unclaimed Property ....................................... 26

6.8     Manner of Payment Under Plan .......................................................................... 26

6.9     Minimum Distributions ...................................................................................... 27

6.10    No Distribution in Excess of Amount of Allowed Claim ................................... 27

6.11    Allocation of Distributions Between Principal and Interest ............................... 27

6.12    Setoffs and Recoupments ................................................................................... 27

6.13    Withholding and Reporting Requirements ......................................................... 27

6.14    Claims Paid or Payable by Third Parties ........................................................... 28

**ARTICLE VII PROCEDURES FOR DISPUTED CLAIMS** ............................................... **29**

7.1     Allowance of Claims .......................................................................................... 29

7.2     Objections to Claims .......................................................................................... 29

7.3     Estimation of Claims .......................................................................................... 29

7.4     No Distributions Pending Allowance ................................................................. 30

7.5     Resolution of Claims .......................................................................................... 30

7.6     Disallowed Claims .............................................................................................. 30

**ARTICLE VIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ........................................................................................ **30**

8.1     Assumption or Rejection of Executory Contracts and Unexpired Leases .......... 30

8.2      Cure of Defaults Under Assumed Contracts ................................................ 32

8.3      Claims Based on Rejection of Executory Contracts and Unexpired Leases ................ 32

8.4      Contracts and Leases Entered into After the Petition Date ................................ 32

8.5      Reservation of Rights ................................................................ 33

**ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN ................................................................ 33**

9.1      Conditions Precedent to the Effective Date .............................. 33

9.2      Waiver of Conditions Precedent .......................................... 33

9.3      Notice of Effective Date .................................................. 34

**ARTICLE X EFFECT OF PLAN CONFIRMATION ................................. 34**

10.1     Binding Effect ............................................................ 34

10.2     Injunction ................................................................ 34

10.3     Exculpation .............................................................. 34

10.4     Releases ................................................................. 35

**ARTICLE XI RETENTION OF JURISDICTION ................................. 37**

11.1     Retention of Jurisdiction ................................................ 37

11.2     Jurisdiction for Certain Other Agreements ............................... 39

11.3     Courts of Competent Jurisdiction ........................................ 39

**ARTICLE XII MISCELLANEOUS PROVISIONS ............................... 39**

12.1     Payment of Statutory Fees ............................................... 39

12.2     Amendment or Modification of this Plan .................................. 39

12.3     Substantial Consummation ............................................... 40

12.4     Severability of Plan Provisions .......................................... 40

12.5     Successors and Assigns .................................................. 40

12.6     Revocation, Withdrawal, or Non-Consummation ........................... 40

12.7     Governing Law ........................................................... 40

12.8     Immediate Binding Effect ................................................ 40

12.9     Entire Agreement ........................................................ 40

12.10    Notice ................................................................... 41

12.11    Votes Solicited in Good Faith ............................................ 41

12.12    Closing of Chapter 11 Case .............................................. 41

12.13    Waiver or Estoppel ...................................................... 41

# ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

(a) ***Defined Terms***. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1. ***Administrative Claim*** means a Claim entitled to priority under section 503(b) (including 503(b)(3), 503(b)(4), 503(b)(9)), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code (other than DIP Claims)), including (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Professional Fee Claims; (c) U.S. Trustee Fees; and (d) any Claims that have been afforded administrative expense priority by Final Order of the Bankruptcy Court.

2. ***Administrative Claims Bar Date*** means the first Business Day that is thirty (30) days following the Effective Date, which date shall be the deadline for filing requests for payment of Administrative Claims other than (a) Professional Fee Claims (such claims are subject to the Professional Fee Claims Bar Date), (b) claims asserted under section 503(b)(9) of the Bankruptcy Code (such claims are subject to the General Bar Date), (c) U.S. Trustee Fees, (d) Administrative Claims that have been Allowed on or before the Effective Date, and (e) Administrative Claims that were already asserted in the Chapter 11 Case pursuant to a timely Proof of Claim in accordance with the Bar Date Order.

3. ***Affiliate*** means, with respect to any Person, "affiliate" as defined in section 101(2) of the Bankruptcy Code, as if such Person were a Debtor.

4. ***Allowed*** means, with respect to any Claim against the Debtor, except as otherwise provided herein, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent, nor unliquidated, and for which no Proof of Claim has been timely filed and no objection has been filed by the Claims Objection Deadline, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, filed by the applicable Bar Date, and as to which the Debtor or other parties in interest have not filed an objection to the allowance thereof by the Claims Objection Deadline, (b) a Claim that is Allowed under this Plan or any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court, or (c) a Claim that is estimated under section 502(c) of the Bankruptcy Code and Allowed in such estimated amount pursuant to an order of the Bankruptcy Court for purposes of distribution; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court will not be considered "Allowed Claims" under this Plan; provided, further, that unless expressly waived by the Plan or Confirmation Order, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable. Notwithstanding the foregoing, a Claim shall not be Allowed and shall not be entitled to a distribution under this Plan to the extent it has been satisfied prior to the Effective Date. If a Claim is Allowed only in part, references to Allowed Claims include and are limited to the Allowed portion of such Claim. Notwithstanding anything to the contrary herein, no

Claim that is disallowed in accordance with Bankruptcy Rule 3003 or section 502(d) of the Bankruptcy Code is Allowed and each such Claim shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.

5. **Assumed Contracts** means those Executory Contracts and Unexpired Leases to be assumed by the Debtor and assigned to the Plan Sponsor pursuant to this Plan.

6. **Avoidance and Other Actions** means any and all actual or potential avoidance, recovery, subordination, Causes of Action, Claims, or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under sections 510 and 541–553 of the Bankruptcy Code, regardless of whether or not such action has been commenced prior to the Effective Date.

7. **Ballot** means each of the ballot forms distributed to each Holder of a Claim or Interest that is entitled to vote to accept or reject this Plan and on which the Holder is to indicate, among other things, acceptance or rejection of this Plan.

8. **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended, to the extent such amendments apply to the Chapter 11 Case.

9. **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division and, to the extent of any withdrawal of reference under section 157 of title 28 of the United States Code, the United States District Court for the Southern District of Texas.

10. **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, and the general, local, and chamber rules of the Bankruptcy Court, as now in effect or hereafter amended.

11. **Bar Date** means, as applicable: (a) the General Bar Date; (b) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after entry of a Bankruptcy Court order pursuant to which Executory Contracts or Unexpired Leases are rejected for Claims arising from such rejected agreements; (c) the later of (i) the General Bar Date and (ii) 5:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after the date that notice of any applicable amendment or supplement to the Schedules is served on a claimant for those Claims affected by any such amendment or supplement to the Schedules; (d) 5:00 p.m. (prevailing Central Time) on August 19, 2025 for Governmental Units; (e) the Administrative Claims Bar Date; and (f) the Professional Fee Claims Bar Date.

12. **Bar Date Order** means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, (II) Setting the Governmental Bar Date, (III) Approving the Form of Proofs of Claim and the Manner of Filing, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [Docket No. 100].

13. **Business Day** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

14.     ***Cash*** means legal tender of the United States of America and equivalents thereof.

15.     ***Cause of Action*** means, without limitation, any and all claims, causes of action, proceeding, agreement, Claim, cause of action, controversy, demand, debt, right, action, Avoidance and Other Actions, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, injury, remedy defense, offset, power, privilege, recoupment, cross-claim, counterclaim, third-party claim or action, indemnity claim, contribution claim, or any other claim, known or unknown, contingent or non- contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, accrued or to accrue, foreseen or unforeseen, whether assertable directly or derivatively, whether pending in litigation or otherwise, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.

16.     ***Chapter 11 Case*** means the above captioned case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court from the Petition Date through the Effective Date.

17.     ***Claim*** means a "claim" as defined in section 101(5) of the Bankruptcy Code.

18.     ***Claims Objection Deadline*** means for all Claims, the latest of: (a) 180 days after the Effective Date, subject to extension by order of the Bankruptcy Court; (b) 60 days after the filing of a Proof of Claim or request for payment of Administrative Claims for such Claim; and (c) such other objection deadline as may be specifically fixed by this Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order.

19.     ***Class*** means a category of Claims or Interests, as described in Article III.

20.     ***CLS*** means CLS Heights, LLC together with CLS Health, LLC.

21.     ***CLS Consideration*** means the $4,750,000.00 payment described in Section 3.4 of the Disclosure Statement.

22.     ***CLS Lease Agreement*** means a lease agreement between CLS and the Plan Sponsor for space in the Hospital Real Property, which agreement shall be reasonably acceptable to the Plan Sponsor in its sole discretion.

23.     ***Confirmation Date*** means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

24.     ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

25.     ***Confirmation*** means confirmation of this Plan by the Bankruptcy Court under section 1129 of the Bankruptcy Code.

26. **Confirmation Order** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, providing final approval of the Disclosure Statement as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and establishing certain dates, deadlines, and procedures related to Confirmation of this Plan.

27. **Cure Amount** means all costs required of the Debtor to cure any and all monetary defaults, including pecuniary losses, under an Assumed Contract pursuant to section 365 of the Bankruptcy Code, which shall be set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases or such other notice pursuant to the Solicitation Order.

28. **Debtor** means Platinum Heights, LP.

29. **Debtor Guaranty** means that certain Guaranty of Payment made by the Debtor in favor of REILS dated as of December 20, 2022.

