## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

IN RE:

      **PLATINUM HEIGHTS, LP**           **NO. 25-90012 (ARP)**

          **DEBTOR**              **CHAPTER 11**

---

### MOTION FOR TERMINATION OF THE AUTOMATIC STAY OR OTHER APPROPRIATE RELIEF

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY.  IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE.  IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING.  IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY. THERE WILL BE A HEARING ON THIS MATTER ON FEBRUARY 12, 2026, AT 10:00 A.M. IN COURTROOM 400, 515 RUSK, HOUSTON, TEXAS 77002.**

NOW INTO COURT, through undersigned counsel, comes b1Bank ("**b1BANK**"), a state-chartered bank, organized and existing under the laws of Louisiana, an undersecured creditor and party in interest, which files this *Motion for Termination of the Automatic Stay or Other Appropriate Relief* ("**Motion**") and in support of its Motion respectfully represents as follows:

### I.
### JURISDICTION AND VENUE

1.      Respondent to this Motion is the Debtor, Platinum Heights, LP ("**PH**" or

"**Debtor**"), which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 20, 2025 (hereinafter referred to as the "**Petition Date**").

2.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334 and 157.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper under 28 U.S.C. § 1408.

4.      The predicates for the requested relief requested in this Motion are 11 U.S.C. §§ 105, 362(d), 506, 1129, 1141 and any other applicable section of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure ("FRBP") Nos. 3020, 4001 and 9014, Local Bankruptcy Rule No. 4001-1 regarding Relief from the Automatic Stay, and any other applicable Federal or Local Bankruptcy Rule.

## II.
## BACKGROUND

### _The prepetition relationship between b1BANK and PH._

5.      In the Disclosure Statement for its First Amended Plan of Reorganization of Debtor Platinum Heights, LP (D.E. 189) (the "DS"), which this Court approved on December 5, 2025 (D.E. 225), the Debtor explained that it owns a six story hospital building and the land on which it is located, known municipally as 1917 Ashland Street, Houston, TX 77008 (the "Hospital Real Property[1]"). It also stated that its sole business is the management and operation of the Hospital Real Property, not through the provision of

---

[1] While reference is made herein, for convenience, to the term "Hospital Real Property," for the avoidance of doubt, the property subject to b1BANK's Security Interests is more fully described in the documents included in that defined term, including, but not limited to, the deed of trust (DOT) defined therein, which includes an attached legal description of the land underlying and surrounding what is referred to here as the Hospital Real Property.

medical services, but rather by serving as landlord to tenants of the Hospital Real

Property. (D.E. 189, § 2.1, page 11).

6.     In the DS, the Debtor described its prepetition relationship with b1BANK

as follows:

> On September 28, 2022 the Debtor and b1Bank (the "Secured Lender")
> entered into that certain Promissory Note (the "Note"), Deed of Trust (with
> Security Agreement and Assignment of Rents) (the "Security Instrument"),
> Assignment of Leases and Rents ("Assignment of Leases") and Loan
> Agreement ("Loan Agreement" and together with the Note, Security
> Instrument and the Assignment of Leases the "Loan Documents"). Pursuant
> to the Loan Documents, Secured Lender made a loan to the Debtor in the
> original principal amount of $29,000,000.00 (the "Loan"). The loan
> obligations were evidenced in the Note. The Debtor's obligations to the
> Secured Lender were secured by the Security Instrument which provided
> the Secured Lender a valid lien and a first-priority security interest in the
> Debtor's assets including, but not limited to, the [Hospital Real Property],
> all fixtures, equipment, personal property, leases, rents, and land.
>
> The Loan was provided to the Debtor to finance the purchase of Heights
> Hospital and the Real Property [it sits on] in the 1917 Heights bankruptcy.
>
> Prior to the Petition Date, the Debtor failed to make several payments in
> accordance with the Loan Documents as a result of the financial hardships
> suffered by the loss of the North Houston lease causing a default under the
> Loan Documents. As of the Petition Date, the total amount of principal and
> interest accrued under the Note was $28,486,251.70. As a condition to the
> use of Cash Collateral, the Debtor has made several monthly payments to
> the Secured Lender on account of the Debtor's obligations under the Loan
> Documents.

(D.E. 189, § 2.2, page 13-14).

### *The filing of this bankruptcy case and initial procedural history.*

7.     On February 20, 2025 (the "Petition Date"), PH filed a voluntary petition

for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy

Code"). *See* D.E. 2, the Amended Petition.

8.     An order was entered on April 23, 2025, setting a general deadline of May 28, 2025, for non-governmental entities to file proofs of claim. (D.E. 100).

9.     Prior to this deadline, on April 29, 2025, b1BANK filed a proof of claim in the claims registry of this case, Claim No. 10-1 (the "b1BANK Claim"). The b1BANK Claim is incorporated into this Motion by reference.

### *b1BANK's prepetition Claim and security interests and post-petition adequate protection liens.*

10.    As set forth in the b1BANK Claim, b1BANK asserted that as of the Petition Date, the Debtor owed it $28,486,251.70; this is the exact amount the Debtor acknowledged was due to b1BANK as of the Petition Date in its DS. (D.E. 189 at pg. 13-14).

11.    As set forth in the b1BANK Claim, the total amount the Debtor owed it on the Petition Date was comprised of:

- principal in the amount of $27,865,353.18;
- accrued but unpaid interest in the amount of $76,202.13;
- deferred interest in the amount of $437,558.22;
- late charges in the amount of $49,283.60;
- force-placed insurance in the amount of $57,009.60; and
- legal fees and costs in the amount of $845.00.

