UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:

    PLATINUM HEIGHTS, LP              NO. 25-90012 (ARP)

              DEBTOR                            CHAPTER 11

## b1BANK'S COMBINED OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER EXTENDING DEBTOR'S EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF AND RESPONSE TO THE DEBTOR'S SECOND EMERGENCY MOTION FOR USE OF CASH COLLATERAL AND OTHER RELIEF

NOW INTO COURT, through undersigned counsel, comes b1Bank ("**b1BANK**"), a state-chartered bank, organized and existing under the laws of Louisiana, an undersecured creditor and party in interest, which files this Combined Objection and Response (collectively the "**Objection**") to the *Emergency Motion for Entry of an Order Extending Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* ("**Exclusivity Motion**") (D.E. 234) and *Debtor's Second Emergency Motion For Use Of Cash and Other Relief* ("**Cash Collateral Motion**") (D.E. 235) filed by the Debtor in this case, Platinum Heights, LP ("**Debtor**" or "**PH**"), and in support of its Objection, respectfully represents as follows:

### I.   BACKGROUND.

1.    Prior to the filing of the Exclusivity Motion and the Cash Collateral Motion (collectively the "Emergency Motions"), on January 16, 2026, b1BANK filed its *Motion for Termination of the Automatic Stay or Other Appropriate Relief*, D.E. 231 (the "Lift

Stay Motion"), which is set for hearing on February 12, 2026.

2. As noted in further detail below, b1BANK asserts that its Lift Stay Motion has prompted the Emergency Motions by the Debtor, and is otherwise relevant to the Emergency Motions. Further, b1BANK set forth in great detail the procedural history of this case in its Lift Stay Motion.

3. Accordingly, given the "emergency" schedule set by the Debtor on its latest Emergency Motions, for the convenience of the Court and b1BANK, while the merits of the Lift Stay Motion are reserved for the hearing on that motion, b1BANK incorporates by reference the contents of the Lift Stay Motion into this Objection, including but not limited to the extensive background facts set forth in the Lift Stay Motion.

## II. RESERVATION OF RIGHTS

4. The Debtor filed the first of the Emergency Motions late Friday, January 23, 2026 and the second one on January 25, 2026, and both are set for hearing tomorrow morning, Monday, January 26, 2026, on an alleged "emergency" basis. Accordingly, this Objection has been prepared and submitted within the narrow window of time the Debtor made available for a response to the Emergency Motions. However, b1BANK expressly reserves all rights to amend, revise, supplement or alter any arguments submitted in this Objection, and to raise any and all other relevant arguments or points to the Emergency Motions at any hearing, and or to file additional revisions, amendments or supplements to this Objection. Nothing in the contents of this Objection, or any omission in it, should be construed as a waiver of any right or argument by b1BANK.

## III. LAW AND ARGUMENT

A. **The Court should deny the Exclusivity Motion without evaluating its merits, since it has been improperly filed as an "Emergency" motion.**

5. The Exclusivity Motion has been filed and prosecuted as an "Emergency Motion."

6. More specifically, without prior notice to b1BANK, at 4:42 p.m. C.T. on Friday, January 23, 2026, the Debtor filed the Exclusivity Motion, seeking an emergency hearing and relief thereon on the following Monday morning, 11:30 a.m., C.T., on January 26, 2026. Additionally, the Court may take judicial notice that it was being widely reported on Friday, January 23, 2026, when the Exclusivity Motion was filed, that a winter storm would impact both Houston (the city where the Court is physically located) and large swaths of the country, particularly during the evening of Sunday, January 25, 2026, and continuing into the Monday following, possibly resulting in the closure of roadways and the loss of power for many citizens right at the time Debtor set this matter for hearing.[1]

7. Local Rule 9013-1 requires that if a motion is filed as an "emergency motion," then: (a) "The motion must include a detailed statement why an emergency exists, and the date relief is needed to avoid the consequences of the emergency," and, after this specific disclosure is made, the motion (b) "must be certified for its accuracy by the party seeking the emergency relief or by its counsel." *See* LR 9013-1(i).

