**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **PLATINUM HEIGHTS, LP,[1]** | ) | **Case No. 25-90012 (ARP)** |
| | ) | |
| **Debtor.** | ) | |
| | ) | |
| | ) | |

**DIP LENDER'S MOTION FOR ALLOWANCE AND PAYMENT**
**OF SECOND DIP FACILITY ADMINISTRATIVE EXPENSE CLAIM**

---

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number, is Platinum Heights, LP (4367). The location of the Debtor's corporate headquarters and the Debtor's service address is: 1917 Ashland Street, Houston, Texas 77008.

Mirza N. Baig (the "*DIP Lender*"), by and through his undersigned counsel, and respectfully states as follows in support of this motion (the "*Motion*"):

**<u>Background</u>**

1. On February 20, 2025 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor is a Texas limited partnership. The Debtor's principal real estate asset was a medical professional building referred to as the "Heights Hospital" (the "*Hospital*") located at 1917 Ashland Street, Houston, TX, 77008 (the "*Property*").

3. The Hospital is a six-story midrise building where medical professionals may provide a variety of medical services to patients.

4. The DIP Lender, the Debtor's prepetition primary equity holder, provided debtor-in-possession financing to the Debtor to fund this chapter 11 case.[2]  Specifically, on February 28, 2025, the Debtor filed its *Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtor to Incur Postpetition Credit on an Unsecured Basis, (ii) Scheduling a Final Hearing, and (iii) Granting Related Relief* [Docket No. 17] (the "*First DIP Motion*"), seeking, *inter alia*, entry of interim and final orders (i) authorizing the Debtor to obtain postpetition financing on an unsecured basis from Dr. Baig in the amount of $260,000 (the "*First DIP Facility*") and (ii) granting "the [First] DIP Facility and all obligations owing thereunder and under the DIP Agreement and any other associated loan documents … administrative expense claim status."  First DIP Motion ¶ 10.

---

[2] The DIP Lender advanced a total of $605,000 in post-petition credit to the Debtor to fund this chapter 11 case pursuant to the First DIP Facility and Second DIP Facility (each as defined below).  The First DIP Facility is indisputably allowed as an administrative expense claim pursuant to the terms of the Final DIP Order (as defined below).  This Motion seeks an order granting administrative expense claim status for the Second DIP Facility.

5. On March 3, 2025, the Court entered the *Interim Order Authorizing Debtor's Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtor to Incur Postpetition Credit on an Unsecured Basis, (ii) Scheduling a Final Hearing, and (iii) Granting Related Relief* [Docket No. 29], granting the First DIP Motion on an interim basis and approving the postpetition financing and related administrative expense claim status sought therein.

6. At the final hearing on the First DIP Motion, the Debtor requested to increase the amount of postpetition financing to be approved by the Court by an additional $75,000.

7. On March 24, 2025, this Court entered the *Final Order Authorizing Debtor's Emergency Motion f*or *Entry of Interim and Final Orders (i) Authorizing the Debtor to Incur Postpetition Credit on an Unsecured Basis, (ii) Scheduling a Final Hearing, and (iii) Granting Related Relief* [Docket No. 73].  The Final DIP Order approved the increased amount requested at the final hearing and granted the relief requested in First DIP Motion, including the grant of administrative expense claim status for amounts owed to the DIP Lender pursuant to the First DIP Facility totaling $335,000.  *See* Final DIP Order ¶¶ 7, 9.

8. On June 2, 2025, the Debtor filed its *Second Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtor to Incur Postpetition Credit on an Unsecured Basis, (ii) Scheduling a Final Hearing, and (iii) Granting Related Relief* [Docket No. 110] (the "*Second DIP Motion*").

9. The Second DIP Motion explained that the Debtor remained "in critical need of liquidity" based on the insufficiency of and delays in receiving rental payments from its tenants. Second DIP Motion ¶ 18.  The Debtor thus requested, pursuant to section 364(b) of the Bankruptcy Code, "approval of the Second DIP Facility to fund its operations … and to avoid immediate and irreparable harm to the Debtor and potential harm to the delivery of the Tenants'

patients." *Id.* ¶¶ 18-19.  To that end, the Debtor sought, *inter alia*, entry of interim and final orders (i) authorizing the Debtor to obtain additional postpetition financing from Dr. Baig on an unsecured basis in the amount of $300,000 (the "*Second DIP Facility*") and (ii) granting the Second DIP Facility and all obligations owing thereunder and under any other associated loan documents administrative expense claim status.  *See* Second DIP Motion ¶ 15.