30. **Definitive Documents** means all documents, instruments, deeds, notifications, agreements, and filings related to documentation, implementation, and consummation of the Sale Transaction, including, without limitation: (a) this Plan (including all exhibits and supplements thereto); (b) the Disclosure Statement; (c) the Confirmation Order and pleadings in support of entry of the Confirmation Order; (d) the motion for approval of the Debtor's solicitation procedure; (e) the Solicitation Order; (f) the Heights Health Acquisition Agreement; (g) the Secured Lender Restructured Note; and (h) all other material documents necessary or customarily required to consummate the Sale Transaction  and in the case of all such documents described in clauses (a) through (g) consistent in all respects with all other terms and provisions of this Agreement, and, except as otherwise set forth herein, reasonably acceptable in form and substance to the Plan Sponsor.

31. **DIP Claim** means any Claim in respect of the obligations of the Debtor pursuant to the DIP Documents, including all interest, fees, and other expenses owing under the DIP Documents and in accordance therewith, held by, or otherwise owing to the DIP Lender.

32. **DIP Documents** means, collectively, the documents governing the DIP Facility provided to the Debtor by the DIP Lender.

33. **DIP Facility** means, collectively the postpetition debtor in possession financing facilities of the Debtor approved pursuant to the DIP Order by the Bankruptcy Court.

34. **DIP Lender** means the lender, Dr. Baig,  under the DIP Documents and any successors and permitted assigns.

35. **DIP Order** means, as applicable, the interim or final orders entered by the Bankruptcy Court at Docket Numbers 29, 73 and 117 approving the DIP Facility and authorizing entry into the DIP Documents.

36. **Disallowed** means all or such part of a Claim (a) that is disallowed under this Plan, by a Final Order of the Bankruptcy Court or other court of competent jurisdiction, or pursuant to a settlement or stipulation pursuant to the authority of the Debtor or the Plan

Administrator; (b) is listed on the Schedules as zero or as contingent, disputed or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (c) is not listed on the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed timely filed under applicable law or the Plan; (d) has been withdrawn by agreement of the Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

37.     ***Disclosure Statement*** means the disclosure statement portion of this combined plan and disclosure statement (including all exhibits and schedules thereto) as amended, modified, or supplemented from time to time, and distributed contemporaneously herewith.

38.     ***Disputed Claim*** means (a) any Claim as to which the Debtor, the Plan Administrator or other party in interest have interposed an objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor, Plan Administrator, or other party in interest in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order; (b) any Claim scheduled by the Debtor as contingent, unliquidated, or disputed; (c) any Claim which amends a claim scheduled by the Debtor as contingent, unliquidated, or disputed; or (d) any Claim prior to it having become an Allowed Claim.

39.     ***Distribution Date*** means a date or dates, as determined by the Plan Administrator in accordance with the terms of this Plan, on which the Plan Administrator makes a distribution to Holders of Allowed Claims.

40.     ***Distribution Record Date*** means the date for determining which Holders of Claims are eligible to receive distributions under this Plan, which date shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

41.     ***Dr. Baig*** means Dr. Mirza Baig, individually.

42.     ***Effective Date*** means the date that is a Business Day, on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX of the Plan have become satisfied or waived in accordance with the Plan; and (c) the Plan is declared effective. Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

43.     ***Entity*** means "entity" as defined in section 101(15) of the Bankruptcy Code.

44.     ***Estate*** means the estate of the Debtor created under section 541 of the Bankruptcy Code.

45.     ***Exculpated Party*** means the Debtor.

46.     ***Executory Contract*** means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47. ***Exhibit*** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement, as amended, modified, or supplemented from time to time.

48. ***Existing Equity Interests*** means all existing equity Interests in the Debtor as of the Petition Date.

49. ***Final Order*** means an order or judgment, the operation or effect of which has not been reversed, stayed, modified, or amended, and as to which order or judgment (or any reversal, stay, modification, or amendment thereof) (a) the time to appeal, seek certiorari, or request re-argument or further review or rehearing has expired and no appeal, petition for certiorari, or request for re-argument or further review or rehearing has been timely filed, or (b) any appeal that has been or may be taken or any petition for certiorari or request for re-argument, further review, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, from which certiorari was sought, or to which the request was made, and no further appeal, petition for certiorari, or request for re-argument, further review, or rehearing has been or can be taken or granted.

50. ***General Bar Date*** means May 28, 2025 at 5:00 p.m. (prevailing Central Time), the date by which each Holder of a Claim against the Debtor must file a Proof of Claim unless such Claim falls within one of the exceptions set forth in the Bar Date Order.

51. ***General Unsecured Claim*** means any Claim against the Debtor, held by a creditor that furnished goods or services to the Debtor and excluding any Administrative Claims, DIP Claims, Professional Fee Claims, U.S. Trustee Fees, Priority Tax Claims, Other Priority Claims, or REILS Claim as of the Petition Date that is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court.

52. ***Governmental Unit*** has the meaning set forth in section 101(27) of the Bankruptcy Code.

53. ***Heights Health Acquisition Agreement*** means the purchase and sale agreement and related documentation between affiliates of Dr. Baig, the Plan Sponsor, and certain of the Plan Sponsor's affiliated entities documenting the assignment of a 49% membership interest in Heights Healthcare, LLC to the Plan Sponsor or an affiliated company, which agreements shall be reasonably acceptable to the Plan Sponsor in its sole discretion.

54. ***Heights Health Acquisition Consideration*** means the consideration paid by the Plan Sponsor in connection with the Heights Health Acquisition Agreement.

55. ***Holder*** means a holder of a Claim or Interest, as applicable.

56. ***Hospital Real Property*** means all the real property and its improvements as more specifically described in the Mortgage.

57. ***Impaired*** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

58.     ***Intercompany Claim*** means any and all of the Debtor's Claims against a non-Debtor Affiliate.

59.     ***Interest*** means any equity security, including a limited liability company membership interest, as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtor, together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

60.     ***IRS*** means the Internal Revenue Service.

61.     ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

62.     ***Mortgage*** means the mortgage security interest on the Hospital Real Property provided to Secured Lender as attached to the Secured Lender Claim.

63.     ***NCP Claims*** means collectively, any and all the Proofs of Claims filed by any of the NCP Parties against the Debtor in the Chapter 11 Case.

64.     ***NCP Parties*** means collectively NCP Management, LLC; Nexus Capital Partners Real Estate Investments LLC; North Houston Surgical Hospitals LLC; PH SPE LLC; White Rock Medical Center, LLC; and NCP Properties, LLC.

65.     ***Other General Unsecured Claim*** means any unsecured claim against the Debtor that is not a General Unsecured Claim.

66.     ***Other Priority Claim*** means any Claim against the Debtor accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, DIP Claim, or Priority Tax Claim.

67.     ***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, committee, or other entity.

68.     ***Petition Date*** means February 20, 2025.

69.     ***Plan*** means this chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices, and schedules hereto, either in its current form or as the same may be altered, amended, supplemented, or modified from time to time.

70.     ***Plan Administrator*** means an entity designated by the Debtor in the Plan Supplement, in its capacity as a plan administrator under this Plan, pursuant to the terms of the Plan Administrator Agreement.

71.     ***Plan Funding*** means (i) the Sale Proceeds and (ii) the Heights Health Acquisition Consideration.

72. **Plan Sponsor** means an entity that Thomas McMahon designates and that will be disclosed in the Plan Supplement.

73. **Plan Supplement** means any supplement to this Plan, and the compilation of documents, forms of documents, and Exhibits to this Plan, as amended, modified, or supplemented from time to time, initial drafts of which shall be filed by the Debtor in consultation with the Plan Sponsor seven (7) days prior to the voting deadline, which shall include the Schedule of Assumed Executory Contracts and Unexpired Leases.

74. **Priority Tax Claim** means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

75. **Pro Rata Share** means the proportion that an Allowed Claim or Interest, as applicable, in a particular Class or Classes bears to the aggregate amount of Allowed Claims within such Class or Classes.

76. **Professional** means any Entity employed in this Chapter 11 Case pursuant to a Final Order in accordance with sections 327, 328, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 363 of the Bankruptcy Code or otherwise.

77. **Professional Fee Claim** means a Claim by a Professional seeking an award by the Bankruptcy Court for compensation for services rendered (including transaction fees and success fees) or reimbursement of expenses incurred after the Petition Date and prior to and including the Effective Date, under sections 328, 330, 331 or 503(b)(2) of the Bankruptcy Code, as applicable.

78. **Professional Fee Claims Bar Date** means the deadline for filing all applications for Professional Fee Claims on a final basis, which shall be forty-five (45) days after the Effective Date.

79. **Proof of Claim** means a written proof of Claim filed against the Debtor in the Chapter 11 Case.

80. **Purchased Assets** means substantially all of the Debtor's assets, including the Hospital Real Property, but excluding any Causes of Action owned by the Debtor or its Estate.

81. **REILS** means collectively REILS Finance SPV Inc.; REILS Holdings LLC; and REILS Manager LLC.

82. **REILS Claims** means those Claims arising from the Debtor Guaranty.

83. **REILS Consideration** means the $10,000,000.00 payment described in Section 3.5 of the Disclosure Statement.

84. **Related Parties** means, subject to any exclusions expressly set forth in the Plan, (a) any Entity or Person; (b) such Entity's or Person's predecessors, predecessors in interest, successors and assigns, parents, owners, subsidiaries, affiliates, affiliated investment funds or

investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, or managers; (c) with respect to each of the foregoing in clauses (a) and (b), such Entity's or Person's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly, and any fund managers, fiduciaries, or other agents with any involvement related to the Debtor), members, partners, employees, agents, sub-agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, managers, investment managers, investment bankers, consultants, representatives, management companies, fund advisors and other professionals; and (d) with respect to each of the foregoing in clauses (a)–(c), such Entity's or Person's respective heirs, executors, estates, servants, and nominees.