12.    The  b1BANK  Claim  included  supporting  documents,  including  the following:

- a Commercial Loan Agreement entered into by and between b1BANK and PH dated September 28, 2022 (the "CLA") (b1BANK Claim, Exhibit No. 1);

- a Promissory Note dated September 28, 2022, executed by PH, payable to the order of b1BANK in the original principal amount of $29,000,000.00, bearing interest at the rate set forth in the note and payable pursuant to the terms of the Note, (the "Note") (b1BANK Claim, Exhibit No. 2);
- A Deed of Trust (With Security Agreement and Assignment of Rents) (the "DOT") dated September 28, 2022 (b1BANK Claim, Exhibit No. 3);
- An Assignment of Leases and Rents dated September 8, 2022, (b1BANK Claim, Exhibit No. 4) (the "Assignment"); and
- A Forced-Place Insurance Invoice with an issue date of January 3, 2025 (b1BANK Claim, Exhibit No. 5).

13.     The cumulative prepetition amounts due under the CLA, the Note and the DOT (as defined above) are included in the amount of the b1BANK Claim.

14.     The b1BANK Claim is secured, in part, by the (a) DOT executed by PH on September 28, 2022, in favor of Matthew S. Greenman, as Trustee, filed of record in the Records of Harris County, Texas on September 29, 2022, under RP-2022-485950, and (b) "Assignment", signed by PH in favor of b1BANK, recorded in Harris County, Texas on September 29, 2022, under RP-2022-485951 (the "Assignment"). As noted above, a stamp-filed copy of the Deed of Trust is attached to the b1BANK Claim as Exhibit 3, and a stamp-filed copy of the Assignment is attached to the b1BANK Claim as Exhibit 4.

15.     The DOT constitutes a valid, effective and first-ranking lien on certain property and all improvements located thereon located in Houston, Harris County, Texas, as more particularly described in the DOT, referred to herein as the Hospital Real Property.

16.     In its DS, the Debtor states b1BANK holds "a valid lien and a first-priority security interest in the Debtor's assets including, but not limited to, the Real Property, all

fixtures, equipment, personal property, leases, rents, and land." (D.E. 189, § 2.2, page 13-14).

17.     In addition to the foregoing, under the *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Secured Lender, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (D.E. 95), as adequate protection for any diminution in value of its interest in its collateral, if any, including Cash Collateral, resulting from the imposition of the automatic stay and or the Debtor's use, sale, or lease of the Collateral during the bankruptcy case, b1BANK was granted, effective as of the date the bankruptcy was filed, valid, binding and enforceable and automatically perfected liens in all post-petition property of the Debtor, of the same nature, to the same extent, and with the same priority as its prepetition liens. *See* D.E. 95, pg. 8 of 12, ¶ 23. These are referred to herein occasionally as the "Adequate Protection Liens".

18.     All of b1BANK's rights related to the Note, CLA, DOT, Assignment, and any amendments or supplements to the foregoing[2], and the Adequate Protection Liens shall, for convenience, occasionally be collectively referred to herein as the "b1BANK Security Interests" or "b1BANK's Security Interests."

19.     Pursuant to Local Rule 4001-1(a)(6), attached to this Motion as "**Exhibit 1**" is a payment history on the CLA/Note, including an explanation of transaction codes.

### *The entry of the Confirmation Order and the Confirmed Plan.*

---

[2] Attached as **Exhibit 2** to this Motion is a two-page Amendment to Commercial Loan Agreement, effective June 28, 2024, executed by PH and b1BANK; and attached hereto as **Exhibit 3** is a two-page Amendment to Promissory Note, effective as of August 5, 2024, signed by PH and b1BANK.

20.     On December 5, 2025, this Court signed an order (D.E. 225) (the "Confirmation Order") that contained findings of fact and conclusions of law. It also approved the DS and confirmed the Debtor's First Amended Plan of Reorganization as modified on November 25, 2025 (D.E. 210) (the "Confirmed Plan"). A copy of the Confirmed Plan was attached to the Confirmation Order. Unless otherwise indicated, any references in this Motion to the Confirmed Plan are referring to the copy of the Confirmed Plan attached to the Confirmation Order.

21.     Paragraph 49 of the Confirmation Order states "This Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof." Since the Confirmation Order was entered on December 5, 2025, under FRBP 8002(a)(1), any notice of appeal should have been filed within fourteen (14) days of its entry. That fourteen-day period has passed, and no notice of appeal was filed in response to the Confirmation Order. Thus, the Confirmation Order became final and no longer subject to appeal on December 19, 2025.

22.     However, as noted further below, while the Confirmation Order is final, according to communications b1BANK has received, the Effective Date described in the Confirmed Plan has not occurred, and will not occur.

23.     The Confirmed Plan provided that, upon the Effective Date, a Plan Administrator[3] (not the Debtor or Reorganized Debtor) would be deemed the Estate's representative, would act as the sole authorized representative of the Debtor, and would

---

[3] Pursuant to Article I, ¶ 70 of the Confirmed Plan, the "Plan Administrator" was defined to be an "entity designated by the Debtor in the Plan Supplement …". (D.E. 225, pg. 57). In turn, in the Plan Supplement, the Debtor designated "Erik White of HMP Advisory Holdings, LLC dba Harney Partners as Plan Administrator". D.E. 203-1. During the bankruptcy, Erik White has served as "Chief Restructuring Officer" of the debtor-in-possession. D.E. 214, pg. 1.

have broad powers to execute the terms of the Confirmed Plan, including powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code. *See* Confirmed Plan, Article V, D.E. 225, pgs. 67-68. Under the terms of the Confirmed Plan, substantially all of the Debtor's assets were to be transferred to the Plan Sponsor through a Sale Transaction. *See e.g.*, D.E. 225, Confirmed Plan, Article I, ¶¶ 80, 88. The Confirmed Plan also provided that the Debtor would continue to exist after the Effective Date for limited purposes, as more fully described therein, generally to wind down its affairs, liquidate remaining assets and take other actions necessary to assist the Plan Administrator. *See* Confirmed Plan, Article V, D.E. 225, pg. 70, § 5.9.