---

[1] *See e.g.,* news report published 9:02 a.m., C.T., by Fox 26 Houston: https://www.fox26houston.com/weather/houston-winter-storm-2026-timeline-weekend-forecast-ice-chance-livestream-friday ; *see also* Rule 9017 of the Federal Rules of Bankruptcy Procedure ("FRBP"), explaining that the Federal Rules of Evidence apply in cases and proceedings under title 11 of the United States Code (the "Bankruptcy Code"), and Rule 201 of the Federal Rules of Evidence ("FRE"), noting that, among other things, this Court may take judicial notice of a fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction.

8. The Exclusivity Motion fails to satisfy these two standards, accordingly, this Court should deny it for that reason alone.

9. First, there is "no detailed statement why an emergency exists, and the date relief is needed to avoid the consequences of the emergency." LR 9013-1(i). Second, as this required disclosure is missing from the Exclusivity Motion, Debtor's counsel's certification at the end of the Exclusivity Motion, pursuant to Local Rule 9013-1(i) is without substance – counsel cannot certify content that isn't included in the Exclusivity Motion, specifically, Debtor's counsel cannot certify facts supporting emergency relief if he has not alleged them in the Exclusivity Motion.

10. The Exclusivity Motion contains one sentence and one paragraph which, at best, allege "cause" for the requested extension of exclusivity periods described in § 1121, but neither of those provisions provides a specific reason why the Debtor should be authorized to pursue the relief requested therein on an "emergency" basis. In paragraph 22 of the Exclusivity Motion, Debtor asserts the following: "Unless extended, the Debtor's exclusive period to file a chapter 11 plan and exclusive prior to solicit votes for a chapter 11 plan [sic.]." *See* Motion, ¶ 22 (parentheticals establishing defined terms are omitted). And, under section "II" titled "Cause Exists to Extend the Debtor's Exclusive Periods," in subpart E, paragraph 35 of the Exclusivity Motion, Debtor asserts maintaining exclusivity will keep parties with competing interests from "imped[ing] the Debtor's efforts to obtain stake holder support for a value-maximizing plan," and to prevent the drain on time and resources of the Debtor's estate that will occur when multiple parties with competing interests pursue their own respective plans. *See* Motion,

pgs. 11-12.

11. Again, the foregoing are not reasons why the Exclusivity Motion should be considered on an emergency basis on Monday morning, 1/26/2026, but merely, at best, allegations of cause for relief under § 1121(d).

12. Moreover, the facts the Debtor actually does set forth in its Exclusivity Motion do not justify emergency relief.

13. According to the Debtor's Exclusivity Motion, it received notice as early as December 17, 2025, that a condition precedent to the effective date of the plan confirmed on December 5, 2025, may not occur. *See* Exclusivity Motion , ¶ 14. Shortly thereafter, the Debtor states it received explicit notice on December 24, 2025, that the effective date for that plan would not occur. *See* Motion, ¶ 15.

14. Thus, the Debtor did not file the Exclusivity Motion until thirty (30) days after the Debtor acknowledged it had clear notice (on December 24, 2025) that the effective date of the plan confirmed December 5, 2025, would not occur.

15. For purposes of Local Rule 9013-1(i), it does make sense that the Debtor's decision to file the Exclusivity Motion more than a month after it received notice that its plan was never going to be consummated should now constitute an emergency meriting expedited relief on truncated notice to interested parties.

16. In sum, there is no legitimate emergency, and that must be the reason the Debtor offers no reasons in its Exclusivity Motion in order to comply with Local Rule 9013-1(i).

17. The reality is, the Debtor failed to provide this Court or the larger creditor

body notice of the failure of the effective date until b1BANK filed its Lift Stay Motion on January 23, 2026, and set it for hearing on February 12, 2026 on the Court's standard time table for such motions. *See* D.E. 231, pg. 1.

18. Now, belatedly, the Debtor is seeking to address matters b1BANK raised in the Lift Stay Motion on an emergency basis. *See e.g.,* Lift Stay Motion, D.E. 231, ¶¶ 71-74 (discussing the Debtor's two prior extensions of the exclusivity period), and ¶¶ 75-76 (discussing Debtor's failure to secure permission for use of Cash Collateral beyond November 2025).

19. b1BANK reserves all rights to address the contents of its Lift Stay Motion and any of the newly filed motions of the Debtor in due course.