10.     In the *Declaration of Erik White in Support of the Debtor's Second DIP Motion* [Docket No. 112], the Debtor's Chief Restructuring Officer further explained that:

> [t]he Debtor has an immediate and critical need to obtain the financing provided by the Second DIP Facility to, among other things, (i) pay the fees, costs and expenses incurred in connection with this Chapter 11 Case, (ii) permit the orderly continuation of the operation of the Debtor's business, (iii) maintain business relationships with customers, vendors and suppliers, and (iv) satisfy other working capital and operational needs, including payment of the Debtor's debt service to B1 Bank as required under the Cash Collateral Order[3][.] The Debtor also needs to pay utilities that are critical to the Debtor's operation.

11.     On June 4, 2025, the Court entered the *Interim Order Authorizing Debtor's Second Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtor to Incur Postpetition Credit on an Unsecured Basis, (ii) Scheduling a Final Hearing, and (iii) Granting Related Relief* [Docket No. 117] (the "*Second Interim DIP Order*").  The Second Interim DIP Order authorized the Debtor, on an interim basis, to borrow $270,000 from Dr. Baig under the Second DIP Facility but reserved the question of "the proposed administrative priority status for the borrowings authorized hereunder … for determination at the Final Hearing." Second Interim DIP Order ¶¶ 9-10.

12.     A final hearing on the Second DIP Motion never took place.  Nonetheless, to

---

[3] "Cash Collateral Order" means this Court's *Final Order (i) Authorizing Postpetition Use of Cash Collateral, (ii) Granting Adequate Protection to the Secured Lender, (iii) Scheduling a Final Hearing, and (iv) Granting Related Relief* [Docket No. 95].

ensure that the Debtor's business operations continued uninterrupted, on June 9, 2025, Dr. Baig advanced an additional $270,000 in postpetition financing to the Debtor pursuant to the Second Interim DIP Order.

13.     The funds advanced pursuant to the Second DIP Facility were used to fund the Debtor's operations in this Chapter 11 Case from entry of the Second Interim DIP Order to the Effective Date.  Specifically, the proceeds of the Second DIP Facility were used to, among other things, pay for the fees, costs, and expenses of administering this Chapter 11 Case, the Debtor's debt service, and necessary insurance and critical utilities, maintain business relationships with customers, vendors and suppliers, and satisfy the Debtor's other working capital and operational needs to mitigate potential estate losses.

14.     The following amounts are now due pursuant to the Second DIP Facility (in total, the "*Second DIP Administrative Claim*"):

| Original Principal Amount: | $270,000 |
|---|---|
| Accrued Interest at a rate of 8% pursuant to the Second DIP Facility: | $23,949.03 |
| **Total:** | **$293,949.03** |

15.     On April 29, 2026, this Court entered its *Findings of Fact, Conclusions of Law and Order (i) Approving the Debtor's Disclosure Statement on a Final Basis and (ii) Confirming the Third Plan of Reorganization of Debtor Platinum Heights, LP* [Docket No. 367] (the "*Confirmation Order*"), confirming the Debtor's plan of reorganization (the "*Plan*").  The Confirmation Order states that "all requests for allowance and payment of Administrative Claims … must be filed and served on the Debtor and the Plan Sponsor, or, after the Effective Date, the Plan Administrator, and its counsel, so as to actually be received on or before the Administrative Claims Bar Date[.]"  Confirmation Order ¶ 40.  The Plan defines the "Administrative Claims Bar

Date," as "the first Business Day that is thirty (30) days following the Effective Date, which date shall be the deadline for filing requests for payment of Administrative Claims[.]"  Plan at 1.

16.     As of the date of this Motion, the Effective Date, as defined in the Plan, has not yet occurred.

### Relief Requested

17.     The DIP Lender seeks entry of an order, substantially in the form attached hereto (the "*Order*"), (a) allowing the DIP Lender's Second DIP Administrative Claim as an administrative expense claim pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code, (b) directing the Debtor to promptly pay such administrative claim on the Effective Date, and (c) granting related relief.

### Jurisdiction and Venue

18.     The United States Bankruptcy Court for the Southern District of Texas (the "*Court*") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a  core proceeding pursuant to 28 U.S.C. § 157 (b).

19.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

20.     The statutory bases for the relief requested herein are sections 364(b), 503(b)(1)(A) and  507(a)(2) of title 11 of the United States Code (the "*Bankruptcy Code*").