85.     ***Released Parties*** means each of the following, solely in its capacity as such: (a) the Debtor, (b) Plan Sponsor, (c) NCP Parties, (d) the Secured Lender, (e) the DIP Lender, and (f) with respect to each of the foregoing in clauses (a)–(e), each of their Related Parties.

86.     ***Releasing Parties*** means each of the following, solely in its capacity as such: (a) the Debtor, (b) Plan Sponsor, (c) NCP Parties, (d) the Secured Lender, (e) the DIP Lender, and (f) Holders of Claims that accept the Plan.

87.     ***Sale Proceeds*** means the Cash consideration paid by the Plan Sponsor in connection with the Purchased Assets.

88.     ***Sale Transaction*** means the sale, transfer, and conveyance of the Purchased Assets to the Plan Sponsor pursuant to this Plan.

89.     ***Schedule of Assumed Executory Contracts and Unexpired Leases*** means any schedule (including any amendments or modifications thereto) of certain Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtor, with the prior consent of the Plan Sponsor, pursuant to this Plan, as set forth in the Plan Supplement, as may be amended from time to time prior to the Confirmation Date.

90.     ***Schedules*** means, collectively, the schedules of assets and liabilities and statements of financial affairs filed by the Debtor [Docket Nos. 59-63, 133] pursuant to section 521 of the Bankruptcy Code and the Bankruptcy Rules, as the same may be amended, supplemented, or modified from time to time.

91.     ***SEC*** means the United States Securities and Exchange Commission.

92.     ***Section 510(b) Claim*** means any Claim against any Debtor arising from rescission of a purchase or sale of a security of the Debtor or an Affiliate of the Debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

93.     ***Secured Claim*** means a Claim against the Debtor (other than Administrative Claims, DIP Claims, Priority Tax Claims, Other Priority Claims or Intercompany Claims), that is secured by a Lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the applicable Estate's interest in such property or to the extent of the amount

subject to setoff, as applicable, as determined pursuant to section 506(a) or 1129(b) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code. For the avoidance of doubt, the Secured Lender Claim is deemed to be a Secured Claim.

94. ***Secured Lender*** means b1 Bank.

95. ***Secured Lender Deficiency Claim*** means any portion of the Secured Lender Claim exceeding the value of the Secured Lender's collateral, which for the avoidance of doubt shall be treated as an Other General Unsecured Claim.

96. ***Secured Lender Claim*** means the Secured Claim of the Secured Lender set forth in Proof of Claim number 10.

97. ***Secured Lender Restructured Secured Loan*** means the secured promissory note in the principal amount of $25,500,000.00 and related loan agreements, the form of which shall be filed with the Plan Supplement in form and substance acceptable to the Plan Sponsor and Secured Lender.

98. ***Securities Act*** means the Securities Act of 1933, 15 U.S.C. §§ 77a- 77aa, as now in effect or hereafter amended.

99. ***Solicitation Order*** means one or more orders of the Bankruptcy Court approving the Disclosure Statement on a conditional basis as providing "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code and establishing certain dates, deadlines, and procedures related to Confirmation of this Plan.

100. ***Subordinated Claim*** means, collectively, Section 510(b) Claims.

101. ***Unexpired Lease*** means a lease that the Debtor is a party to and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

102. ***Unimpaired*** means a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

103. ***U.S. Trustee*** means the Office of the United States Trustee for the Southern District of Texas.

104. ***U.S. Trustee Fees*** means all fees, interest, and charges assessed against the Estate by the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.

105. ***Wind Down Funding*** means $75,000.00 contributed from the Debtor's Cash on hand that shall be contributed to the Wind Down Reserve.

106. ***Wind Down Reserve*** means reserve established to fund the post-Effective Date duties of the Debtor and the Plan Administrator that are set forth in the Plan for the wind-down of the Debtor's Estate and the Chapter 11 Case.

(b)      **Rules of Interpretation**. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that Person's or Entity's successors and assigns; (e) all references in this Plan to Sections and Articles are references to Sections and Articles of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) "including" and "include" means "including without limitation" and "include without limitation", respectively; and (k) with reference to any distribution under this Plan, "on" a date means on or as soon as reasonably practicable after that date.

(c)      **Computation of Time**. In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006(a) shall apply.

(d)      **Exhibits**. All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Holders of Claims and Interests may obtain a copy of the Exhibits upon written request to the Debtor. Upon their filing, the Exhibits may be inspected (a) in the office of the clerk of the Bankruptcy Court or its designee during normal business hours; or (b) on the Bankruptcy Court's website at https://www.txs.uscourts.gov/page/bankruptcy-court (registration required). The documents contained in the Exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

(e)      **Controlling Document**. In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and any document included in the Plan Supplement, the terms of the document in the Plan Supplement shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and this Plan, the Confirmation Order shall control.

## ARTICLE II

## ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including, Professional Fee Claims and U.S. Trustee Fees), DIP Claims, and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

2.1     *Administrative Claims.*

(a)     Except with respect to Professional Fee Claims, unless the Holder of an Allowed Administrative Claim agrees to less favorable treatment of such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which an Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date on which an Allowed Administrative Claim becomes payable under any agreement relating thereto, each Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.

(b)     To the extent not already asserted in the Chapter 11 Case pursuant to a timely filed Proof of Claim in accordance with the Bar Date Order, all requests for allowance and payment of Administrative Claims (other than (i) Professional Fee Claims (such claims are subject to the Professional Fee Claims Bar Date), (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code (such Claims are subject to the General Bar Date), (iii) U.S. Trustee Fees, (iv) Administrative Claims that have been Allowed on or before the Effective Date, and (v) Administrative Claims that were already asserted in the Chapter 11 Case pursuant to a timely Proof of Claim in accordance with the Bar Date Order), must be filed and served on the Debtor and the Plan Sponsor, or, after the Effective Date, the Plan Administrator, and its counsel, so as to actually be received on or before the Administrative Claims Bar Date.  The notice of the occurrence of the Effective Date shall set forth the Administrative Claims Bar Date and shall constitute notice thereof.  For the avoidance of doubt, Holders of Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of business after the Petition Date must file and serve a request for payment of such Administrative Claim by the applicable Administrative Claims Bar Date.

(c)     After notice and a hearing, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, a Final Order.

(d)     Holders of Administrative Claims (other than (i) Professional Fee Claims, (ii) Claims asserted under section 503(b)(9) of the Bankruptcy Code, (iii) U.S. Trustee Fees, (iv) Administrative Claims that have been Allowed on or before the Effective Date, and (v) Administrative Claims that were already asserted in the Chapter 11 Case pursuant to a timely filed Proof of Claim in accordance with the Bar Date Order), that do not file and serve a request for allowance and payment of an Administrative Claim by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting Administrative Claims against the Debtor, Plan Administrator, the Estate, or their assets and properties, and any Administrative Claims shall be deemed Disallowed as of the Effective Date without the need for any notices,

objection, or other action from the Debtor or the Plan Administrator, as applicable, or any action or approval of the Bankruptcy Court.

**2.2**     *DIP Claims*.

(a)     On the Effective Date, the DIP Claim shall be deemed waived by the DIP Lender.

(b)     Contemporaneously with the foregoing treatment, the DIP Facility and DIP Documents shall be deemed terminated without further action by the DIP Lender.  The DIP Lender shall take all actions to effectuate and confirm such termination as reasonably requested by the Debtor or Plan Administrator as applicable.

**2.3**     *Priority Tax Claims*. Unless the Holder of an Allowed Priority Tax Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Priority Tax Claims, either (a) payment in full in Cash, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date such Allowed Priority Tax Claim becomes payable under applicable non-bankruptcy law, (b) payment upon such other terms as agreed between the Plan Sponsor and each Holder of such Allowed Priority Tax Claim, or (c) installment payments in Cash over a period ending not later than five (5) years after the Petition Date consistent with section 1129(a)(9)(C) of the Bankruptcy Code.

**2.4**     *Professional Fee Claims*.

(a)     All applications for allowance and payment of Professional Fee Claims by Professionals for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed on or before the Professional Fee Claims Bar Date.  If an application for a Professional Fee Claim is not filed by the Professional Fee Claims Bar Date, such Professional Fee Claim shall be deemed waived, and the Holder of such Claim shall be forever barred from receiving payment on account thereof.  The notice of the occurrence of the Effective Date shall set forth the Professional Fee Claims Bar Date and shall constitute notice thereof. Objections to any Professional Fee Claims must be filed and served on the Plan Administrator and the requesting Professional, no later than twenty-one (21) days after service of the applicable final application for allowance and payment of Professional Fee Claims.

(b)     Unless otherwise agreed to (i) by the Debtor and the Professional prior to the Effective Date or (ii) by the Plan Administrator and the Professional after the Effective Date, the amount of Professional Fee Claims owing to such Professional that are Allowed by Final Order shall be paid in full in Cash by the Plan Administrator as soon as reasonably practicable after its Professional Fee Claims are Allowed by order of the Bankruptcy Court, (x) *first*, by application of any retainer monies held by such Professional, and (y) *second*, once such retainer balance is exhausted, the Plan Administrator shall pay such Professional the remaining balance of its Allowed Professional Fee Claim in Cash.

(c)     Professionals shall reasonably estimate their unpaid Professional Fee Claims incurred prior to the Confirmation Hearing and for fees and expenses estimated to be

incurred at and after the Confirmation Hearing and through the Effective Date and shall deliver such estimate to the Plan Sponsor no later than the date of the Confirmation Hearing; provided, that such estimate shall not be deemed to limit the amount of the fees  and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.