24.     Among other things, regarding the b1BANK Claim, the Confirmed Plan provided that (a) b1BANK has an allowed secured claim to be satisfied by the Debtor's payment of $200,000 to b1BANK[4], which has occurred, and a new promissory note in the amount of $25,500,000.00, secured by a new Deed of Trust[5] on the Hospital Real Property to be executed as part of the Secured Lender Restructured Secured Loan, all as part of a sale of the Hospital Real Property by Debtor to the Plan Sponsor. It also provided that b1BANK would have a deficiency claim for the unsecured portion of the b1BANK Claim, which would be addressed as an Other General Unsecured Claim under the Confirmed Plan. *See* generally, Confirmation Order, ¶ 18; Confirmed Plan at Article I, ¶¶ 94, 95, 96, 97; Article III, § 3.3(b); Article V, § 5.11(f); see also Plan Supplement, D.E. 203, Exhibits 6, 7 and 8. The Confirmation Order provided that the terms of the sale

---

[4] *See* Confirmed Plan, Article IX, § 9.1(b), D.E. 225, pg. 82.
[5] The Confirmed Plan specifies that b1BANK's DOT remains in place and valid until the execution of the new Secured Lender Restructure Secured Loan in b1BANK's favor, which has not occurred given the failure of a condition precedent to the Effective Date. *See* Confirmed Plan, e.g., D.E. 225, Article V, § 5.8.

of the Hospital Real Property and the transactions which were part thereof, including the Secured Lender Restructured Loan, were approved as of the date of the entry of that order. *See* D.E. 225, ¶¶ 1,12, 16.

25.     Further, under the Confirmed Plan, in relation to the Hospital Real Property - part of b1BANK's collateral - past-due, secured tax claims from governmental units for tax years 2023-2025, in the amount of $2,726,399.42, were to be paid within three (3) days of the Effective Date. *See* Confirmation Order, ¶ 30. The Confirmation Order also provides that real and personal property ad valorem tax liens securing pre-petition and post-petition property taxes, including 2026 property taxes, including any applicable penalties and interests, remain until the pre-petition and post-petition taxes are paid in full. *See* Confirmation Order, ¶ 30.

### ***Five days after the period to appeal the Confirmation Order expired, former counsel for b1BANK received a communication from counsel for the principal of Plan Sponsor[6] stating that one of the conditions precedent to the Effective Date will not occur.***

26.     On December 24, 2025, just five days after the Confirmation Order became final and no longer subject to appeal, the attorney for the principal of the Plan Sponsor sent an email[7] to b1BANK's counsel at the time, Mike Menton, in which he stated, on behalf of the Plan Sponsor:

> This is to inform you, on behalf of the Plan Sponsor, of the failure of a condition precedent to consummation of the chapter 11 plan for Platinum Heights, L.P. Pursuant to Section 9.1(d) of the confirmed plan, annexed to

---

[6] Pursuant to Article I, ¶ 72 of the Confirmed Plan (D.E. 225, pg. 57), the "Plan Sponsor" was defined as "an entity that Thomas McMahon designates and that will be disclosed in the Plan Supplement. In turn, in D.E. 203-4, part of the Plan Supplement, there is a "Plan Sponsor Designation" stating that "Thomas McMahon designates Strategic Plus Properties – Heights Healthcare, LLC, a Texas limited liability company, to serve as Plan Sponsor."

[7] *See* **Exhibit 5** hereto for a copy of this email.

the Confirmation Order at ECF 225, a condition precedent to the Effective Date is that the Heights Health Acquisition Agreement shall be in full force and effect. It has become apparent that the Heights Health Acquisition Agreement will not close, and accordingly, the Effective Date of the Plan will not occur.

Martin A. Sosland
Partner
**Vartabedian Hester & Haynes  LLP**
2200 Ross Avenue, Suite 4600E
Dallas, Texas 75201
469.314.2778 (O) | 214.415.4264 (C)
Martin.Sosland@vhh.lawed

27.     Subsequently, undersigned counsel for b1BANK contacted Mr. Sosland on December 26, 2025, and he confirmed that the Heights Acquisition Agreement was not going to close. Mr. Sosland said that the Plan Sponsor was not going to be able to reach any other agreement with the Debtor that would enable the Debtor, with the Plan Sponsor's consent, to waive the condition precedent mentioned above pursuant to Section 9.2 of the Confirmed Plan and allow the Plan Sponsor to proceed to purchase the Hospital Real Property.

***Further information concerning the relevant condition precedent to the Effective Date.***

28.     Article IX, Section 9.1 of the Confirmed Plan states that there "are conditions precedent to the occurrence of the Effective Date." D.E. 225, pg. 82. Among those conditions is subpart (d), which states "the Heights Health Acquisition Agreement shall be in full force and effect." *Id.*

29.     In turn, the Heights Health Acquisition Agreement ("HHAA") is defined in paragraph 53 of the Confirmed Plan as follows:

> Heights Health Acquisition Agreement means the purchase and sale agreement and related documentation between affiliates of Dr. Baig[8], the Plan Sponsor, and certain of the Plan Sponsor's affiliated entities documenting the assignment of a 49% membership interest in Heights Healthcare, LLC to the Plan Sponsor or an affiliated company, **which agreements shall be reasonably acceptable to the Plan Sponsor in its sole discretion**.

D.E. 225, pg. 55, ¶ 53 (emphasis added). b1BANK is <u>NOT</u> one of the parties to this agreement.

30.     This Heights Health Acquisition Agreement was also listed by name in the Confirmed Plan's definition of "Definitive Documents." D.E. 225, pg. 53, ¶ 30. Similar to the definition of the HHAA, the definition of Definitive Documents required, except as otherwise provided, that all Definitive Documents be "reasonably acceptable in form and substance to the Plan Sponsor." *Id.*

31.     Under Article IX, Section 9.1, subpart (e) of the Confirmed Plan, another, related condition precedent to the occurrence of the Effective Date is that the "Definitive Documents and any necessary opinions shall have been negotiated, executed, and delivered". D.E. 225, pg. 82. Again, per Mr. Sosland's email, this has not and will not occur with respect to the HHAA.