20. The docket establishes the Debtor has repeatedly filed motions on an "emergency" basis, and b1BANK, in particular, has opposed such relief in the past, specifically noting Debtor's previous failure (repeated here) to satisfy the requirement in Local Rule 9013-1(i), *i.e.*, to set forth and certify a legitimate basis for receiving relief on an emergency basis. *See e.g.*, Debtor's prior "emergency" motions at D.E. 13, 15, 16, 17, 98, 110, 128, 142, 143, 144, and 158; *see also* b1BANK's objection (D.E. 146, ¶¶ 8-11) to Debtor's emergency motion at D.E. 143 (explaining the Debtor's failure to satisfy the LR 9013-1(i) standards governing emergency relief).

21. Thus, the failure of the Debtor to comply with the Local Rule 9013-1(i) standards in in the Emergency Motions cannot be explained through mere oversight. The Debtor knew of these local standards governing emergency relief, and has knowingly failed to satisfy them in the Exclusivity Motion (and as noted further below in regard to

the Cash Collateral Motion as well). Accordingly, the Court should deny the Exclusivity Motion, without considering the merits.

### B. **The relief Debtor seeks is not authorized by law, thus the Exclusivity Motion should be denied on its merits as well.**

22. Assuming the Court reaches the merits, the Court should deny the Exclusivity Motion because the law does not permit the relief the Debtor has requested .

23. The Debtor seeks an extension pursuant to 11 U.S.C. § 1121(d) of the exclusivity periods of §§ 1121(b) and (c), during which only the Debtor may file a chapter 11 plan and solicit acceptances. *See* Motion, pg. 7, ¶ 22.

24. Such an extension is not lawful in this case, regardless of the "cause" the Debtor might assert for such an extension under § 1121(d).

25. As 11 U.S.C. § 1121(d)(1) clearly states, any such request for an extension must be "***made within*** the respective periods specified in subsections (b) and (c) …." *See* 11 U.S.C. § 1121(d)(1) (emphasis added).

26. Here, this request falls after those respective time periods, even as extended previously by the Court, have expired. Thus, since the request for an extension under § 1121(d)(1) was not made "within" the periods described in § 1121(d)(1), a necessary condition precedent to any relief under § 1121(d)(1) is not present, and the Court should deny the Exclusivity Motion on that basis.

27. The time periods referenced in § 1121(d)(1) are (i) a deadline for the Debtor to file a plan 120 days after the date the bankruptcy petition was filed, and (ii) a deadline for the Debtor to have its plan accepted no later than 180 days after the

bankruptcy petition was filed. This case was filed on February 20, 2025, thus the original 120 day deadline expired on June 20, 2025, and the original 180 day deadline expired on August 19, 2025. *See* D.E. 1 (bankruptcy petition). While the Court did grant two prior extensions of these deadlines, the most recent of these extensions resulted in deadlines that expired on October 3, 2025 (the second extended deadline for the Debtor to file a plan) and December 4, 2025 (the second extended deadline for the Debtor to solicit and secure acceptance of its plan), respectively. *See* D.E. 121, 124, 132, 137. On their face, these extensions of time have expired, and they expired before any motion to extend them again was filed. As noted further below, that alone should be dispositive of the Exclusivity Motion.

28.     The case law is clear that a court cannot extend the exclusivity period after the initial 120-day or 180-day period (as relevant) has expired, notwithstanding the existence of cause for an extension. *See e.g.,* ***In re Sills***, 1992 WL 247102, at *1 (Bankr. E.D. Ark. 1992) (noting that § 1121(d) limits authority to extend the exclusivity time periods under §§ 1121(b) and (c) "to requests made within the exclusivity period", and denying a request filed one day after the expiration of the exclusivity period); ***In re Door Co. Environmental Energy, LLC***, 2025 WL 2824621, at *7 (Bankr. E.D. Wisc. 2025) ("finding section 1121(d)(1) mandates that a request to extend an exclusivity period be made before the period expires" and that "Rule 9006(b), which allows retroactive relief upon a showing of excusable neglect, applies only to deadlines set by the bankruptcy rules and court orders—not deadlines set by the Code" is of no assistance in relation to extensions of the section 1121 exclusivity deadlines); ***In re Henry Mayo Newhall***