### Basis for Relief

21.     The Second DIP Administrative Claim should be allowed as an administrative expense claim and paid to the DIP Lender, along with the amounts owed pursuant his administrative expense claim for the First DIP Facility, on the Effective Date.

22.     Section 364(b) of the Bankruptcy Code provides that a court may authorize a debtor in possession "to obtain unsecured credit … , allowable under section 503(b)(1) of this title as an administrative expense."  *See* 11 U.S.C. § 364(b).  Section 503 of the Bankruptcy

Code, in turn, provides that parties may file requests for payment of administrative expenses for "actual, necessary costs and expenses of preserving the estate." *See* section 503(b)(1)(A). Courts have construed the words "actual" and "necessary" to mean that the expenses must have benefitted the debtors' estates and their creditors. *NL Indus., Inc. v. GHR Energy Corp. (In re GHR Energy Corp.)*, 940 F.2d 957, 966 (5th Cir. 1991).[4] The primary purpose of the priority treatment afforded by section 503(b) of the Bankruptcy Code is to encourage third parties to continue to contract with the debtor in possession so that it can continue to conduct its business, thus generating funds from which prepetition creditors can be paid. *Id.*

23.     As such, a *prima facie* case under section 503(b)(1) of the Bankruptcy Code may be established by evidence that (a) the claim arises from a transaction with the debtor and (b) the subject of the claim (*i.e.*, the goods or services supplied by the claimant) enhanced the ability of the debtor's business to function as a going concern. *In re TransAmerican Nat. Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992). "Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to continue to conduct business as usual." *Id.* (citing *In re Coastal Carriers Corp.*, 128 B.R. 400, 402 (Bankr. D. Md. 1991)). Availability of cash can be important to a debtor's ongoing business, and as such, "when a debtor-in-possession induces availability [of cash] and the bankruptcy estate derives a benefit from it, the ordinary cost of ensuring such availability qualifies as an administrative expense[.]" *In re Whistler Energy II, L.L.C.*, 931 F.3d 432 (5th Cir. 2019).

24.     Here, there is no question that the funds advanced under the Second DIP Facility,

---

[4] *But see In re H.L.S. Energy Co., Inc.*, 151 F.3d 434, 437 (5th Cir. 1998) ("The 'benefit' requirement has no independent basis in the Code, however, but is merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been 'necessary.'").

and all fees and interest incurred in connection therewith, were used to preserve the Debtor's bankruptcy estate. The Second DIP Administrative Claim arises from a postpetition transaction with the Debtor that represented a clear benefit to the Debtor's estate and creditors: the ability to continue to operate until the Debtor was able to secure a buyer and obtain confirmation of its Plan. Without the funds advanced pursuant to the Second DIP Facility, the Debtor could not have continued to administer this Chapter 11 Case, maintain business relationships with customers, vendors and suppliers, including utility providers, or satisfy its other working capital and operational needs, including payment of the Debtor's debt service to B1 Bank as required under the Cash Collateral Order. In short, the Second DIP Facility provided critical capital, which served to fund the Debtor through the consummation of the Sale and confirmation of the Plan.

25. Amounts owed to the DIP Lender under the Second DIP Facility were thus actual, necessary costs of preserving the estate, and the Second DIP Administrative Claim is entitled to priority under section 503(b)(1) of the Bankruptcy Code.

**<u>Reservation of Rights</u>**

26. Nothing contained in this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against Dr. Baig; (b) a waiver of any claim held by Dr. Baig against the Debtor or any other party in interest on any grounds not affected by a prior order of this Court; or (c) a waiver or limitation of Dr. Baig's right under the Bankruptcy Code or any other applicable law, including the right to seek related relief from this Court.

**Notice**

27.     The DIP Lender will provide notice of this Motion to the following parties or their respective counsel: (a) the Debtor; (b) the Plan Sponsor, (c) the Plan Administrator, and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. Considering the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, Dr. Baig respectfully requests that the Court enter an Order (i) allowing the DIP Lender's Second DIP Administrative Claim as an administrative expense claim pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code, (ii) directing the Debtor to promptly pay such administrative claim on the Effective Date, and (iii) granting such other and further appropriate relief.

Dated:  May 29, 2026
        Houston, Texas

/s/   *Matthew E. McClintock*
**GOLDSTEIN & MCCLINTOCK LLLP**
Matthew E. McClintock (admitted *pro hac vice*)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
mattm@goldmclaw.com

*Counsel for Dr. Mirza N. Baig*