2.5     *Post-Effective Date Fees and Expenses*. Except as otherwise specifically provided in this Plan, from and after the Effective Date, the Plan Administrator shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to this Chapter 11 Case that are incurred after the Effective Date. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention of compensation for services rendered after such date shall terminate, and the Plan Administrator may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; provided, that, a Professional must enter into a new engagement agreement with the Plan Administrator in order to be compensated for services rendered after the Effective Date.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1     *Classification in General*. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

3.2     *Summary of Classification*. The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by this Plan, (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed or deemed to accept or reject this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Section 3.2.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| Class 2 | Secured Lender Claims | Impaired | Yes |
| Class 3 | REILS Claims | Impaired | Yes |

- 14 -

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Other General Unsecured Claims | Impaired | Yes |
| Class 6 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

**3.3** ***Treatment of Classes***.

(a)     Class 1 – Other Priority Claims

(i)     *Claims in Class*: Class 1 consists of all Other Priority Claims against the Debtor.

(ii)     *Treatment*: Unless the Holder of an Allowed Other Priority Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Other Priority Claim Cash in an amount equal to the Allowed amount of such Allowed Other Priority Claim as soon as reasonably practicable after the latest of (A) the Effective Date, (B) the date that such Claim becomes an Allowed Other Priority Claim, and (C) a date agreed to by the Plan Sponsor and the Holder of such Allowed Other Priority Claim.

(iii)     *Voting*: Claims in Class 1 are Unimpaired, and Holders of Allowed Other Priority Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Other Priority Claims are not entitled to vote to accept or reject this Plan.

(b)     *Class 2 – Secured Lender Claims*

(i)     *Claims in Class*: Class 2 consists of Secured Lender Claims.

(ii)     *Treatment*: Unless the Holder of an Allowed Secured Lender Claim and the Debtor or the Plan Sponsor (as applicable) agrees to other treatment of such Secured Lender Claim, each Holder of an Allowed Secured Lender Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Secured Lender Claim, including any Secured Creditor Deficiency Claim, the Secured Lender Restructured Secured Loan.

(iii)     *Voting*: Claims in Class 2 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Secured Lender Claim is entitled to vote to accept or reject this Plan.

(c)      *Class 3 – REILS Claims*

(i)      *Claims in Class:* Class 3 consists of all REILS Claims.

(ii)      *Treatment*: On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed REILS Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed REILS Claim shall receive, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for such Allowed REILS Claim, 20% of the Allowed REILS Claim.

(iii)      *Voting:* Claims in Class 3 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed REILS Claim is entitled to vote to accept or reject this Plan.

(d)      *Class 4 – General Unsecured Claims*

(i)      *Claims in Class:* Class 4 consists of all General Unsecured Claims unless such Holder.

(ii)      *Treatment:* On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for such Allowed General Unsecured Claim, 25% of the Allowed General Unsecured Claim.

(iii)      *Voting:* Claims in Class 4 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject this Plan.

(e)      *Class 5 – Other General Unsecured Claims*

(i)      *Claims in Class:* Class 5 consists of all Other General Unsecured Claims

(ii)      *Treatment:* On the Effective Date or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Other General Unsecured Claim agrees to less favorable treatment of such Claim, each Holder of an Allowed Other General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release and discharge of and in exchange for such Allowed Other General Unsecured Claim, 25% of the Allowed Other General Unsecured Claim paid to such Holder over six (6) equal installment commencing upon the Effective Date and payable on the fifteenth (15th) day of each following calendar month thereafter.

       (iii)    *Voting*: Claims in Class 5 are Impaired. Pursuant to section 1126 of the Bankruptcy Code, each Holder of an Allowed Other General Unsecured Claim is entitled to vote to accept or reject this Plan.

     (f)    *Class 6 – Existing Equity Interests*

       (i)    *Interests in Class*: Class 6 consists of Existing Equity Interests.

       (ii)    *Treatment*: On the Effective Date, each Allowed Existing Equity Interest shall be discharged, cancelled, released, and extinguished, without any distributions to Holders.

       (iii)    *Voting*: Interests in Class 6 are Impaired. Each Holder of an Existing Equity Interest is conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Existing Equity Interests are not entitled to vote to accept or reject this Plan.

    **3.4**    ***Special Provision Regarding Unimpaired Claims***. Except as otherwise provided in this Plan, nothing shall affect the Debtor's, the Plan Sponsor's, or the Plan Administrator's rights and defenses, legal and equitable, with respect to any Unimpaired Claims, including but not limited to all rights with respect to legal and equitable defenses to setoffs against or recoupments of Unimpaired Claims.

    **3.5**    ***Subordination of Claims***. Except as expressly provided herein, the Allowance, classification, and treatment of all Allowed Claims and Interests take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor and Plan Administrator reserve the right to classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THIS PLAN

    **4.1**    ***Acceptance by Class Entitled to Vote***. Classes 2, 3, 4 and 5 are the Classes of Claims of the Debtor that are entitled to vote to accept or reject this Plan. Classes 2, 3, 4 and 5 shall have accepted this Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in each Class have voted to accept this Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in each Class have voted to accept this Plan, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code. If there are no votes cast in a particular Class that is entitled to vote on this Plan, then this Plan shall be deemed accepted by such Class.

    **4.2**    ***Presumed Acceptance of this Plan***. Class 1 is Unimpaired. Therefore, holders of Claims in Class 1 are presumed to have accepted this Plan by operation of law and are not entitled to vote to accept or reject this Plan.

**4.3** **_Deemed Rejection of this Plan_**. Class 6 is fully Impaired and will receive no recovery under this Plan. Therefore, holders of Interests in Class 6 are deemed to have rejected this Plan by operation of law and are not entitled to vote to accept or reject this Plan.

**4.4** **_Elimination of Classes_**. To the extent applicable, any Class that does not contain any Allowed Claims or any Claims temporarily allowed for voting purposes under Bankruptcy Rule 3018, as of the date of the commencement of the Confirmation Hearing, shall be deemed to have been deleted from this Plan for purposes of (a) voting to accept or reject this Plan and (b) determining whether it has accepted or rejected this Plan under section 1129(a)(8) of the Bankruptcy Code.

**4.5** **_Controversy Concerning Impairment_**. If a controversy arises as to whether any Claims or Interests or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THIS PLAN

**5.1** **_Appointment of the Plan Administrator_**

(a) On the Effective Date, the Plan Administrator shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.

(b) On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtor shall be deemed to have resigned, solely in their capacities as such. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).

**5.2** **_Powers and Duties of the Plan Administrator_**. The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and wind down the Debtor's affairs, including:

(a) liquidating, receiving, holding, and investing, supervising, and protecting any remaining assets of the Debtor after the Effective Date;

(b) executing and delivering all documents and taking all actions necessary to consummate the Plan and wind up the Debtor's affairs;

(c) making distributions to holders of Allowed Claims as contemplated by the Plan;

(d)      establishing and maintaining bank accounts in the name of the Debtor for the winding up of the Debtor's affairs;

(e)      Subject to the terms of this Plan, employing, retaining, terminating or replacing professionals to represent it with respect to its responsibilities or otherwise winding up the Debtor's affairs;

(f)      Preparing and filing tax returns and related forms and filings on behalf of the Debtor, protesting or appealing any tax assessment, applying for or otherwise pursuing any Claim for any tax refund, rebate, or reduction, seeking a determination of tax liability under section 505 of the Bankruptcy Code or otherwise, and paying, or causing to be paid any taxes incurred by the Debtor before or after the Effective Date that are validly Allowed Claims;

(g)      compromising or settling any Claims or Interests or transferring, relinquishing, assigning, or otherwise disposing of any asset of the Debtor without further approval of the Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(h)      coordinating the storage and maintenance of the Debtor's books and records;

(i)      paying fees owed to the Office of the U.S. Trustee in accordance with applicable law and file reports to show the calculation of such fees for the Estates until the Chapter 11 Case is closed under section 350 of the Bankruptcy Code; and

(j)      exercising such other powers as may be vested in it pursuant to an order of the Court or the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

**5.3      *Plan Administrator Compensation, Expenses, and Retention of Professionals***

(a)      The Plan Administrator's compensation will be set forth in the Plan Administrator Agreement.  The fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to or action, order, or approval of the Court in Cash from the Wind Down Reserve.

(b)      The Plan Administrator shall have the sole right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties or otherwise to represent and wind down the affairs of the Debtor after the Effective Date.  The reasonable fees and expenses of such professionals shall be paid without any further notice to or action, order, or approval of the Court in Cash from the Wind Down Reserve.

**5.4      *Exculpation; Indemnification; Insurance; Liability Limitation***.  The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Debtor and its Estate.  The Plan Administrator may rely upon

written information generated by the Debtor.  For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtor or its Estate.

**5.5     *Establishment of Wind Down Reserve***. On or before the Effective Date, the Debtor shall establish the Wind Down Reserve and such Wind Down Reserve shall be funded with the Wind Down Funding.  At any point after the Effective Date, to the extent that any funds remain in the Wind Down Reserve after payment of all fees and costs to be paid from the Wind Down Reserve pursuant to the Plan, such excess funds shall revert to the Plan Sponsor.

**5.6     *Restructuring Transactions***

The transactions contemplated in this Plan and the consideration received in connection therewith, shall be structured in a manner that (i) minimizes any current taxes payable as a result of the consummation of such transactions and (ii) optimizes the tax efficiency (including, but not limited to, by way of the preservation or enhancement of favorable tax attributes) of such transactions to the Debtor and the Plan Sponsor.