32.     Further, while Section 9.2 of the Confirmed Plan provides that conditions precedent to the Effective Date could be waived by the Debtor with the express written consent of the Plan Sponsor, as noted above, a communication to counsel for b1BANK from counsel acting on behalf of the Plan Sponsor states that there will be no waiver with

---

[8] Dr. Baig is the manager of Nexus Capital Partners Real Estate Investments, LLC, which, per a declaration submitted in support of confirmation of the plan, is the general partner of the Debtor. D.E. 217 at pg. 1. Dr. Baig also reports he is the principal equity holder of the Debtor. *Id.*

respect to the failure to close on the HHAA. *See* D.E. 225, pg. 82, Confirmed Plan, Article IV, § 9.2.

33.     Under Article IX, Section 9.3 of the Confirmed Plan, the Debtor was to file a "notice of the occurrence of the Effective Date" following the satisfaction or waiver of all conditions precedent to the Effective Date, but the Debtor has failed to file any such notice in this case.

34.     Thus, through no fault whatsoever of b1BANK, due to an apparent impasse between the parties negotiating the Heights Health Acquisition Agreement, the Effective Date of the Confirmed Plan has not yet occurred, and per Mr. Sosland, will never occur.

35.     A review of the pleadings indicates this was not an expected development, and it appears this development is not in line with the expectations of the Court or the representations the Debtor or its representatives made to the Court.

36.     According to the Declaration of the Manager of the General Partner of the Debtor, Mr. Mirza N. Baig, the HHAA had been discussed between the minority member of the Debtor and the Plan Sponsor since June of 2025, approximately five months prior to the confirmation hearing on December 5, 2025. *See* D.E. 217, ¶ 15. Thus, this agreement was nothing new.

37.     The Confirmation Order in fact addresses the HHAA in the present tense as part of the Definitive Documents which are declared to be "valid and binding contracts" under the Confirmed Plan. *See* Confirmation Order, ¶ 16.

38.     As noted above, the provisions of the Confirmed Plan addressing the HHAA provide that it is to be "reasonably acceptable" to the Plan Sponsor "in its sole

discretion", which obviously gives a great deal of discretion to the Plan Sponsor. D.E. 225, pg. 55, ¶ 53.

39.     In documents filed in support of confirmation of the plan, representatives of the estate and Debtor, including Debtor's counsel, represented that the now Confirmed Plan was "feasible and not likely to be followed by the need for further financial reorganization." *See e.g.*, Debtor's Brief in Support of Confirmation, D.E. 218, ¶¶ 91-93. This included the Declaration of Erik White, the Chief Restructuring Officer of the Debtor, who repeated these sentiments, speaking to the "debtor's ability to implement the provisions of the plan with a reasonable expectation of success." D.E. 214, pg. 17.

40.     Mr. White's statement in support of confirmation relied, in fact, on the assumption that the Effective Date would be on or near the date of the confirmation hearing on December 5, 2025. *See* D.E. 214, ¶¶ 46-52, in particular ¶ 49. In his declaration, Mr. White represented that he assessed that the now Confirmed Plan satisfied the "Best Interest" test of 11 U.S.C. § 1129(a)(7) based, in part, on a liquidation analysis assuming a Chapter 7 Trustee would "begin liquidating the Debtor's assets on" the date of the hearing to consider confirmation of the now Confirmed Plan, "December 5, 2025". D.E. 214, ¶ 49. Under the "Best Interest" test of 11 U.S.C. § 1129(a)(7), the Court must determine whether each impaired class of claims or interest would receive value "**as of the effective date of the plan**" that is "not less than the amount that such holder would so receive or retain **if the debtor were liquidated under chapter 7 of this title on such date**". 11 U.S.C. § 1129(a)(7) (emphasis added). Accordingly, in basing his § 1129(a)(7) analysis of value that creditors would receive in a hypothetical liquidation in a chapter 7

case as of the date of the confirmation hearing (December 5, 2025), Mr. White was relying on the assumption that that same date (December 5, 2025) was equivalent to the "effective date" of the now Confirmed Plan.

41.     During his presentation to the Court at the hearing on confirmation of the plan on December 5, 2025, Debtor's counsel did not indicate that there was any possibility that the Confirmed Plan would not become effective. Audio Recording, hearing to confirm the plan, D.E. 223.

42.     And perhaps most telling, the Debtor has not sought authorization for continued operations under a budget approving use of cash collateral beyond November 2025. *See* D.E. 95 (final order for use of Cash Collateral with a budget approved through July of 2025); and D.E. 130 and 153 (agreed orders and stipulations adjourning hearings including agreements to continue use of Cash Collateral under terms therein through no later than November of 2025).

43.     Moreover, in its Confirmation Order, this Court made findings of fact and conclusions of law that, among other things, included:

- that the plan satisfied the "Best Interests" test of 11 U.S.C. § 1129(a)(7)[9], finding, based in part on Mr. White's declaration, that "each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, **as of the Effective Date**[10], that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code ***on such date***"; [11]

---

[9] Confirmation Order, D.E. 225, pg. 15, ¶ CC.
[10] "Effective Date" as used in this finding/order was defined as the "Effective Date" under the Confirmed Plan, including the conditions precedent as discussed herein. *See e.g.,* D.E. 225, Confirmation Order and attached Confirmed Plan; fn. 2 of the Confirmation Order (relying on definitions of capitalized terms in the Confirmed Plan); and the definition of Effective Date in Article I of the Confirmed Plan, ¶ 42.
[11] Emphasis added.

- that the plan was feasible and satisfied the requirements of section 1129(a)(11) of the Bankruptcy Code, as confirmation was not likely to be followed by need for further reorganization[12]; and

- that "[e]ach of the conditions precedent to the Effective Date, as set forth in Article IX of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan"[13]; and

- that the Debtor's good faith in soliciting votes for the plan in satisfaction of 11 U.S.C. § 1125(e) was "evident from the facts and record of the Chapter 11 Case" including the aforementioned statements and declarations submitted in support of the plan.[14]

44.     In connection with its finding of good faith, the Court provided the following caveat: "Accordingly, the Debtor has been, is and will continue to act in good faith **if it proceeds to** (i) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby, and (ii) take the actions authorized and directed or contemplated by this [Confirmation Order]." *See* Confirmation Order, D.E. 225, pg. 19, ¶ NN (emphasis added). Therefore, since the Debtor and its agents have not proceeded with the consummation of the Plan and the agreements contemplated thereby, at least by implication, the Debtor is no longer in good faith.