*Memorial Hosp.*, 282 B.R. 444, 450 (9thCir. B.A.P. 2002) ("§1121(d) forbids retroactive requests" for extensions of the exclusivity periods); *accord* **Matter of Jasik**, 727 F.2d 1379, 1382 (5th Cir. 1984) (noting once "the statutory period" of exclusivity under § 1121(d) elapses "the debtor's exclusive right to file a plan ceases"). In the scenario where a court has previously granted an extension of the initial "exclusivity" periods under § 1121(d)(1) (like in this case), courts have found they may authorize further extensions, but ONLY when motions requesting such further extensions are filed before the extended period expires. *Accord* **In re Henry Mayo Newhall Memorial Hosp.**, 282 B.R. at 450; *see also* **In re Gaines v. Perkins (In re Perkins)**, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("the bankruptcy court is authorized to grant enlargements of time upon motion made beyond the initial statutory periods [of § 1121] but within the pendency of a previous enlargement …[However] This court agrees that once the statutory periods, or enlargements thereof, have expired, the bankruptcy court is powerless to grant further extensions.").. In other words, if a § 1121(d)(1) motion for another extension of the §§ 1121(b) and (c) time periods is not pending when either the original or previously extended time periods have expired, then no further extension is permitted under § 1121(d)(1). Courts have found retroactive relief is not permissible to revive a previously expired exclusivity deadline under § 1121(d)(1). *See id*.

29. As noted above, the current facts fall under the latter scenario. In this case, the previously extended time periods under § 1121(d)(1) expired on October 3, 2025, and December 4, 2025, respectively, and the Debtor did not file a motion for extension prior to that time. Accordingly, this Court cannot grant any further extensions of the

exclusivity time periods under § 1121(d)(1), and thus it should deny the Exclusivity Motion.

30. Put another way, the Debtor's Exclusivity Motion confuses two different concepts. Section 1121(d)(1) addresses requests for "extension" filed during a still viable, active time period under §§ 1121(b) and (c), rather than what the Debtor actually is seeking here, a request for a "resurrection" of a long dead/expired time period, which is not authorized by the Bankruptcy Code. *See **In re Door Co. Environmental Energy LLC**,* 2025 WL 2824621, at *7 (*quoting **In re Perkins**,* 71 B.R. at 297) ("It is only logical that ***once the exclusivity period and extensions thereto have expired, the debtor cannot resurrect his protected status*** in order to battle competing plans") (emphasis added).

31. In sum, this Court should respect the clear statutory text of § 1121(d)(1), and deny the Exclusivity Motion because it is untimely, regardless of any "cause" the Debtor asserts for an extension.

### C. The Debtor has failed to meet its burden to establish "cause" for extension of the exclusivity periods under 11 U.S.C. § 1121(d)(1).

32. Per the Exclusivity Motion (pg. 7, ¶ 24), the Debtor seeks an extension under § 1121(d)(1) of the exclusivity time periods described in §§ 1121(b) and (c), for "cause".

33. As noted above, the Debtor seeks what would be its third extension of the exclusivity time periods set forth in §§ 1121(b) and (c). *See* D.E. 121, 124, 132, 137.

34. As b1BANK noted in its Lift Stay Motion (D.E. 231, ¶ 73), the Fifth Circuit noted *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 372-373

(5thCir. 1987) (En Banc), that courts should accept the presumption that the initial exclusivity deadlines of 120 and 180 days from the petition date are the initial benchmarks of "unreasonable delay" by debtors, in accord with Congress' express will in enacting § 1121.

35.     Accordingly, the burden is on the debtor to show "cause" for an extension under § 1121(d)(1) of the § 1121 exclusivity time periods, and the "debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity last." *In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Tx. 2004). This usually requires, at minimum, proof that "substantial progress has been made in negotiations toward reorganizations." *Id.* In the context of this case, b1BANK submits that the credibility of the Debtor in making assertions of viable plans of reorganization is, to be charitable, less than what it was on December 5, 2025, at the confirmation hearing of the confirmed plan in this case.

36.     As set forth more fully in the Lift Stay Motion, in the documents submitted by the Debtor in support of its confirmed plan of reorganization, and through the Debtor's representations to the Court during the confirmation hearing on December 5, 2025, the Debtor presented the currently confirmed plan as *a fait accompli*, certain to succeed without any further need for reorganization. As is now apparent, that was not the case.

37.     Now, as "cause" for its proposed third extension of the exclusivity periods of §§ 1121(b) and (c), the Debtor offers a vague, unsubstantiated hope of a "restructuring transaction" with "REILS," without any specific details, and then acknowledges that it

has nothing concrete, stating: "Notwithstanding the foregoing, the Debtor is willing to entertain any and all reasonable proposals for the Debtor to emerger [sic.] from chapter 11." *See* Motion, ¶ 19, pg. 6.