(a)     The Debtor or Plan Sponsor, as applicable, may, in their discretion, take such action as permitted by applicable law, including those the Debtor or Plan Sponsor determine are reasonable, necessary or appropriate to effectuate the Plan, including: (i) the execution and delivery of any appropriate agreements or other documents of formation, merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of this Plan and that satisfy the applicable requirements of applicable law; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (iv) such other transactions that are required to effectuate this Plan; (v) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in the Debtor which purchase may be structured as a taxable transaction for United States federal income tax purposes; (vi) all actions that the applicable Entities determine to be necessary to obtain the requisite regulatory approvals to effectuate this Plan; (vii) rejection or assumption, as applicable, of Executory Contracts and Unexpired Leases; (viii) the transfer of the Purchased Assets to the Plan Sponsor; and (ix) all other actions that the applicable Entities determine to be necessary, including making filings or recordings that may be required by applicable law in connection with this Plan, and such action and documents are deemed to require no further action or approval (other than any requisite filings required under the applicable state, provincial and federal or foreign law or such consent or consultation rights as set forth in the Plan).

(b)     Except as otherwise provided in this Plan, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in the Estate and any property acquired by the Debtor, including interests held by the Debtor in its respective non-Debtor direct and indirect subsidiaries and Affiliates shall transfer to the Plan

Sponsor, free and clear of all Liens, Claims, charges, or other encumbrances, except for the Liens and Claims established under this Plan. On and after the Effective Date, except as otherwise provided in this Plan, the Plan Sponsor may operate its business and may use, acquire, or dispose of property and maintain, prosecute, abandon, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, subject only to those restrictions expressly imposed by this Plan or the Confirmation Order, as well as the documents and instruments executed and delivered in connection therewith, including the documents, exhibits, instruments, and other materials comprising the Plan Supplement.

> **5.7     *Sources of Cash for Distributions and Operations*.** All Cash necessary for the Plan Administrator to make payments required by this Plan and for post-Confirmation operations shall be obtained first, from (a) existing Cash held by the Debtor on the Effective Date and second, (b) the Plan Funding to satisfy the Debtor's obligations in the following priority in accordance with the terms of the Bankruptcy Code: (i) the Wind Down Funding and the funding of the Wind Down Reserve, (ii) satisfaction of Allowed Administrative Expenses, (iii) satisfaction of Allowed Priority Claims, and (iv) satisfaction of other payments in accordance with the terms of this Plan. At least three Business Days before the anticipated Effective Date, the Plan Administrator shall provide to the Plan Sponsor and estimate of the amount of Plan Funding that the Plan Administrator needs to satisfy the Debtor's obligations under the Plan; provided, however, that such amount shall not exceed the capped amount provided in Section 9.1(e) of this Plan, unless the Plan Sponsor agrees otherwise. Upon completion of the Debtor's obligations under this Plan and the closing of this Chapter 11 Case, the Plan Administrator shall deliver any unused funds to the Plan Sponsor.

> **5.8     *Cancellation of Existing Securities and Agreements*.** Except as provided in this Plan or in the Confirmation Order, on the Effective Date, all notes, stock (where permitted by applicable law), instruments, certificates, agreements, side letters, fee letters, and other documents evidencing or giving rise to Claims against and Interests in the Debtor, including, but not limited to, the Debtor Guaranty and the Mortgage, but as to the Mortgage only and upon the execution of the Secured Lender Restructured Secured Loan, shall be cancelled and the obligations of the Debtor thereunder or in any way related thereto shall be fully released, terminated, extinguished, and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or any requirement of further action, vote, or other approval or authorization by any Person. The Holders of or parties to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents shall retain their rights vis-à-vis each other but shall have no rights against the Debtor or the Plan Sponsor, as applicable, arising from or relating to such notes, stock, instruments, certificates, agreements, side letters, fee letters, and other documents or the cancellation thereof, except the rights provided pursuant to this Plan and the Confirmation Order.

> **5.9     *Cancellation of Corporate Existence*.** The Debtor shall continue in existence after the Effective Date solely for the purposes of (a) winding down the Debtor's affairs as expeditiously as reasonably possible and liquidating any remaining assets held by the Debtor, if any, (b) filing appropriate tax returns, and (c) taking such actions as directed by the Plan Administrator to assist the Plan Administrator in administering the Plan in an efficacious manner.  As soon as reasonably practicable following the Effective Date and the satisfaction of all Allowed Claims pursuant to the terms of the Plan, the Plan Administrator shall take any action necessary to dissolve the Debtor

and file any and all documents and take any and all other actions that may be necessary and appropriate to cancel the Debtor's corporate existence. The execution of any certificates necessary and appropriate to cancel the Debtor's corporate existence by the Plan Administrator shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule.  The filing of such certificates by the Plan Administrator shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule.

**5.10** ***Intercompany Interests and Intercompany Claims***. All Intercompany Interests or Intercompany Claims shall be deemed canceled as of the Effective Date.

**5.11** ***Sale of Debtor's Assets Under Section 1123 of the Bankruptcy Code***

(a) *Authorization of Sale.* Pursuant to sections 1123(a)(5), 1123(b)(4), 1141(c), and 1142(b) of the Bankruptcy Code, the Debtor is authorized to consummate the Sale Transaction with the Plan Sponsor in accordance with the terms hereof. The Sale Transaction constitutes a sale of all or substantially all of the property of the Debtor's Estate except any Causes of Action.

(b) *Approval and Binding Effect*.  The Confirmation Order shall approve the Sale Transaction, and such approval shall be binding on the Debtor, its Estate, the Plan Sponsor, all Holders of Claims and Interests, and all other parties in interest, whether or not such parties have objected to the Plan or the Sale Transaction.

(c) *Transfer Free and Clear*. Upon Confirmation, the Purchased Assets shall be transferred to and vest in the Plan Sponsor free and clear of all Liens, Claims, Interests, and Encumbrances of any kind or nature whatsoever to the maximum extent permitted by applicable law, with any such Liens, Claims, Interests, and Encumbrances to attach to the Sale Proceeds with the same validity, priority, and extent they had in the Purchased Assets immediately prior to Confirmation. For avoidance of doubt, the Hospital Real Property shall not be free and clear of the Secured Lender Restructured Secured Loan.

(d) *No Successor Liability.* The Plan Sponsor shall not be deemed a successor to the Debtor and shall have no successor, transferee, or vicarious liability of any kind or character for any Liens, Claims, Interests, or Encumbrances against the Debtor or its Estate.

(e) *Good Faith Purchaser.*  The Confirmation Order shall provide that the Plan Sponsor is a purchaser of the Purchased Assets in good faith and is entitled to all protections available under applicable law, including protections analogous to those afforded by section 363(m) of the Bankruptcy Code, to the fullest extent permitted.

(f) The Sale Transaction includes the sale of the Hospital Real Property and the issuance of the Secured Lender Restructured Secured Loan which shall be secured by the Mortgage granted to the Secured Lender on the Hospital Real Property.  In connection with the Secured Lender Restructured Secured Loan, Debtor shall execute a special warranty deed to Plan Sponsor at closing of the Secured Lender Restructured Secured Loan.

**5.12** ***Corporate Action***. Each of the matters provided for under this Plan involving the corporate structure of the Debtor or any corporate action to be taken by or required of the Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized,

approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by partners, members, creditors, directors, or managers of the Debtor. On or (as applicable) before the Effective Date, the appropriate officers of the Debtor, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan (or necessary or desirable to effectuate any transaction hereunder) in the name of and on behalf of the Debtor. The authorizations and approvals contemplated by this Section 5.12 shall be effective notwithstanding any requirements under nonbankruptcy law.

**5.13**   ***Effectuating Documents; Further Transactions***. The directors, officers, managers or any other appropriate officer of the Debtor, or, after the Effective Date, the Plan Sponsor or Plan Administrator as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**5.14**   ***Release of Liens***. Except as otherwise specifically provided in this Plan or any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions to be made pursuant to this Plan and upon the execution of the Secured Lender Restructured Secured Loan, all mortgages, including the Mortgage, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests, other than the Secured Lender, shall revert to the Plan Sponsor and its successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtor, Plan Sponsor, or any Holder of a Secured Claim.

**5.15**   ***Abandonment of Estate Causes of Action***. This Plan shall constitute the filing of a motion to abandon the Debtor's and the Estate's assets that are non-economically beneficial under section 554 of the Bankruptcy Code, which assets shall be identified in the Plan Supplement.