45.     In sum, despite the Debtor's prior representations that the HHAA agreement would be finalized and executed satisfying a condition precedent to the "Effective Date" under Article IX of the Confirmed Plan, that has not occurred, and per the Plan Sponsor, will not occur due to apparent disagreements with Dr. Baig[15] or his

---

[12] Confirmation Order, D.E. 225, pg. 17, ¶ HH.
[13] Confirmation Order, D.E. 225, pg. 24, ¶ XX.
[14] Confirmation Order, D.E. 225, pg. 19, ¶ NN.
[15] As noted previously, per his declaration in support of confirmation of the plan, Dr. Baig is the principal equity holder of the Debtor. *See* D.E. 217, pg. 1.

affiliates.

46.     Regardless of what happened, the present situation is untenable for b1BANK and that is why it filed this Motion.

## III.
## LAW AND ARGUMENT

***After entry of the Confirmation Order, the property of the Debtor remains property of the bankruptcy estate and the automatic stay of 11 U.S.C. § 362(a) remains in place, thus relief from the automatic stay is appropriate, further, such relief does not violate the Confirmation Order or any provision of the Confirmed Plan.***

47.     Pursuant to 11 U.S.C. § 541, upon the Petition Date, a bankruptcy estate comprised of the property and assets of the Debtor was created.

48.     Under 11 U.S.C. § 1141(b), "except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

49.     However, neither the Confirmation Order nor the Confirmed Plan vests property of the estate in the Debtor. Quite the opposite. The Confirmed Plan contemplates a temporary continuance of the Estate under 11 U.S.C. § 541 holding all assets of the Debtor. *See* Confirmed Plan, Article V, § 5.1 (noting on the Effective Date, the Plan Administrator is deemed the Estate's representative), and Article I, ¶ 44 (defining "Estate" to mean the estate of the Debtor created under section 541 of the Bankruptcy Code). This is primarily to facilitate the transfer "on the Effective Date, [of] all property in the Estate and any property acquired by the Debtor, including interests held by the Debtor in its respective non-Debtor direct and indirect subsidiaries and

Affiliates," to the Plan Sponsor, subject to the Liens and Claims established under the plan. *See* Confirmed Plan, D.E. 225, pg. 69-70, Article V, § 5.6.

50.     Thus, under the Confirmed Plan, despite the lack of an Effective Date, it is clear that the estate created by 11 U.S.C. § 541, holding the assets of the Debtor, remains.

51.     Pursuant to 11 U.S.C. § 362(a), upon the Petition Date, an automatic stay took effect, among other things, against any act to obtain possession of property of the estate or to exercise control over property of the estate, or to enforce any lien against property of the estate to the extent it secures a claim that arose from before the bankruptcy was filed.

52.     Under 11 U.S.C. § 362(c)(1)-(2):

- the stay of any act against property of the estate under § 362(a) continues until such property is no longer property of the estate;

- and the stay of any other act under § 362(a) continues until the time the case is closed, dismissed or, if the case is a case under chapter 11 of this title, the time a discharge is granted.

53.     Pursuant to the terms of § 362(c), the entirety of the automatic stay of § 362(a) remains in place.

54.     As noted above, the property of the Debtor remains in the estate under the terms of the Confirmation Order and Confirmed Plan. Thus, pursuant to § 362(c)(1), the stay under § 362(a) of any act against property of the estate remains in place.

55.     Further, under § 362(c)(2), the stay of all other acts under § 362(a) remains in place as well, as no discharge has been granted to the Debtor. The Confirmation Order is explicit on this score. Paragraph 10 of that order is titled "No Discharge," and provides

"Notwithstanding any other provision of the Plan or this Order, the Debtor shall not receive a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code."

56.     Section 1141(d)(3) states that the confirmation of a plan does not discharge a debtor if, among other things, the plan provides for the liquidation of all or substantially all of the property of the estate, which aptly describes the contents of the Confirmed Plan. *See e.g.*, Confirmed Plan, D.E. 225, pg. 69-70, Article V, § 5.6.

57.     In short, since the property of the Debtor remains in the § 541 estate, and the stay of § 362(a) still applies, through this Motion b1BANK seeks an order granting relief from the stay under § 362(d).

58.     Such relief is not prohibited by the injunction provided for under the Confirmed Plan, as that injunction is contingent upon the occurrence of the Effective Date. *See* D.E. 225, pg. 83, Confirmed Plan, Article X, § 10.2.

59.     Nor do the releases in the Confirmed Plan bar this motion for relief, as they too are contingent upon the occurrence of the Effective Date. *See* D.E. 225, pg. 83, Confirmed Plan, Article X, § 10.4(b).

60.     Further, the "retention of jurisdiction" provisions of Article XI of the Confirmed Plan provide that notwithstanding entry of the Confirmation Order, this Court generally retains jurisdiction over all matters related to this Chapter 11 case, including any and all relief requested in this Motion. *See* D.E. 225, pg. 83, Confirmed Plan, Article XI, § 11.1.

### *Cause exists for relief from the automatic stay pursuant to 11 U.S.C. § 362(d).*

61.     Section 362(d) of the Bankruptcy Code provides that:

**(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> **(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;
> **(2)** with respect to a stay of an act against property under subsection (a) of this section, if--
>> **(A)** the debtor does not have an equity in such property; and
>> **(B)** such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

62.     b1BANK seeks relief from the stay under § 362(d), specifically an order terminating the automatic stay under both 11 U.S.C. §§ 362(d)(1) and (2) as to the Debtor and its estate, including all assets and property of the Debtor subject to the b1BANK Security Interests, including the Hospital Real Property, to enable b1BANK to exercise any and all rights under law to enforce the b1BANK Security Interests, including but not limited to, b1BANK's valid, effective and first-ranking DOT on the property described therein, including the Hospital Real Property.