38. Even if the Debtor's credibility was not called into question by the representations it made at the December 5, 2025 confirmation hearing, the foregoing is not proof of substantial progress toward a plan of reorganization, and thus is not "cause" sufficient to support a third extension of the exclusivity periods under § 1121.

### D. b1BANK's response to Debtor's Cash Collateral Motion.

39. Debtor's counsel contacted b1BANK's counsel R. Joseph (Chip) Naus on Friday, January 23, 2026, to advise him that he intended to file the Cash Collateral Motion, presumably on Friday and set it for hearing on Monday, January 26, 2026 at 11:30 am. Debtor's counsel did not advise b1BANK's counsel that he intended to file the Exclusivity Motion.

40. On Saturday, January 24, 2026, Debtor's counsel sent b1BANK's counsel a proposed order pertaining to a cash collateral motion that indicated the motion had been filed on January 22, 2026. The Debtor, however, had not filed that motion on that date and did not file it until a few minutes after 2 PM on Sunday, January 25, 2026, right as b1BANK was attempting to finalize its response to Exclusivity Motion. Accordingly, b1BANK has attempted to modify this Objection to include an initial response to the Cash Collateral Motion as well as the Exclusivity Motion, subject to the reservation of rights discussed above, generally preserving b1BANK's rights to modify or amend or supplement any statement or argument herein.

41. Once again, it is noteworthy that the Debtor did not file the Cash Collateral Motion until b1ANK filed its Lift Stay Motion.

42. As with the Exclusivity Motion, the Debtor has not complied with Local Rule 9013-1(i). There is nothing in the Cash Collateral Motion that specifically explains why the Debtor is entitled to emergency relief or why it waited more than thirty days to file the Cash Collateral Motion after it received notice on December 24, 2025, that the effective date of the plan confirmed in this case would not occur. The Debtor's delayed reaction to the December 24, 2025, notice is not a just basis to authorize emergency relief on any motion, including the Cash Collateral Motion.

43. The paragraph in the Cash Collateral Motion under the header "Emergency Consideration" (paragraph 55) references emergency consideration under a provision authorizing a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case, which is obviously totally inapposite to the present case, which has been pending for almost a year.

44. b1BANK has not had an adequate opportunity to review the Cash Collateral Motion, and it reserves all rights to contest or dispute against any representations of fact or arguments in it.

45. As the Debtor itself notes, under 11 U.S.C. § 363(c), the debtor-in-possession may not use cash collateral unless each entity that has an interest in it consents, or the court, after notice and hearing, authorizes such use in accord with the provisions of § 363, which, in relevant part, provides that upon request of an entity that has an interest in property, the court shall prohibit or condition the use of cash collateral

as is necessary to provide adequate protection to such interest. *See* Cash Collateral Motion, ¶¶ 36.

46. The Debtor recognizes it is seeking authority to use the cash collateral of b1BANK. *See* Cash Collateral Motion, ¶ 1.

47. At this time, b1BANK has not had time to discuss the Cash Collateral Motion with its counsel.

48. Further, b1BANK notes that a "Final Order" authorizing Debtor to utilize b1BANK's cash collateral under certain terms and conditions appears at D.E. 95, and that order limits that authority to a budget, which expired on July 18, 2025. b1BANK reserves all rights to contest any or all of Debtor's arguments under its current Cash Collateral Motion and to assert, among other things, that said arguments are precluded by res judicata, collateral estoppel, or other claim preclusion or estoppel principles. Through stipulation and agreements at D.E. 130, ¶ 3, and D.E. 153, ¶6, notwithstanding the limited budget attached to the final order for use of cash collateral, b1BANK agreed to continued, conditional use of its cash collateral through November 30, 2025, as outlined in the budget attached to D.E. 130, but has not and is not required to consent to additional use of its cash collateral under the terms of the Final Order.

49. However, without waiving any rights, and subject to agreeing to specific language in any related order or stipulation, b1BANK would note that it does not object to the Debtor using its cash collateral to make adequate protection payments to b1BANK and is generally amenable to working with the Debtor toward a possible agreed interim order or a stipulation authorizing use of cash collateral for payment of certain expenses,

which are critical for the maintenance of the Hospital Real Property (as defined in the Debtor's confirmed plan).