**5.16**   ***Exemption from Certain Transfer Taxes and Recording Fees***. To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by the Debtor or any transfer from any Entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; or (b) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with this Plan arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**5.17    *Settlement and Release of Claims between the Debtor, the Plan Sponsor, NCP Parties, the DIP Lender, and CLS*.** In consideration for the transactions contemplated by the Plan, including the Sale Transaction and the transactions underlying the Heights Health Acquisition Agreement, the Debtor incorporates a motion into this Plan under Bankruptcy 9019 for approval of settlement and release among the Debtor, the Plan Sponsor, CLS, each of the NCP Parties, the DIP Lender, and the Related Parties as provided herein. Notwithstanding anything contained in the Plan to the contrary, but subject to the CLS Release Conditions (hereinafter defined) as of the Effective Date, and to the fullest extent allowed by applicable law, each of the Debtor, the Plan Sponsor, CLS, each of the NCP Parties, the DIP Lender, and each of their Related Parties are deemed to have released and discharged each of the Debtor, the Plan Sponsor, CLS, each of the NCP Parties, the DIP Lender, and each of their Related Parties from any and all claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on each releasing party's behalf, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership or operation thereof), any securities issued by the Debtor and the ownership thereof, the Debtor's in- or out-of-court restructuring efforts, the Plan Sponsor's participation in the Debtor's restructuring efforts and the negotiation and formulation of the Definitive Documents, any Avoidance Actions, any Intercompany Transaction, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facilities, the Plan, the Plan Supplement, the Definitive Documents, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facilities, the Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the DIP Documents, solicitation of votes on the Plan, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, or the transfer or distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Article 5.17 (i) do not become effective until CLS has received the CLS Consideration and (ii) do not release (a) any post-effective date obligations of any party or entity under the Plan, any restructuring transaction, or any document, instrument, or agreement executed to implement the Plan, or (b) Claims or Cause of Actions related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence (the "**CLS Release Conditions**"). Upon Confirmation of the Plan, the Plan shall be approved as a settlement of all such Causes of Action and disputes. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of this settlement pursuant to Bankruptcy Rule 9019.

**5.18    *Settlement and Release of Claims between the Debtor, the Plan Sponsor, NCP Parties, the DIP Lender, and REILS*.** In consideration for the distributions contemplated by the Plan, the Debtor incorporates a motion into this Plan under Bankruptcy 9019 for approval of settlement and release among the Debtor, the Plan Sponsor, REILS, each of the NCP Parties, the DIP Lender, and their Related Parties as provided herein. Notwithstanding anything contained in the Plan to the contrary, but subject to the REILS Release Conditions (hereinafter defined), as of the Effective Date, and to the fullest extent allowed by applicable law, each of the Debtor, the Plan Sponsor, REILS, each of the NCP Parties, the DIP Lender, and each of their Related Parties are deemed to have released and discharged each of the Debtor, the Plan Sponsor, REILS, each of the

NCP Parties, the DIP Lender, and each of the Related Parties from any and all claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on each releasing party's behalf, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor (including the management, ownership or operation thereof), any securities issued by the Debtor and the ownership thereof, the Debtor's in- or out-of-court restructuring efforts, the Plan Sponsor's participation in the Debtor's restructuring efforts and the negotiation and formulation of the Definitive Documents, any Avoidance Actions, any Intercompany Transaction, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the DIP Facilities, the Plan, the Plan Supplement, the Definitive Documents, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facilities, the Plan, the Plan Supplement, the Chapter 11 Case, the filing of the Chapter 11 Case, the DIP Documents, solicitation of votes on the Plan, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, or the transfer or distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Article 5.18 (i) do not become effective until REILS has received the REILS Consideration and (ii) do not release (a) any post-effective date obligations of any party or entity under the Plan, any restructuring transaction, or any document, instrument, or agreement executed to implement the Plan, or (b) Claims or Cause of Actions related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence (the "**REILS Release Conditions**"). Upon Confirmation of the Plan, the Plan shall be approved as a settlement of all such Causes of Action and disputes. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of this settlement pursuant to Bankruptcy Rule 9019.

    **5.19**    *Further Authorization*. The Debtor, or, after the Effective Date, Plan Sponsor or the Plan Administrator, as applicable, shall be entitled to seek such orders, judgments, injunctions, and rulings as they deem necessary to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

## <u>ARTICLE VI</u>

### DISTRIBUTIONS

    **6.1**    *Distributions Generally* The Plan Administrator shall make all Plan distributions on behalf of the Debtor in accordance with this Article VI and other governing terms of this Plan.

    **6.2**    *No Postpetition or Default Interest on Claims*. Unless required by the Bankruptcy Code or otherwise specifically provided for in this Plan, the Confirmation Order, or another order of the Bankruptcy Court, and notwithstanding any documents that govern the Debtor's prepetition funded indebtedness to the contrary, postpetition and/or default interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to (a) interest accruing on such Claim on or after the Petition Date on any such Claim or (b) interest at the contract default rate, as applicable.

**6.3** *Date of Distributions*. Unless otherwise provided in this Plan, any distributions and deliveries to be made under this Plan shall be made on the Effective Date or as soon thereafter as is practicable; provided that the Plan Sponsor or Plan Administrator as applicable may implement periodic distribution dates to the extent they determine them to be appropriate.

**6.4** *Distribution Record Date*. As of the close of business on the Distribution Record Date, the various lists of Holders of Claims in each Class, as maintained by the Debtor, shall be deemed closed, and there shall be no further changes in the record Holders of any Claims after the Distribution Record Date. Neither the Debtor, Plan Sponsor, nor the Plan Administrator shall have any obligation to recognize any transfer of a Claim occurring after the close of business on the Distribution Record Date.

**6.5** *Plan Administrator*. Except as otherwise provided herein, all distributions under this Plan shall be made by the Plan Administrator on or after the Effective Date. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties. The Debtor and Plan Sponsor, as applicable, shall use all commercially reasonably efforts to provide the Plan Administrator with the amounts of Claims and the identities and addresses of Holders of Claims, in each case, as set forth in the Debtor's books and records.

**6.6** *Delivery of Distributions*. The Plan Administrator will issue or cause to be issued the applicable consideration under this Plan and, subject to Bankruptcy Rule 9010, will make all distributions as and when required by this Plan to the address of the Holder of such Claim on the books and records of the Debtor or the address in any written notice of address change delivered to the Debtor, including any addresses included on any transfers of Claim filed pursuant to Bankruptcy Rule 3001.

**6.7** *Undeliverable Distributions and Unclaimed Property*. In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Plan Administrator has determined the then-current addresses of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date on which such distribution was attempted to be made; provided, further, that the Debtor or Plan Administrator, as applicable, shall use reasonable efforts to locate a Holder if any distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall transfer to the Plan Sponsor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandonment, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

**6.8** *Manner of Payment Under Plan*. Except as specifically provided herein, at the option of the Debtor, the Plan Administrator or Plan Sponsor, as applicable, any Cash payment to be made under this Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor, the Plan Administrator or Plan Sponsor, as applicable.

**6.9** **_Minimum Distributions_**.  If any final distribution under the Plan to the Holder of an Allowed Claim would be less than US $50.00, the Plan Administrator may cancel such distribution which shall irrevocably revert to the Plan Sponsor automatically and without need for a further order by the Bankruptcy Court notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary, and the Claim of any Holder to such property or interest in property shall be discharged and forever barred.

**6.10** **_No Distribution in Excess of Amount of Allowed Claim_**. Notwithstanding anything to the contrary in this Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Plan distributions in excess of the Allowed amount of such Claim.

**6.11** **_Allocation of Distributions Between Principal and Interest_**. Except as otherwise provided herein to the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount (as determined for federal income tax purposes) of the Claim and then to accrued but unpaid interest.

**6.12** **_Setoffs and Recoupments_**. The Plan Sponsor or its designee as instructed by the Plan Sponsor may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim any and all claims, rights, and Causes of Action that the Plan Sponsor or its successors may hold against the Holder of such Allowed Claim after the Effective Date to the extent that such setoff or recoupment is either (a) agreed in amount among the Plan Sponsor and the Holder of the Allowed Claim or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; provided, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Plan Sponsor or its successor of any claims, rights, or Causes of Action that the Plan Sponsor or its successor or assign may possess against such Holder.

**6.13** **_Withholding and Reporting Requirements_**.

(a)     In connection with this Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under this Plan shall be subject to any such withholding and reporting requirements. In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate the Cash necessary to pay over the withholding tax. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of this Plan.

(b)     Notwithstanding the above, each Holder of an Allowed Claim or Interest that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. The Plan Administrator has the right, but not the obligation, to not make a distribution until such

Holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations.

(c)       As a condition of making any distribution under the Plan, each Person and Entity holding an Allowed Claim is required to provide any information necessary in writing, including returning W-8 or W-9 statements, as applicable, to effect the necessary information reporting and withholding of applicable taxes with respect to distributions to be made under the Plan as the Plan Administrator may request. The Plan Administrator shall withhold any distributions to a Holder of an Allowed Claim who fails to provide tax identification or social security information within the timeframe requested in writing by the Plan Administrator to such Holder of an Allowed Claim, which timeframe shall not be less than 30 days. Any Distribution that would otherwise be made to any Holder of an Allowed Claim that fails to timely respond to the Plan Administrator with the information required by this Section 6.14 shall be treated as an undeliverable or unclaimed distribution pursuant to Section 6.7 hereunder.

**6.14**   *Claims Paid or Payable by Third Parties*.

(a)       *Claims Paid by Third Parties.* The Debtor or the Plan Administrator, as applicable, shall reduce a Claim, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or Plan Sponsor. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, Plan Administrator or the Plan Sponsor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the Plan Administrator or Plan Sponsor, as appliable, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of such Claim as of the date of any such distribution under this Plan. This Section 6.14(a) shall not apply to payments made to REILS as described in Section 3.5 of the Disclosure Statement.

(b)       *Claims Payable by Third Parties*. Except as otherwise provided in this Plan, (i) no distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) to the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)       *Applicability of Insurance Proceeds*. Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

**7.1**    *Allowance of Claims*. On and after the Effective Date, only the Plan Administrator may object to the allowance of any Claim, including, but not limited to, any Administrative Claim. On and after the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses the Debtor had with respect to any Claim, including, but not limited to, any Administrative Claim, immediately before the Effective Date. Except as expressly provided in this Plan or in any order entered in this Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in this Chapter 11 Case allowing such Claim.