63.     Pursuant to 11 U.S.C. § 362(g), b1BANK only bears the burden of proof on the Debtor's equity in the Hospital Real Property, to the extent that is relevant to the relief sought (*see e.g.*, § 362(d)(2)(A)), and a party opposing relief from stay under § 362(d) has the burden of proof on "all other issues".

64.     On any and all issues other than Debtor's lack of equity in b1BANK's collateral, including the property described in the DOT / the Hospital Real Property, once b1BANK makes a *prima facie* showing that it is entitled to relief from the stay under § 362(d), by alleging facts demonstrating it is entitled to relief under that statute, the burden

shifts to the debtor or the party opposing relief, to prove that cause does not exist for relief from the automatic stay. *See **In re Trust***, 526 B.R. 668, 673-674 (Bankr. N.D. Tx. 2015) (citing 11 U.S.C. § 362(g)).

65.     b1BANK is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), which permits a court to grant relief from the stay, including termination of the automatic stay, for "cause," including, but not limited to, a lack of adequate protection of an interest in property. 11 U.S.C. § 362(d)(1).

66.     The Bankruptcy Code does not define "cause," as that term is used in section 362, and therefore a decision to terminate the stay for cause is determined on a case-by-case basis and is left to the sound discretion of the Bankruptcy Court.[16]

67.     In this case, there is clearly cause under § 362(d)(1). Cause includes (a) the Debtor's failure to file a Notice of Effective Date, and (b) the communications b1BANK received from counsel of the Plan Sponsor stating that the Effective Date has not occurred and will not occur because of the failure to close on the HHAA, and that this condition precedent to the Effective Date would not be waived.

68.     After the expenditure of significant time and resources by the Court, the Estate and the creditor base, and after multiple statements by representatives of the Estate and Debtor (to this Court and the broader creditor base), as recently as December 5, 2025, that the Debtor's proposed plan was feasible, this Court confirmed the Confirmed Plan. In doing so, it found that the Confirmed Plan was feasible, would likely be consummated and

---

[16] *See **In re Mirant Corp**.*, 440 F.3d 238, 253 (5th Cir. 2006); ***In re Little Creek Development***, 779 F.2d 1068, 1072 (5th Cir. 1986).

would not be followed by any further reorganization of the Debtor. Less than three weeks later, the Confirmed Plan had completely unraveled on or before[17] December 24, 2025. That was just 5 days after the Confirmation Order became final and was no longer subject to appeal.

69.    The waste of resources in and on this case has been immense and should not continue.

70.    As of the filing of this Motion, more than 328 days (or approximately eleven months) after the Petition Date, the Debtor has no viable plan.

71.    The Bankruptcy Code itself provides explicit, strong support for finding "cause" under 11 U.S.C. § 362(d)(1) for relief from the stay in this case. In 11 U.S.C. § 1112(b)(4)(M), Congress established that one of the specific, enumerated examples of "cause" sufficient to support dismissal of a Chapter 11 bankruptcy case or conversion of such a case to a case under Chapter 7 of the Bankruptcy Code, is an "inability to effectuate substantial consummation of a confirmed plan," which is precisely what has happened in this case. Since this is specific "cause" sufficient to support the harsher remedy of dismissal or conversion, *a fortiori*, it is sufficient "cause" to support relief from the stay under 11 U.S.C. § 362(d)(1).

72.    In analyzing this and other points under § 1112(b)(4), Courts have noted that "a debtor cannot wallow in chapter 11 indefinitely," and that failure to "effectuate a plan" brings "undue and unreasonable delay, which is nearly always prejudicial towards

---

[17] December 24, 2025, was simply the date  of the  communication from counsel acting on behalf of the Plan Sponsor, informing counsel for b1BANK that a condition precedent to the Confirmed Plan's Effective Date would not occur.

creditors." *In re Lashley*, 664 B.R. 408, 416 (Bankr. W.D. Ky. 2024). In *Lashley*, the Court found that the fact that the bankruptcy case had been pending for ten months (similar to this case), there without progress on a confirmable plan, here without any realistic chance to consummate one that was recently confirmed, constituted unreasonable delay and was cause to dismiss or convert the case. *Id. Lashley* cited the First Circuit's decision in *In re Abijoe Realty Corp.*, 943 F.2d 121, 128 (1st Cir. 1991) in support of its ruling, which in turn affirmed a bankruptcy court's decision to dismiss a Chapter 11 case based on the failure of the debtor to present a confirmable, plausible plan within one year from the date it filed bankruptcy. In light of the facts of this case, these cases emphasize that there is ample "cause" for this Court to terminate the stay.

73.    As the Fifth Circuit noted in *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 372-373 (5thCir. 1987) (En Banc), "when there is no reasonable likelihood that the statutory objective of reorganization can be realized or when the debtor unreasonably delays, then **the automatic stay** and other statutory provisions designed to accomplish the reorganization objective **become destructive of the legitimate rights and interests of creditors**, the intended beneficiaries…." *Id.* (Emphasis added). In *Timbers*, the Fifth Circuit suggested that courts should use the 120-day exclusivity period of § 1121 as a benchmark for unreasonable delay in bankruptcy proceedings, because it was enacted by Congress in 1978 to abolish the prior regime which did not set any time limits on a debtor's exclusive right to file a bankruptcy plan. Congress recognized that this former practice (unlimited exclusivity for the debtor) created an improper imbalance of power, allowing debtors to improperly delay

proceedings to force concessions from creditors, resulting in injury to the value of the creditor's collateral and interests.

74.    Here, the Debtor has received not one, but two, separate extensions of the exclusivity period, and it still has no viable plan to offer / no reasonable likelihood of any reorganization. *See* D.E. 121, 124, 132, 137. As discussed in *Timbers*, denying relief from the automatic stay in light of this unreasonable delay would be destructive to the legitimate interests of b1BANK. *Id.*

75.    Throughout this case, at least until December 5, 2025, the Debtor repeatedly filed motions seeking emergency relief to finance or support what it described as the "expensive and time-consuming" task of "maintaining and preserving" the Hospital Real Property, b1BANK's collateral, to avoid, in its words, "destroying the value of the Debtor's business and the Hospital". *See e.g.*, D.E. 13, ¶ 21; D.E., 128, ¶ 18; D.E. 143, ¶ 21. And, despite the relief it received from the Court in connection with those motions, the Debtor has been unable to address necessary deferred maintenance on the building (which, b1BANK understands, continues to be cooled by portable air conditioning units on a trailer adjacent to the building) or to pay the past due property taxes on the Hospital Real Property, which are continuing to mount.