50.     However, as noted multiple times herein, b1BANK has not had adequate time to review the Debtor's request for use of cash collateral on the emergency schedule set by the Debtor in order to attempt to negotiate an interim approved or stipulated budget. Accordingly, b1BANK suggests that the Court set a continued hearing to consider interim relief on the Cash Collateral Motion, subject to the possible, joint submission of an agreed interim order or agreed stipulation for use of cash collateral by b1BANK and the Debtor.

51.     Again, b1BANK reserves all its rights against the Debtor, including without limitation any and all rights related to the prosecution of its Lift Stay Motion. b1BANK also submits that the Court should not hold a final hearing on the Cash Collateral Motion or the Exclusivity Motion (the latter only if the Court assesses it should not be denied on its face), until and unless the Court holds a hearing on the Lift Stay Motion and thenonly if the Court denies the Lift Stay Motion. For calendaring purposes, b1BANK proposes that the Court set a status conference to discuss any final hearing necessary on the Cash Collateral Motion or the Exclusivity Motion after the date of the Court's ruling on the Lift Stay Motion.

## IV.    CONCLUSION

WHEREFORE, for the foregoing, nonexclusive reasons, b1BANK prays that this Court: (i) deny the Exclusivity Motion, and, (ii) in regard to the Cash Collateral Motion, set a continued hearing for interim relief on the Cash Collateral Motion, provided that

b1BANK and the Debtor are unable to submit a joint, agreed order or stipulation granting interim relief for use of cash collateral, and (iii) set a status conference to discuss potential scheduling of any final hearing on either the Cash Collateral Motion or the Exclusivity Motion (if the latter is not denied outright as prayed for herein) after the date the Court rules on b1BANK's Lift Stay Motion, and (iv) for all other relief to which b1BANK is entitled, whether or not b1BANK has prayed for it in this Objection.

Dated:  January 25, 2026.

Respectfully submitted,

WIENER, WEISS & MADISON
A Professional Corporation

By: /s/ Patrick L. McCune
R. Joseph Naus (B.R. #17074)
330 Marshall Street, Suite 1000 (71101)
P. O. Box 21990
Shreveport, Louisiana  71120-1990
318-226-9100
318-424-5128, fax
Email:  rjnaus@wwmlaw.com

AND

Patrick L. McCune (TX B.R. # 24090985)
WIENER, WEISS & MADISON
A Professional Corporation
445 Louisiana Avenue
Baton Rouge, Louisiana 70802
225-910-8084
225-910-8082, fax
Email: pmccune@wwmlaw.com

**ATTORNEYS FOR MOVANT,
b1BANK**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that copies of this *Combined Objection and Response (the "Objection") to the Emergency Motion for Entry of an Order Extending Debtor's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances ("Exclusivity Motion") (D.E. 234) and Debtor's Second Emergency Motion For Use Of Cash and Other Relief ("Cash Collateral Motion") (D.E. 235)*, have been served electronically on all persons who have requested electronic notice via the PACER/ ECF/CMS system, including but not limited to:

| | |
|---|---|
| Omar Jesus Alaniz<br>    *Attorney for Debtor*<br>    *Platinum Heights, LP* | By Electronic Notice<br>oalaniz@reedsmith.com |
| Office of U.S. Trustee<br>Houston, TX 77002 | By Electronic Notice<br>USTP.Region07@usdoj.gov |
| Christopher Ross Travis<br>Jana Smith Whitworth<br>Office of the U.S. Trustee<br>    Attorney for the<br>    U.S. Trustee | By Electronic Notice<br>C.Ross.Travis@usdoj.gov<br>Jana.whitworth@usdoj.gov |

Further, I certify that on Monday, January 26, 2026, I will submit this Objection, to Stretto, Inc., servicing agency, and directed it to mail a copy of this Objection, via U.S. mail, first class, postage prepaid, to all addresses for those persons or entities listed on the mailing matrix of this case, except the addresses the matrix notes have been updated, or the addresses noted on the matrix as being addresses subject to bypass due to mail being returned and or marked as undeliverable. Further, I will file a supplemental certificate of service following the completion of said service to note the same on the docket of this case.

Baton Rouge, Louisiana, this 25th day of January, 2026.

*/s/     Patrick L. McCune*
OF COUNSEL