**7.2**    *Objections to Claims*.

(a)    *Authority*. On and after the Effective Date, the Plan Administrator shall have sole authority to settle, compromise, litigate to judgment, or file objections to any Claim, including, but not limited to any Administrative Claim, and to withdraw any objections to any Claim, including, but not limited to any Administrative Claim that are pending as of the Effective Date and/or that the Plan Administrator may file. Except as set forth above, on and after the Effective Date, the Plan Administrator also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

(b)    *Objection Deadline*. As soon as practicable, but no later than the Claims Objection Deadline, the Plan Administrator may file objections with the Bankruptcy Court and serve such objections on the Holders of the Claims to which such objections are made. Nothing contained herein, however, shall limit the right of the Plan Administrator to object to Claims, if any, filed or amended after the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Plan Administrator.

**7.3**    *Estimation of Claims*. The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Plan Administrator previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**7.4** *No Distributions Pending Allowance*. If an objection to a Claim is filed as set forth in Section 7.2 of this Plan, no payment or distribution provided under this Plan shall be made on account of any disputed portion of such Claim.

**7.5** *Resolution of Claims*. Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Administrator shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims and Disputed Claims.

**7.6** *Disallowed Claims*. All Claims held by Persons or Entities against whom or which the Debtor or the Plan Administrator has commenced a proceeding asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, 550 and/or 724 of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Plan; provided, Claims that are deemed Disallowed pursuant to this Section 7.6(a) shall continue to be Disallowed for all purposes until such Claim has been settled or resolved by Final Order and any sums due to the Debtor or Plan Administrator from such Person or Entity have been turned over or paid to Plan Administrator.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** *Assumption or Rejection of Executory Contracts and Unexpired Leases*.

(a)    Except as otherwise provided in this Plan, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (i) has previously been assumed or assumed and assigned by order of the Bankruptcy Court in effect prior to the Effective Date (which order may be the Confirmation Order); (ii) is the subject of a motion to assume filed on or before the Effective Date; (iii) is identified on the Schedule of Assumed Executory Contracts or Unexpired Leases; or (iv) has expired or terminated pursuant to its own terms. Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of such Executory Contracts and Unexpired Leases as set forth in this Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions, assumptions and assignments, and rejections of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date. Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to this Plan, or by Bankruptcy Court order, will transfer to and be fully enforceable by the Plan Sponsor or its assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. Notwithstanding the foregoing paragraph or anything to the contrary herein, the Debtor reserves the right to supplement the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date.

(b)    With respect to the Assumed Contracts, any provision in any such agreement that:

(i)      prohibits, restricts, or conditions the assumption and/or assignment, or purports to prohibit, restrict, or condition the assumption and/or assignment (including any "change of control" provision) of such agreement or allows any party to such agreement to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption and/or assignment of such agreement constitutes an unenforceable anti-assignment and/or discrimination provision and is void and of no force and effect.

(ii)      provides for modification, breach, or termination, or deemed modification, breach, or termination on account of or related to any of the following: (A) the commencement or continuation of the Chapter 11 Case, (B) the insolvency or financial condition of the Debtor at any time, (C) the Debtor's assumption and/or assignment of such agreement, (D) a change of control or similar occurrence, or (E) the consummation of this Plan, such provision is modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition assumption and/or assignment, to modify, terminate, or declare a breach or default under such agreement, or to exercise any other breach- or default-related rights or remedies with respect thereto, including any provision that purports to allow the non-Debtor party thereto to terminate or recapture such agreement, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.

(c)      Upon the Debtor's assumption of an Executory Contract or Unexpired Lease, as of the Effective Date pursuant to this Plan, no default or other unperformed obligations of the Debtor arising on or prior to the Effective Date shall exist, and each non-Debtor party is forever barred, estopped, and permanently enjoined from (i) declaring a breach or default under such agreement for any act or omission occurring on or prior to the Effective Date, (ii) raising or asserting against the Debtor, the Estate or the Reorganized Debtor, or the assets or property of any of them, any fee, default, termination, breach, Cause of Action, or condition arising under or related to the agreement based upon a fact or circumstance that occurred on or prior to the Effective Date, or (iii) taking any other action as a result of the Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the agreement. Each non-Debtor party to such an agreement is also forever barred, estopped, and permanently enjoined from (x) asserting against the Debtor, the Estate or the Plan Sponsor, or the assets or property of any of them, any breach, default, or Cause of Action arising out of any indemnity or other obligation or warranties for acts, omissions, or occurrences arising or existing on or prior to the Effective Date, or, against the Plan Sponsor, any counterclaim, setoff, or any other Cause of Action that was or could have been asserted or assertable against the Debtor or the Estate and (y) imposing or charging against the Plan Sponsor or its Affiliates any rent accelerations, assignment fees, increases, or any other fees or charges as a result of assumption of the agreement.

(d)      Any Person or Entity that may have had the right to consent to the assumption and/or assignment of an Executory Contract or Unexpired Lease has consented to such assumption and/or assignment for purposes of section 365 of the Bankruptcy Code if such Person or Entity failed to object timely to the assumption of such agreement, and the Plan Sponsor has

- 31 -

demonstrated adequate assurance of future performance with respect to such agreement pursuant to section 365 of the Bankruptcy Code.

**8.2**     *Cure of Defaults Under Assumed Contracts*.

(a)     Any monetary defaults under each Assumed Contract shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Assumed Contracts may otherwise agree. In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of the Plan Sponsor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. Any objection by a contract or lease counterparty to a proposed assumption or related Cure Amount must be filed and served in accordance with the Solicitation Order. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Amount shall be deemed to have assented to such assumption or Cure Amount.

(b)     Assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction or any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition of other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged without further notice to or action, order or approval of the Bankruptcy Court.

**8.3**     *Claims Based on Rejection of Executory Contracts and Unexpired Leases*. Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtor's Executory Contracts and Unexpired Leases pursuant to this Plan or otherwise must be filed no later than 5:00 p.m. (prevailing Central Time) on the date that is thirty (30) days after the Effective Date. Any Proofs of Claim arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases that are not timely filed shall be Disallowed automatically, forever barred from assertion, and shall not be enforceable against the Debtor without the need for any objection by the Debtor or further notice to or action, order, or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtor's Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of this Plan for such Claims.

**8.4**     *Contracts and Leases Entered into After the Petition Date*. Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, shall be performed by the Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

**8.5** *Reservation of Rights*. Nothing contained in this Plan shall constitute an admission by the Debtor or the Plan Sponsor that any particular contract is in fact an Executory Contract or Unexpired Lease or that the Debtor has any liability thereunder.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONSUMMATION OF THIS PLAN

**9.1** *Conditions Precedent to the Effective Date*. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with the terms of this Plan:

(a)     the Bankruptcy Court shall have entered an order confirming the Plan that is final and not subject to stay or pending appeal;

(b)     the Debtor shall have delivered to the Secured Lender $200,000.00 from the Debtor's Cash on Hand on or prior to the Confirmation Date;

(c)     the CLS Lease Agreement shall be in full force and effect;

(d)     the Heights Health Acquisition Agreement shall be in full force and effect;

(e)     the Definitive Documents and any necessary opinions shall have been negotiated, executed, and delivered;

(f)     the total distribution amount under the Plan for Administrative Claims (including Professional Fee Claims), Priority Tax Claim, Other Priority Claims, and General Unsecured Claims shall not exceed $8,450,000.00;

(g)     the Debtor's assets, including, without limitation, the Debtor's books and records, shall have been transferred to the Plan Sponsor; and

(h)     all actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable government units in accordance with applicable law, and all other actions required to be taken in connection with the Effective Date shall have occurred; *provided*, *that*, notwithstanding when a condition precedent to the Effective Date occurs, for purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously with the other conditions precedent to the Effective Date; *provided*, *further*, that to the extent a condition precedent (a "***Prerequisite Condition***") may be required to occur prior to another condition precedent (a "***Subsequent Condition***") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

**9.2** *Waiver of Conditions Precedent*. Each of the conditions precedent in Section 9.1 of the Plan, except the payment to Secured Lender in Section 9.1(b), may be waived in whole or in part, by the Debtor with the express written consent of the Plan Sponsor, without notice, leave

or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan.

**9.3** *Notice of Effective Date*. Following the satisfaction or waiver of all conditions precedent to the Effective Date, the Debtor shall file a notice of (a) the occurrence of the Effective Date, (b) the Administrative Claims Bar Date, (c) the Professional Fee Claims Bar Date, and (d) such other matters as appropriate or as may be ordered by the Bankruptcy Court.

**ARTICLE X**

**EFFECT OF PLAN CONFIRMATION**

**10.1** *Binding Effect*. Following the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor, its Estate, all present and former Holders of Claims and Interests, whether or not such Holders voted in favor of this Plan, and their respective successors and assigns.

**10.2** *Injunction*. Except as otherwise specifically provided in this Plan or the Confirmation Order, and subject to section 524(a) of the Bankruptcy Code, all Persons or Entities who have held, hold or may hold (a) Claims or Interests that arose prior to the Effective Date, (b) Causes of Action that are subject to exculpation pursuant to Section 10.3 of this Plan (but only to the extent of the exculpation provided in Section 10.3 of this Plan), or (c) Claims, Interests or Causes of Action that are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of this Plan and all other parties-in-interest seeking to enforce such Claims, Interests or Causes of Action are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim (including a Subordinated Claim) against or Interest in the Debtor or the Plan Sponsor, or property of any Debtor transferred to the Plan Sponsor, other than to enforce any right to a distribution pursuant to this Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Plan Sponsor or property of the Debtor transferred to the Plan Sponsor with respect to any such Claim or Interest, other than to enforce any right to a distribution pursuant to this Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtor or Plan Sponsor, or against the property or interests in property of the Debtor transferred to the Plan Sponsor with respect to any such Claim or Interest, other than to enforce any right to a distribution pursuant to this Plan, or (iv) asserting any right of setoff (except for setoffs validly exercised prepetition) or subrogation of any kind against any obligation due from the Debtor or Plan Sponsor, or against the property or interests in property of the Debtor transferred to the Plan Sponsor, with respect to any such Claim or Interest. Such injunction shall extend to any successors or assignees of the Debtor or Plan Sponsor and its respective properties and interests in properties.