76.    Since the date of the Confirmation Order, and despite the failure of conditions precedent to the Effective Date, the Debtor has not sought any authorization from this Court to fund operations or any maintenance of the Hospital Real Property from the week ending November 7, 2025, through the current date. Under the final cash collateral order (D.E. 95, ¶¶ 7 and 13), the  Debtor is prohibited from withdrawing or

using cash collateral (which is subject to b1BANK's Security Interests) except as provided for in the budget attached to that final order (which ended the week ending July 18, 2025), or pursuant to further orders of the Court. Further stipulations between b1BANK and the Debtor, signed by the Court, extended these budgets through the week ending November 7, 2025. *See* D.E. 130 and 153. These budgets included allocations to fund property insurance. *See* D.E. 95, pg. 11; D.E. 130, pg. 6. However, no further budget has been approved or requested extending beyond November 2025. And the insurance procured pursuant to the cash collateral orders/budgets is set to expire on March 5, 2026.[18]

77.     Under the Confirmed Plan, the Debtor was to transfer the Hospital Real Property to the Plan Sponsor as part of a sale transaction, and to wind down its affairs, ending its long struggle to meet basic ongoing operational demands and expenses, including basic property maintenance, and its struggle to pay for insurance on its property. Now, however, with the failure of conditions precedent to the Effective Date, that has not and will not occur.

---

[18] *See* D.E. 13, Debtor's Motion for Use of Cash Collateral, ¶ 6, pg. 3, noting that one of the reasons that Debtor needed to utilize cash collateral was that Debtor's insurance on the Hospital Real Property lapsed prepetition due to Debtor's lack of available funds to pay the premiums; D.E. 95, the final order authorizing use of cash collateral in accord with a budget attached thereto, ¶ 6 (noting the need to use cash collateral to purchase insurance on the Hospital Real Property), ¶ 17 (noting that the Court ordered that the Debtor maintain the insurance referenced in Exhibit B to the final order to provide insurance coverage on the "collateral of the Secured Lender", and Exhibit B of D.E. 95, noting that the coverage period for the insurance policy described therein, with carrier Lloyds of London, was effective March 5, 2025, and assigned Policy No. AMR87198. Further, *see also* **Exhibit 4** to this Motion, which is a copy of a Certificate of Property Insurance for the aforementioned policy procured by the Debtor under the final order authorizing use of cash collateral (D.E. 95), that reflects the insurance policy will expire on March 5, 2026.

78.     b1BANK's collateral should not be left to waste away and degrade, inadequately protected, in legal limbo under the current state of affairs, and more than sufficient cause exits for this Court to grant the Motion and to terminate the stay.

79.     Further, under a stipulation between Debtor and b1BANK, signed by the Court on September 23, 2025, monthly adequate protection payments to b1BANK in relation to the Debtor's use of b1BANK's cash collateral, in the amount of $191,134.00 a month, were deferred through November 30, 2025. The Debtor was obligated to pay those deferred payments on the effective date of the Confirmed Plan (which according to the Plan Sponsor, will not happen), which it has not done. *See* D.E. 153, ¶ 4.

80.     Again, the Confirmation Order recognizes continuing liens in favor of governmental authorities for unpaid ad valorem taxes on the Debtor's property, b1BANK's collateral, to remain until all such prepetition and pospetition taxes, including 2026 ad valorem taxes, are paid along with attendant interest and penalties. *See* the Confirmation Order, D.E. 225, ¶ 30. If the Effective Date had occurred, the Confirmation Order (D.E. 225, p. 37) provided that three days later (a) $2,726,399.42 of accrued outstanding ad valorem tax claims on the Hospital Real Property for tax years 2023-2025 (including the pre-petition penalties and interest, and post-petition interest associated with the same) would have been paid, and (b) the 2026 ad valorem taxes incident to the sale of the Hospital Real Property would be paid. Now, however, those taxes will not be paid and the penalties and interest for the unpaid, past due ad valorem taxes on the Hospital Real Property will continue to mount, further diminishing the value of b1BANK's interest in that property. *See e.g.*, Texas Tax Code § 33.01(a) (describing

penalties for delinquent ad valorem taxes, starting at 6% of the amount of the tax for the first calendar month of delinquency and increasing one percent for each additional month or portion of a month that the tax remains unpaid up to a total penalty of 12%); Texas Tax Code § 33.01(c) (noting that, in addition to the aforementioned penalties, unpaid taxes accrue interest at a rate of 1% per month, beginning on the delinquency date, so that, for example, collectively, with penalties and interest, the taxing authority would seek base tax plus 7% if paid in the first month of delinquency, with the 7% representing the 6% penalty and 1% of interest, and so on); *see also* Texas Tax Code § 32.05 (generally providing that tax liens are superior to other liens on property except for (1) claims against the estate of a decedent for last illness, funeral, and burial expenses and survivor's allowance; (2) recorded restrictive covenants; and (3) recorded easements); Texas Tax Code 31.02 (noting ad valorem tax payments are delinquent if not paid by February 1 of the year following the year the tax is imposed).

81.     In sum, the current situation for b1BANK and its collateral for the b1BANK Claim is dire and constitutes more than sufficient cause for this Court to grant the Motion and terminate the stay under 11 U.S.C. § 362(d)(1).