**10.3** *Exculpation*. Effective as of the Effective Date, to the extent permitted under section 1125(e) of the Bankruptcy Code, the Exculpated Party shall not have or incur liability for, and is exculpated from any Cause of Action related to any act or omission taking place between the Petition Date and the Effective Date, in connection with, relating to, or arising out of, this Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of this Plan and Disclosure Statement, the Plan Supplement, or any transaction under the Plan, contract, instrument, or document or transaction approved by the Bankruptcy Court in this Chapter 11 Case,

except for (a) any Cause of Action related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted fraud, willful misconduct, or gross negligence of such Person, and (b) any Cause of Action related to any liability of professionals to their clients pursuant to Texas Disciplinary Rules of Professional Conduct Rule 1.08(g); provided, however, that, for the avoidance of doubt, any such exculpation shall not act or be construed to exculpate, channel, release, enjoin, or otherwise affect any civil or criminal enforcement action by a Governmental Unit.

      **10.4**    *Releases*.

      (a)    <u>Debtor's Releases</u>. **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, PURSUANT TO BANKRUPTCY CODE SECTION 1123(B) AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, ON AND AFTER THE EFFECTIVE DATE, EACH RELEASED PARTY IS DEEMED RELEASED AND DISCHARGED BY THE DEBTOR AND ITS ESTATE FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTOR OR ITS ESTATE, THAT THE DEBTOR AND ITS ESTATE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM AGAINST, OR INTEREST IN, A DEBTOR OR OTHER ENTITY, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR (INCLUDING THE MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), ANY SECURITIES ISSUED BY THE DEBTOR AND THE OWNERSHIP THEREOF, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, ANY INTERCOMPANY TRANSACTION, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING, AS APPLICABLE, OF THE DISCLOSURE STATEMENT, THE DIP FACILITIES, THE PLAN, THE PLAN SUPPLEMENT OR ANY RESTRUCTURING TRANSACTION CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE DIP FACILITIES, THE PLAN, THE PLAN SUPPLEMENT, THE CHAPTER 11 CASE, THE FILING OF THE CHAPTER 11 CASE, THE DIP DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF ANY SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE.**

      (b)    <u>Releases by Releasing Parties</u>. **NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT ALLOWED BY APPLICABLE LAW, EACH RELEASING PARTY IS DEEMED TO HAVE RELEASED AND DISCHARGED EACH**

RELEASED PARTY FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF ITSELF OR THE DEBTOR OR ITS ESTATE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR (INCLUDING THE MANAGEMENT, OWNERSHIP OR OPERATION THEREOF), ANY SECURITIES ISSUED BY THE DEBTOR AND THE OWNERSHIP THEREOF, THE DEBTOR'S IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS, ANY INTERCOMPANY TRANSACTION, THE CHAPTER 11 CASE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT, THE DIP FACILITIES, THE PLAN, THE PLAN SUPPLEMENT, OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE DISCLOSURE STATEMENT, THE DIP FACILITIES, THE PLAN, THE PLAN SUPPLEMENT, THE CHAPTER 11 CASE, THE FILING OF THE CHAPTER 11 CASE, THE DIP DOCUMENTS, SOLICITATION OF VOTES ON THE PLAN, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OF ANY SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET FORTH ABOVE DO NOT RELEASE (A) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN AND SHALL NOT RESULT IN A RELEASE, WAIVER, OR DISCHARGE OF ANY OF THE DEBTOR OR THE PLAN SPONSOR WITH RESPECT TO SUCH POST-EFFECTIVE DATE OBLIGATIONS, (B) OBLIGATIONS UNDER ANY OF THE DIP ORDERS THAT, BY THEIR EXPRESS TERMS, SURVIVE THE TERMINATION OF THE DIP ORDERS, INCLUDING THE RIGHTS OF THE APPLICABLE AGENTS TO EXPENSE REIMBURSEMENT, INDEMNIFICATION AND SIMILAR AMOUNTS OR (C) CLAIMS OR CAUSE OF ACTIONS RELATED TO ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER BY A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE.  THE RELEASES HEREIN SHALL NOT APPLY TO ANY RIGHTS OR OBLIGATIONS UNDER THE SECURED LENDER RESTRUCTURED SECURED LOAN.

## ARTICLE XI

## RETENTION OF JURISDICTION

**11.1** *Retention of Jurisdiction*. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction (unless otherwise indicated) over all matters arising in, arising out of, and/or related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     resolve any matters related to (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, including Cure Amounts pursuant to section 365 of the Bankruptcy Code, (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed or assumed and assigned, and (iii) any dispute regarding whether a contract or lease is or was executory or unexpired;

(b)     decide or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date (which jurisdiction shall be nonexclusive as to any such non-core matters);

(c)     Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or Allowance of Claims or Interests;

(d)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, the Plan Supplement, or the Confirmation Order;

(e)     resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(f)     modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(g)      hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code; *provided*, *however*, that from and after the Effective Date the payment of fees and expenses by the Plan Administrator, including professional fees, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(h)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(i)      adjudicate controversies arising out of the administration of the Estate or the implementation of this Plan;

(j)      resolve any cases, controversies, suits, or disputes that may arise in connection with Claims, including the Bar Date, related notice, claim objections, Allowance, Disallowance, estimation, and distribution;

(k)      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(l)      adjudicate, decide, or resolve any and all matters related to Causes of Action, that are pending as of the Effective Date or that may be commenced in the future, by, against, or on behalf of the Debtor, non-Debtor Affiliate, or Plan Sponsor;

(m)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

(n)      determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

(o)      enforce all orders, judgments, compromises, settlements, discharges, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

(p)      adjudicate controversies with respect to distributions to Holders of Allowed Claims;

(q)      determine requests for the payment of Claims and Interests entitled to priority under section 507 of the Bankruptcy Code;

(r)      hear and determine all matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code);

(s)      hear and determine all matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

(t)      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code;

(u)      hear and determine any issues related to any matter adjudicated in the Chapter 11 Case;

(v)      enter an order concluding or closing the Chapter 11 Case; and

(w)      hear and determine any other matter not inconsistent with the Bankruptcy Code.

**11.2    *Jurisdiction for Certain Other Agreements***. This Plan shall not modify the jurisdictional provisions of the documents contained in the Plan Supplement. Notwithstanding anything herein to the contrary, on and after the Effective Date, the Bankruptcy Court's retention of jurisdiction pursuant to this Plan shall not govern the enforcement or adjudication of any rights or remedies with respect to or as provided in the documents in the Plan Supplement and the jurisdictional provisions of such documents shall control.

**11.3    *Courts of Competent Jurisdiction***. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matters arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**12.1    *Payment of Statutory Fees***. All U.S. Trustee Fees payable after the Effective Date, if any, shall be paid by the Plan Administrator on behalf of the Debtor until the closing of the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code. The Plan Administrator shall file and serve on the U.S. Trustee quarterly reports of the disbursements made, within 15 days after the conclusion of each such period, until the Chapter 11 Case is converted, dismissed, or closed by entry of a final decree. Any such reports shall be prepared consistent with (both in terms and format) of the applicable Bankruptcy Court and U.S. Trustee Guidelines for such matters.

**12.2    *Amendment or Modification of this Plan***. Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify this Plan at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

**12.3** **_Substantial Consummation_**. On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.4** **_Severability of Plan Provisions_**. If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.5** **_Successors and Assigns_**. This Plan shall be binding upon and inure to the benefit of the Debtor, and its respective successors and assigns. The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.**_Revocation, Withdrawal, or Non-Consummation_**. The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If the Plan is revoked or withdrawn, or if Confirmation or consummation of this Plan does not occur, then (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan, nor any action taken or not taken by the Debtor with respect to this Plan, the Disclosure Statement, or the Confirmation Order, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person; (ii) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (iii) constitute or be deemed to constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person.

**12.7** **_Governing Law_**. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of law thereof.

**12.8** **_Immediate Binding Effect_**. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and Plan Supplement shall be immediately effective and enforceable.

**12.9** **_Entire Agreement_**. On the Effective Date, this Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**12.10** *Notice*. All notices, requests, and demands to or upon the Debtor, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and telephonically confirmed, addressed as follows:

**REED SMITH LLP**

Omar J. Alaniz (SBN 24040402)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469) 680-4200
E-mail:  oalaniz@reedsmith.com

- And -

Scott M. Esterbrook (admitted *pro hac vice*)
Derek M. Osei-Bonsu (admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100

**12.11** *Votes Solicited in Good Faith*. Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code section 1125(e), the Debtor its respective Affiliates, agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, neither any of such parties or individuals or the Plan Sponsor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

**12.12** *Closing of Chapter 11 Case*. The Debtor or Plan Administrator shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**12.13** *Waiver or Estoppel*. Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

**Platinum Heights, LP**

By: Mirza N. Baig

_/s/ Mirza N. Baig_
By:  Mirza N. Baig
Its:  Managing Director