82.     Separately and additionally, the stay should be terminated pursuant to 11 U.S.C. § 362(d)(2). This Court recognized that b1BANK was the holder of a claim, secured by property of the Debtor, in the amount of $25,700,000.00, and that the balance of its claim was unsecured[19]. Clearly, there is no equity in the property subject to the

---

[19] *See e.g.*, D.E. 225, Confirmation Order, ¶ 16 (noting the Sale Transaction is approved as of the date of the entry of the Confirmation Order); and the attached Confirmed Plan, Article I, ¶¶ 94–97; Article III, § 3.3(b); Article V, § 5.11(f) (providing the "Sale Transaction" includes the sale of the Hospital Real Property and the Secured Lender

b1BANK Security Interests, including the Hospital Real Property. Further, in light of the failure of the condition precedent to the Effective Date, the Debtor does not need the property subject to the b1BANK Security Interests, including the Hospital Real Property, for a viable reorganization, as the Confirmed Plan has not and will never become effective.

83.     As noted above, the law is clear that a debtor does not have an indefinite amount of time to reorganize its affairs. This Court granted not one but two extensions of the exclusivity period to the Debtor. After those extensions, the best the Debtor could muster vis-à-vis a plan of "reorganization" was a plan providing for the liquidation of all its assets. Even this plan, the Confirmed Plan, failed less than three weeks after entry of the Confirmation Order. That was an order that this Court entered following a hearing in which the Debtor and its representatives assured the Court and the body of creditors that all known facts indicated that the Effective Date would occur and the proposed plan would not need to be followed by any further efforts toward reorganization. There is no further reasonable likelihood of reorganization for this Debtor sufficient to deny relief from the automatic stay. For this Court to rule otherwise at this stage of the case, as the Fifth Circuit noted in the *Timbers* case, would unfairly impinge on the rights of creditors, here b1BANK. *See **In re Timbers of Inwood Forest Associates, Ltd.**,* 808 F.2d at 372-373.

84.     b1BANK also reserves all rights to demonstrate additional cause for relief from the stay under 11 U.S.C. § 362(d) at any hearing on this Motion.

---

Restructured Loan); Article IX, § 9.1(b), providing for payment of $200,000.00 from the Debtor to b1BANK on or prior to the Confirmation Date.

85.     Considering the factors set forth in this Motion, and the need for immediate relief, b1BANK further prays that this Court provide that any order granting relief from the automatic stay of 11 U.S.C. § 362(a) shall be effective immediately and not subject to the fourteen (14) day stay of FRBP 4001(a)(4).

## IV.
## CONCLUSION

WHEREFORE, b1BANK PRAYS THAT:

I.    This Court terminate the automatic stay imposed by 11 U.S.C. § 362(a) as to the Debtor and all property of the Debtor's estate subject to b1BANK's Security Interests, including the Hospital Real Property, to enable b1BANK to exercise any and all rights to enforce the b1BANK Security Interests, including but not limited to, enforcement of b1BANK's valid, effective and first-ranking DOT as to all the property and assets of the Debtor described in the DOT, including the Hospital Real Property;

II.   Any order on this Motion granting relief from the automatic stay of 11 U.S.C. § 362(a) shall be effective immediately and not subject to the fourteen (14) day stay of FRBP 4001(a)(4);

III.  This Court enter an order granting the Motion which is substantively similar to the proposed order attached to the Motion;

IV.   Alternatively, following a hearing, that this Court grant b1BANK any other appropriate relief that its Motion warrants; and

V.    For all other relief to which b1BANK is justly entitled, whether or not specifically prayed for herein.

Dated:  January 16, 2026.                    Respectfully submitted,

                                             WIENER, WEISS & MADISON
                                             A Professional Corporation

                                             By: /s/ Patrick L. McCune
                                             R. Joseph Naus (B.R. #17074)
                                             330 Marshall Street, Suite 1000 (71101)
                                             P. O. Box 21990
                                             Shreveport, Louisiana  71120-1990
                                             318-226-9100
                                             318-424-5128, fax
                                             Email:  rjnaus@wwmlaw.com

                                             AND

                                             Patrick L. McCune (TX B.R. # 24090985)
                                             WIENER, WEISS & MADISON
                                             A Professional Corporation
                                             445 Louisiana Avenue
                                             Baton Rouge, Louisiana 70802
                                             225-910-8084
                                             225-910-8082, fax
                                             Email: pmccune@wwmlaw.com

                                             **ATTORNEYS FOR MOVANT,
                                             b1BANK**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of this *Motion for Termination of the Automatic Stay or Other Appropriate Relief* (the "**Motion**") of b1BANK, including all attachments thereto and a proposed order, have been served electronically on all persons who have requested electronic notice via the PACER/ ECF/CMS system, including but not limited to:

Omar Jesus Alaniz                            By Electronic Notice
    *Attorney for Debtor*                    oalaniz@reedsmith.com

*Platinum Heights, LP*

| | |
|---|---|
| Office of U.S. Trustee | By Electronic Notice |
| Houston, TX 77002 | USTP.Region07@usdoj.gov |
| | |
| Christopher Ross Travis | By Electronic Notice |
| Jana Smith Whitworth | C.Ross.Travis@usdoj.gov |
| Office of the U.S. Trustee | Jana.whitworth@usdoj.gov |
|     Attorney for the | |
|     U.S. Trustee | |

Further, I certify that I have submitted this Motion, including all of its attachments and a proposed order, to Stretto, Inc., servicing agency, and directed it to mail a copy of this Motion and the attachments to it, including the proposed order, today, via U.S. mail, first class, postage prepaid, to all addresses for those persons or entities listed on the attached mailing matrix of this case, see **Exhibit 6**, dated January 16, 2026, except the addresses the matrix notes have been updated, or the addresses noted on the matrix as being addresses subject to bypass due to mail being returned and or marked as undeliverable.

Baton Rouge, Louisiana, this 16th day of January, 2026.

*/s/     Patrick L. McCune  *
OF COUNSEL

## **CERTIFICATE PURSUANT TO LOCAL RULE 4001-1(a)(1)**

Counsel for movant, b1BANK, conferred with counsel for respondent, Debtor - PH, regarding the relief requested herein on January 16, 2026, by phone, and they were unable to reach an agreement on the relief b1BANK is requesting in the Motion.

Baton Rouge, Louisiana, this 16th day of January, 2026.

*/s/     Patrick L. McCune  *
OF COUNSEL
